1              IN THE UNITED STATES DISTRICT COURT

2                  FOR THE DISTRICT OF HAWAII

3

    UNITED STATES OF AMERICA,    )        CRIMINAL NO. 19-00099-DKW
4                                 )
                Plaintiff,        )        Honolulu, Hawaii
5                                 )
        vs.                       )        June 9, 2021
6                                 )
    NORMAN L. AKAU III, (09)      )        CHANGE OF PLEA
7                                 )
                Defendant.        )
8   _____)

9

           TRANSCRIPT OF PROCEEDINGS VIA VIDEO TELECONFERENCE
10             BEFORE THE HONORABLE DERRICK K. WATSON,
                UNITED STATES DISTRICT COURT JUDGE
11

12  APPEARANCES:

13

14  For the Plaintiff:          MARK INCIONG, ESQ.
                                Office of the United States Attorney
15                              PJKK Federal Building
                                300 Ala Moana Boulevard, Suite 6100
16                              Honolulu, Hawaii  96850

17

    For the Defendant:          RONALD RICHARDS, ESQ.
18                              Law Offices of Ronald Richards &
                                Associates, APC
19                              P. O. Box 11480
                                Beverly Hills, CA 90213
20

21  Official Court Reporter:    Gloria T. Bediamol, RPR RMR CRR FCRR
                                United States District Court
22                              300 Ala Moana Boulevard
                                Honolulu, Hawaii 96850
23

24
    Proceedings recorded by machine shorthand, transcript produced
25  with computer-aided transcription (CAT).

| | | |
|---|---|---|
| | 1 | June 9, 2021                                    10:06 a.m. |
| 10:06AM | 2 | THE CLERK:  Criminal Number 19-00099-DKW, United |
| 10:07AM | 3 | States of America versus Defendant (09) Norman L. Akau III. |
| 10:07AM | 4 | This case has been called for a change of plea |
| 10:07AM | 5 | hearing. |
| 10:07AM | 6 | Counsel, please make your appearances for the record. |
| 10:07AM | 7 | MR. INCIONG:  Good morning, Your Honor.  Mark Inciong |
| 10:08AM | 8 | for the United States. |
| 10:08AM | 9 | THE COURT:  Mr. Inciong, good morning. |
| 10:08AM | 10 | MR. RICHARDS:  Good morning, Your Honor.  Ronald |
| 10:08AM | 11 | Richards taking the plea for the defendant Norman L. Akau III |
| 10:08AM | 12 | who is present and in custody. |
| 10:08AM | 13 | THE COURT:  Mr. Richards, good morning.  And, |
| 10:08AM | 14 | Mr. Akau, good morning to you, sir. |
| 10:08AM | 15 | THE DEFENDANT:  Good morning, sir. |
| 10:08AM | 16 | THE COURT:  We're here this morning because, as I |
| 10:08AM | 17 | understand it, the defendant Mr. Akau wishes to plead guilty to |
| 10:08AM | 18 | Count 1 of the June 18, 2020 superseding indictment, and that |
| 10:08AM | 19 | would be pursuant to a plea agreement with the government. |
| 10:08AM | 20 | Counsel have advised that Mr. Akau wishes to proceed |
| 10:08AM | 21 | this morning by video and consents to do so.  As a result, |
| 10:08AM | 22 | there are a few things that I need to get on the record before |
| 10:08AM | 23 | we go any further. |
| 10:08AM | 24 | First of all, Mr. Akau, pursuant to Section 15002 of |
| 10:08AM | 25 | the CARES Act, the Coronavirus Aid Relief and Economic Security |

| | | |
|---|---|---|
| 10:08AM | 1 | Act, there are certain circumstances in which a defendant may |
| 10:09AM | 2 | consent, after consulting with counsel, to proceed with his |
| 10:09AM | 3 | change of plea hearing. |
| 10:09AM | 4 | On May 6th of this year the chief judge for our |
| 10:09AM | 5 | district found that change of plea hearings such as this one, |
| 10:09AM | 6 | originating with the defendant incarcerated at FDC, Judge |
| 10:09AM | 7 | Seabright found that those hearings cannot be conducted in |
| 10:09AM | 8 | person without seriously jeopardizing public health and safety. |
| 10:09AM | 9 | Judge Seabright made that finding pursuant to Section |
| 10:09AM | 10 | 15002(b)(2) of the CARES Act. |
| 10:09AM | 11 | Mr. Akau, your counsel has advised that you consent to |
| 10:09AM | 12 | proceed with this hearing by video; I would like to get that |
| 10:09AM | 13 | consent again on the record before we proceed. |
| 10:09AM | 14 | Mr. Akau, can you confirm, sir, that you consulted |
| 10:09AM | 15 | with Mr. Richards concerning whether or not to proceed with |
| 10:09AM | 16 | this plea hearing this morning by video from FDC rather than |
| 10:09AM | 17 | through an in-person appearance in court? |
| 10:09AM | 18 | THE DEFENDANT:  I have consented, Your Honor. |
| 10:09AM | 19 | THE COURT:  Okay, and have you consulted with |
| 10:09AM | 20 | Mr. Richards regarding that? |
| 10:10AM | 21 | THE DEFENDANT:  Yes, I have. |
| 10:10AM | 22 | THE COURT:  Mr. Richards, do you concur that your |
| 10:10AM | 23 | consultation with Mr. Akau has included whether or not to |
| 10:10AM | 24 | proceed with this hearing by video? |
| 10:10AM | 25 | MR. RICHARDS:  You mean, you want me to -- my only |

10:10AM   1    concern, Your Honor, is I don't want to waive any privilege
10:10AM   2    with Mr. Akau, but I could tell you that we discussed generally
10:10AM   3    the option of doing the change of plea and that the video is an
10:10AM   4    option that he wants to utilize because he doesn't want to go
10:10AM   5    into quarantine and he's happy with doing it this way.
10:10AM   6         THE COURT:  Mr. Akau, having so consulted with
10:10AM   7    Mr. Richards, do you, sir, consent to proceed with your change
10:10AM   8    of plea hearing by video?
10:10AM   9         THE DEFENDANT:  Yes, Your Honor, I consent.
10:10AM   10         THE COURT:  Thank you.  In addition, the Court finds
10:10AM   11    that this change of plea hearing cannot be further delayed
10:10AM   12    without serious harm to the interest of justice.  In particular
10:10AM   13    this very pandemic that has been with us has been with us
10:11AM   14    unfortunately for going on a year and a half now.  As
10:11AM   15    mentioned, the chief judge of this district has already found
10:11AM   16    in a series of CARES Act orders, the most recent one being on
10:11AM   17    May 6th of this year, that change of plea hearings like this
10:11AM   18    one cannot proceed in person without seriously jeopardizing
10:11AM   19    public health and safety.
10:11AM   20         Mr. Akau is incarcerated at FDC Honolulu.  If he were
10:11AM   21    to appear in person, both Mr. Akau as well as his escorts would
10:11AM   22    face an enhanced risk presented by the current pandemic.  And
10:11AM   23    Mr. Akau would also, as Mr. Richards just referenced, be
10:11AM   24    required by FDC Honolulu procedures to quarantine upon return.
10:11AM   25    Such a quarantine would limit, among other things, his

| | | |
|---|---|---|
| 10:11AM | 1 | communication with others to include counsel. |
| 10:11AM | 2 | In addition, there is limited programming available to |
| 10:11AM | 3 | pretrial detainees like Mr. Akau.  As a result, until he is put |
| 10:11AM | 4 | into the sentencing queue and is ultimately sentenced, he will |
| 10:12AM | 5 | not be eligible for additional programming that could result in |
| 10:12AM | 6 | a number of changes beneficial to him, to include the possible |
| 10:12AM | 7 | early release as well as a lower security classification. |
| 10:12AM | 8 | In addition, the Court finds that delay would |
| 10:12AM | 9 | eventually result in a backlog of criminal matters on this |
| 10:12AM | 10 | Court's docket, which is precisely what did occur last year |
| 10:12AM | 11 | when the pandemic -- the same pandemic closed our courthouse |
| 10:12AM | 12 | for several months. |
| 10:12AM | 13 | Mr. Akau, before accepting your plea, there are a few |
| 10:12AM | 14 | questions that I need to ask you to ensure that your decisions |
| 10:12AM | 15 | are knowing and voluntary.  If I ask you anything at all that |
| 10:12AM | 16 | is confusing or ambiguous to you, it's certainly not my intent |
| 10:12AM | 17 | to do that, but if I do please point that out to me, and I'll |
| 10:12AM | 18 | do my very best to ask you a better question.  Do you |
| 10:12AM | 19 | understand that, sir? |
| 10:12AM | 20 | THE DEFENDANT:  Yes, Your Honor. |
| 10:12AM | 21 | THE COURT:  Ms. Kimura, would you please swear the |
| 10:12AM | 22 | defendant? |
| 10:12AM | 23 | THE CLERK:  Please raise your right hand. |
| 10:12AM | 24 | (The defendant was sworn to answer truthfully.) |
| 10:12AM | 25 | |

| | | |
|---|---|---|
| 10:13AM | 1 | MR. RICHARDS:  Is it me or is someone freezing? |
| 10:14AM | 2 | THE CLERK:  The judge is frozen. |
| 10:14AM | 3 | MR. RICHARDS:  I'm frozen? |
| 10:14AM | 4 | THE CLERK:  No, the judge is.  We will let him know. |
| 10:14AM | 5 | Thank you. |
| 10:14AM | 6 | MR. RICHARDS:  Believe me, I've frozen plenty of |
| 10:14AM | 7 | times.  I made sure that I'm in the highest internet, so I was |
| 10:14AM | 8 | like it can't be me. |
| 10:14AM | 9 | THE COURT:  All right.  Did I lose connection here? |
| 10:14AM | 10 | THE CLERK:  Yes.  You're back on, Judge. |
| 10:14AM | 11 | THE COURT:  I apologize for that.  I didn't realize |
| 10:14AM | 12 | that I was the one I guess frozen.  You all looked frozen to |
| 10:14AM | 13 | me, and then I realized that -- |
| 10:14AM | 14 | MR. RICHARDS:  The screen looks ten years younger. |
| 10:14AM | 15 | THE COURT:  Yeah.  Well, then I realized that it |
| 10:14AM | 16 | couldn't be the five of you, it must be the one of me; so I |
| 10:14AM | 17 | logged out and reconnected.  I apologize.  I'm in the |
| 10:14AM | 18 | courthouse, so it's not a personal cellular connection or WiFi |
| 10:14AM | 19 | connection that is to blame.  Hopefully we won't encounter that |
| 10:15AM | 20 | again. |
| 10:15AM | 21 | So as I was saying -- Mr. Akau, before voluntary -- |
| 10:15AM | 22 | (Audio transmission gap). |
| 10:20AM | 23 | Let's roll.  Hopefully this will last. |
| 10:20AM | 24 | Mr. Akau, can you hear me, sir? |
| 10:20AM | 25 | THE DEFENDANT:  Yes, I can Your Honor. |

| | | |
|---|---|---|
| 10:20AM | 1 | THE COURT:  Mr. Richards, are you there? |
| 10:20AM | 2 | MR. RICHARDS:  I am, Your Honor. |
| 10:20AM | 3 | THE COURT:  Thank you your for your patience. |
| 10:20AM | 4 | Mr. Akau, before accepting your plea, as I was |
| 10:20AM | 5 | hopefully saying earlier, there are a few questions that I need |
| 10:20AM | 6 | to ask you this morning, and that's to ensure that your |
| 10:20AM | 7 | decisions are knowing and voluntary.  If I ask you anything at |
| 10:20AM | 8 | all that is ambiguous or that is unclear to you in any fashion, |
| 10:21AM | 9 | please point that out to me, and I'll do my best to correct |
| 10:21AM | 10 | that; okay? |
| 10:21AM | 11 | THE DEFENDANT:  Yes.  Thank you, Your Honor. |
| 10:21AM | 12 | THE COURT:  Ms. Kimura, would you then swear the |
| 10:21AM | 13 | defendant in? |
| 10:21AM | 14 | THE CLERK:  Please raise your right hand. |
| 10:21AM | 15 | (The defendant was sworn to answer truthfully.) |
| 10:21AM | 16 | THE COURT:  Mr. Akau, please understand that you have |
| 10:21AM | 17 | now taken an oath to answer my questions this morning |
| 10:21AM | 18 | truthfully.  And if you do anything other than that, you could |
| 10:21AM | 19 | be subjecting yourself to additional charges.  Do you |
| 10:21AM | 20 | understand that, sir? |
| 10:21AM | 21 | THE DEFENDANT:  Yes, Your Honor. |
| 10:21AM | 22 | THE COURT:  Please state your full name then. |
| 10:21AM | 23 | THE DEFENDANT:  Norman Lani Akau, III. |
| 10:21AM | 24 | THE COURT:  How old are you, sir? |
| 10:21AM | 25 | THE DEFENDANT:  I'm 49 years old. |

| | | |
|---|---|---|
| 10:21AM | 1 | THE COURT:  What is the highest level of education |
| 10:22AM | 2 | that you have achieved? |
| 10:22AM | 3 | THE DEFENDANT:  High school diploma, 12th grade. |
| 10:22AM | 4 | THE COURT:  Who is your most recent employer? |
| 10:22AM | 5 | THE DEFENDANT:  Magnum PI. |
| 10:22AM | 6 | THE COURT:  Magnum PI, the TV show? |
| 10:22AM | 7 | THE DEFENDANT:  Yes, Your Honor. |
| 10:22AM | 8 | THE COURT:  What did you do?  Were you a part of the |
| 10:22AM | 9 | production team? |
| 10:22AM | 10 | THE DEFENDANT:  I was part of the production team in |
| 10:22AM | 11 | management. |
| 10:22AM | 12 | THE COURT:  And you understand, speak, and I assume |
| 10:22AM | 13 | write English all just fine as a high school graduate; is that |
| 10:22AM | 14 | fair? |
| 10:22AM | 15 | THE DEFENDANT:  Yes, I do.  I read and speak English |
| 10:22AM | 16 | well, Your Honor. |
| 10:22AM | 17 | THE COURT:  And have you taken any type -- I know |
| 10:22AM | 18 | you're in custody, but have you taken any type of drugs, legal |
| 10:22AM | 19 | or illegal, within the past 48 hours? |
| 10:22AM | 20 | THE DEFENDANT:  I have not.  No, sir. |
| 10:22AM | 21 | THE COURT:  And have you consumed any alcohol, |
| 10:22AM | 22 | Mr. Akau, in the last 24 hours? |
| 10:22AM | 23 | THE DEFENDANT:  I have not, Your Honor. |
| 10:23AM | 24 | THE COURT:  Is it fair to say then that you are sober |
| 10:23AM | 25 | and thinking clearly this morning? |

| | | |
|---|---|---|
| 10:23AM | 1 | THE DEFENDANT:  Yes, Your Honor, I am. |
| 10:23AM | 2 | THE COURT:  What is your understanding then of the |
| 10:23AM | 3 | purpose of this morning's hearing? |
| 10:23AM | 4 | THE DEFENDANT:  I am to have a change of plea from not |
| 10:23AM | 5 | guilty to guilty for the charge of Count 1, conspiracy for |
| 10:23AM | 6 | racketeering. |
| 10:23AM | 7 | THE COURT: And have you had enough time, sir, to |
| 10:23AM | 8 | discuss that decision whether or not to plead guilty as well as |
| 10:23AM | 9 | this case generally with Mr. Richards? |
| 10:23AM | 10 | THE DEFENDANT:  Yes, Your Honor, I have. |
| 10:23AM | 11 | THE COURT:  And are you satisfied with his |
| 10:23AM | 12 | representation of you thus far in this case? |
| 10:23AM | 13 | THE DEFENDANT:  Yes, sir, I'm satisfied. |
| 10:23AM | 14 | THE COURT:  Mr. Richards, do you have any reason to |
| 10:23AM | 15 | doubt Mr. Akau's capacity or competence to enter a knowing and |
| 10:23AM | 16 | voluntary plea this morning? |
| 10:23AM | 17 | MR. RICHARDS:  No, and I can tell you his penmanship |
| 10:23AM | 18 | is the best that I've seen in almost 28 years.  When he writes |
| 10:24AM | 19 | me a letter, it's outstanding. |
| 10:24AM | 20 | THE COURT:  Looks like calligraphy, huh? |
| 10:24AM | 21 | MR. RICHARDS:  Honestly I couldn't write that well if |
| 10:24AM | 22 | you gave me a week.  It's perfectly printed. |
| 10:24AM | 23 | THE COURT:  Good to hear. |
| 10:24AM | 24 | Mr. Akau, my understanding then is you are pleading |
| 10:24AM | 25 | guilty to Count 1 this morning, as you just mentioned yourself |

| | | |
|---|---|---|
| 10:24AM | 1 | a minute ago.  Count 1 charges you with conspiring to violate |
| 10:24AM | 2 | the racketeering laws of the United States in violation of |
| 10:24AM | 3 | Title 18 of the United States Code, Section 1962D, as in David. |
| 10:24AM | 4 | Have you discussed this particular charge and |
| 10:24AM | 5 | allegations behind that charge with counsel? |
| 10:24AM | 6 | THE DEFENDANT: Yes, Your Honor, I have. |
| 10:24AM | 7 | THE COURT: And based on your own review and |
| 10:24AM | 8 | consultation with counsel, are you confident that you |
| 10:24AM | 9 | understand the charges brought against you? |
| 10:24AM | 10 | THE DEFENDANT: Yes, I do, Your Honor.  I understand. |
| 10:24AM | 11 | THE COURT:  And do you have any questions, Mr. Akau, |
| 10:24AM | 12 | with respect to any of the charges or allegations? |
| 10:24AM | 13 | THE DEFENDANT: I do not at this time, Your Honor. |
| 10:25AM | 14 | THE COURT:  Can you tell me, Mr. Akau, if anyone has |
| 10:25AM | 15 | threatened, forced or coerced you into pleading guilty? |
| 10:25AM | 16 | THE DEFENDANT:  No one has done any of those things. |
| 10:25AM | 17 | I made this choice on my own free will, Your Honor. |
| 10:25AM | 18 | THE COURT:  And to your knowledge, Mr. Akau, has |
| 10:25AM | 19 | anyone threatened, forced or coerced someone close to you, |
| 10:25AM | 20 | meaning a close friend or relative, in order to get you to |
| 10:25AM | 21 | plead guilty? |
| 10:25AM | 22 | THE DEFENDANT:  No one has, Your Honor. |
| 10:25AM | 23 | THE COURT:  Has anyone made any promises to you in |
| 10:25AM | 24 | order to get you to plead guilty, other than the promises that |
| 10:25AM | 25 | the government has made in its written plea agreement with you? |

10:25AM  1          THE DEFENDANT: No one has made any promises, Your

10:25AM  2   Honor.

10:25AM  3          MR. RICHARDS:  Your Honor --

10:25AM  4          THE COURT:  Are you pleading guilty then, Mr. Akau,

10:25AM  5   because you are guilty of the conduct alleged in Count 1?

10:25AM  6          THE DEFENDANT: Yes, Your Honor, that is true.  I'm

10:26AM  7   pleading guilty because --

10:26AM  8          THE COURT:  Because what?  I missed the last part.

10:26AM  9          THE DEFENDANT:  (Inaudible)

10:26AM  10         THE COURT:  I'm sorry, I missed that still.

10:26AM  11         THE DEFENDANT:  I said I'm pleading guilty to that

10:26AM  12   charge for I'm guilty of it, Your Honor.

10:26AM  13         THE COURT:  Mr. Inciong, would you then please

10:26AM  14   describe the potential penalties that Mr. Akau faces for

10:26AM  15   pleading guilty to this particular count?

10:26AM  16         MR. INCIONG:  Yes, Your Honor.  The maximum penalties

10:26AM  17   that apply to Count 1 of the superseding indictment to which

10:26AM  18   Mr. Akau is pleading is a term of imprisonment of not more than

10:26AM  19   20 years.  There is also a potential fine of up to $250,000.

10:26AM  20   In addition, there is a term of supervised release of up to

10:26AM  21   three years that would be imposed.  Finally, there is a $100

10:26AM  22   mandatory special assessment that would be assessed.

10:26AM  23         THE COURT:  Is there any forfeiture component to this

10:27AM  24   particular plea?

10:27AM  25         MR. INCIONG:  Your Honor, the plea agreement does

10:27AM  1  generally call for forfeiture, but at this time there are no

10:27AM  2  applicable items for forfeiture in regard to Mr. Akau.

10:27AM  3        THE COURT:  All right.  Mr. Richards, do you agree

10:27AM  4  with the potential penalties that your client faces for

10:27AM  5  pleading guilty to Count 1 as just described by the

10:27AM  6  government's attorney?

10:27AM  7        MR. RICHARDS:  I do, but at the appropriate time, Your

10:27AM  8  Honor.  I just want to address the portion of the plea

10:27AM  9  agreement and the factual basis that I believe would be --

10:27AM  10  that I want to make sure it's segregated in the record with

10:27AM  11  respect to paragraph 21E with respect to sentencing.  There's

10:27AM  12  some statements which are part of the plea agreement that were

10:27AM  13  provided pursuant to a cooperation agreement; so whatever the

10:28AM  14  appropriate time is, I'll point that out to the Court.

10:28AM  15        THE COURT:  All right.  And we are certainly going to

10:28AM  16  get into the details of the plea agreement in just a minute.

10:28AM  17  That would be the appropriate time.

10:28AM  18        Mr. Akau, do you, sir, understand the potential

10:28AM  19  penalties that you face for pleading guilty to Count 1 as just

10:28AM  20  described by AUSA Inciong?

10:28AM  21        THE DEFENDANT:  Yes, Your Honor, I understand fully.

10:28AM  22        THE COURT:  Then I'll turn back to Mr. Inciong.  I'm

10:28AM  23  going to turn back to him in just a minute to summarize the

10:28AM  24  essential terms of the plea agreement.  Before we get there, I

10:28AM  25  want to be sure, Mr. Akau, that you confirm you've entered into

| | | |
|---|---|---|
| 10:28AM | 1 | a plea agreement with the government, have you not? |
| 10:28AM | 2 | THE DEFENDANT:  Yes, Your Honor, I have. |
| 10:28AM | 3 | THE COURT:  And that is a written plea agreement? |
| 10:28AM | 4 | THE DEFENDANT:  Yes. |
| 10:28AM | 5 | THE COURT:  And can you confirm that you've read that |
| 10:28AM | 6 | document, the plea agreement, in full? |
| 10:28AM | 7 | THE DEFENDANT:  Yes, I have read it in full, Your |
| 10:28AM | 8 | Honor. |
| 10:28AM | 9 | THE COURT:  And discussed it with counsel as well? |
| 10:29AM | 10 | THE DEFENDANT:  Yes, I have. |
| 10:29AM | 11 | THE COURT:  Are you confident, based on your own |
| 10:29AM | 12 | review and discussions with counsel, that you understand each |
| 10:29AM | 13 | of the terms of your plea agreement with the United States? |
| 10:29AM | 14 | THE DEFENDANT:  Yes, I do, Your Honor.  I understand |
| 10:29AM | 15 | fully. |
| 10:29AM | 16 | THE COURT:  It is a 22-paged document that is the plea |
| 10:29AM | 17 | agreement.  Is that your signature, sir?  I have a copy of it |
| 10:29AM | 18 | here in front of me, is that your signature that appears on the |
| 10:29AM | 19 | final page, page 22, which at least on my copy bears the date |
| 10:29AM | 20 | of June 8, 2021? |
| 10:29AM | 21 | THE DEFENDANT:  Yes, Your Honor, that is my signature. |
| 10:29AM | 22 | THE COURT:  And does the plea agreement reflect the |
| 10:29AM | 23 | entire agreement, Mr. Akau, that you have with the government? |
| 10:29AM | 24 | THE DEFENDANT:  Yes, it does, Your Honor. |
| 10:29AM | 25 | THE COURT:  In other words, did the government make |

10:29AM   1   any verbal or oral promises to you that they did not put into

10:29AM   2   the body of the written plea agreement?

10:29AM   3           THE DEFENDANT:  There was no promises that is not

10:29AM   4   written on the plea agreement, Your Honor.

10:29AM   5           THE COURT:  Do you understand, Mr. Akau, that the

10:30AM   6   Court is not required to accept the plea agreement and that I

10:30AM   7   could reject it after I consider a presentence investigation

10:30AM   8   and investigation report, both of which will be completed over

10:30AM   9   the course of the next several months after the conclusion of

10:30AM  10   this morning's hearing?

10:30AM  11           THE DEFENDANT:  Yes, Your Honor.

10:30AM  12           MR. RICHARDS:  Your Honor --

10:30AM  13           THE COURT:  Do you understand --

10:30AM  14           Mr. Richards.

10:30AM  15           MR. RICHARDS:  On the question of promises, I just

10:30AM  16   want the Court to be aware that before there was a confirmation

10:30AM  17   between counsel and I that his proffer statements would not be

10:30AM  18   used against him at sentencing and then we discovered later on,

10:30AM  19   after we discussed sort of a side letter we had, that the plea

10:30AM  20   agreement did provide in paragraph 21E, sort of the same thing.

10:30AM  21   But I just wanted the Court to be aware that I did advise my

10:31AM  22   client, and we did have an agreement that the statements that

10:31AM  23   were made in the proffer section that may not be part of the

10:31AM  24   indictment were not going to be used against Mr. Akau.

10:31AM  25           THE COURT:  Okay.  Mr. Inciong, can you -- do you want

10:31AM   1   to address that?

10:31AM   2          MR. INCIONG:  Yes, Your Honor.  As I discussed with

10:31AM   3   Mr. Richards, I was going to address this when we got into the

10:31AM   4   description of the plea agreement.  But at paragraph 21E of the

10:31AM   5   plea agreement on page 20, which states that pursuant to

10:31AM   6   Section 1B1.8(a) of the Sentencing Guidelines, the prosecution

10:31AM   7   agrees that self-incriminating information provided pursuant to

10:31AM   8   this agreement to cooperate will not be used in determining the

10:31AM   9   applicable guideline range, except as may be provided in this

10:31AM   10  agreement and under Section 1B1.8, subparagraph B, of the

10:31AM   11  Sentencing Guidelines.

10:31AM   12         In paragraph 8E of the factual basis of the plea

10:32AM   13  agreement, there are some admissions that are included that the

10:32AM   14  defendant made under proffer.  So the government's position, as

10:32AM   15  I've explained to Mr. Richards, is that those admissions fall

10:32AM   16  squarely under the protections of paragraph 21E, and thus they

10:32AM   17  would not be used against Mr. Akau to determine his Sentencing

10:32AM   18  Guideline range or relevant conduct or anything of that nature.

10:32AM   19  So I believe it is fully covered by the plea agreement.

10:32AM   20         THE COURT:  Okay.  All right, I appreciate that

10:32AM   21  clarification.  We will get into the body of the plea agreement

10:32AM   22  in just a minute, I promise you.

10:32AM   23         Before we do that, Mr. Akau, there are just a couple

10:32AM   24  more questions that I want to ask you, the first of which is:

10:32AM   25  Do you understand, sir, that any stipulations in the plea

10:32AM   1   agreement are stipulations that you've reached with the

10:32AM   2   Department of Justice or the U.S. Attorney's Office and that

10:32AM   3   the Court is specifically not bound by those stipulations?

10:33AM   4           THE DEFENDANT:  I understand, Your Honor.

10:33AM   5           THE COURT:  And now, Mr. Inciong, now we've gotten to

10:33AM   6   that point.  If you would, please describe the essential terms

10:33AM   7   of the government's plea agreement with Mr. Akau to include any

10:33AM   8   appellate waiver provisions, please.

10:33AM   9           MR. INCIONG:  Yes, Your Honor.  The terms of the plea

10:33AM   10  agreement to which the government and Mr. Akau have entered are

10:33AM   11  as follows:

10:33AM   12          First, Mr. Akau acknowledges that he has been charged

10:33AM   13  in Counts 1, 16, 17, 18 and 19 of the superseding indictment in

10:33AM   14  this matter, which has also placed him on notice of the first,

10:33AM   15  second, fourth, and fifth forfeiture allegations.

10:33AM   16          The defendant has read the charges against him

10:33AM   17  contained in the superseding indictment and those charges have

10:33AM   18  been fully explained to him by Mr. Richards, his attorney.  The

10:33AM   19  defendant fully understands the nature and elements of the

10:33AM   20  crimes with which he has been charged.

10:33AM   21          As part of the agreement, pursuant to the agreement,

10:33AM   22  the defendant will enter a voluntary plea of guilty to Count 1

10:34AM   23  of the superseding indictment which charges him with conspiring

10:34AM   24  to violate the racketeering laws of the United States,

10:34AM   25  specifically Title 18, U.S. Code, Section 1962(d), as in David.

10:34AM   1         In return, the government agrees to move to dismiss

10:34AM   2   Counts 16, 17, 18, and 19 of the superseding indictment as to

10:34AM   3   Mr. Akau after sentencing.

10:34AM   4         The government also has agreed not to file any

10:34AM   5   additional charges against the defendant for attempted murder

10:34AM   6   or his participation in any murder for hire scheme to the

10:34AM   7   extent those are now known to the government.

10:34AM   8         The defendant agrees that this memorandum of plea

10:34AM   9   agreement shall be filed and become part of the record in this

10:34AM  10   case.

10:34AM  11         The defendant entered this plea because he is in fact

10:34AM  12   guilty of conspiring to violate the racketeering laws of the

10:34AM  13   United States as charged in Count 1 of the superseding

10:34AM  14   indictment and agrees that his plea is voluntary and not the

10:34AM  15   result of any force or threats.

10:35AM  16         The defendant understands the maximum penalties which

10:35AM  17   were recited a few minutes ago that apply to this particular

10:35AM  18   charge.  As indicated, there is a forfeiture provision on

10:35AM  19   paragraph 7C at page 4, but there is no applicable specific

10:35AM  20   forfeiture at this time.

10:35AM  21         The Court could also award restitution pursuant to

10:35AM  22   Title 18, U.S. Code, Section 3663A if appropriate as well.

10:35AM  23         There are a number of factual stipulations, which I

10:35AM  24   will address later, which begin at page 5 on paragraph 8 of the

10:35AM  25   plea agreement.  Those continue on to page 6, 7, 8, 9 and

10:35AM  1    concludes on the top of page 10.

10:35AM  2            There are a number of sentencing stipulations as well.

10:36AM  3    But before I address those, I should also note to the Court

10:36AM  4    that the parties agree that the charge to which the defendant

10:36AM  5    is pleading guilty adequately reflects the seriousness of the

10:36AM  6    actual offense behavior and that accepting this plea agreement

10:36AM  7    would not undermine any statutory purposes of sentencing.

10:36AM  8            As far as stipulations, the parties stipulate to the

10:36AM  9    facts set forth in paragraph 8 of the plea agreement.  Also, as

10:36AM  10   of the date of this plea agreement, it is expected that the

10:36AM  11   defendant will enter a plea of guilty prior to the commencement

10:36AM  12   of trial, will truthfully admit his involvement in the offense

10:36AM  13   and related conduct, and will not engage in conduct that is

10:36AM  14   inconsistent with such acceptance of responsibility.  If all of

10:36AM  15   those events occur, and the defendant's acceptance of

10:36AM  16   responsibility continues through the date of sentencing, a

10:36AM  17   downward adjustment of minus two levels for acceptance of

10:36AM  18   responsibility will be appropriate pursuant to Guideline

10:36AM  19   Section 3E1.1, subparagraph A, and Application Note 3.

10:37AM  20           The U.S. attorney also agrees that Mr. Akau's

10:37AM  21   agreement to enter into a guilty plea constitutes notice of

10:37AM  22   intent to plead guilty in a timely manner, so as to permit the

10:37AM  23   government to avoid preparing for trial as to Mr. Akau.

10:37AM  24   Accordingly, the U.S. Attorney anticipates moving in the

10:37AM  25   government's sentencing statement for an additional one-level

10:37AM   1   reduction in sentencing pursuant to Guideline Section 3E1.1,

10:37AM   2   subparagraph B, subparagraph two, if the defendant is otherwise

10:37AM   3   eligible.

10:37AM   4        The defendant understands however that notwithstanding

10:37AM   5   those present intentions, and still within the parameters of

10:37AM   6   this plea agreement, the prosecution reserves its right to,

10:37AM   7   one, argue to the contrary in the event that new information

10:37AM   8   relating to those issues is received prior to sentencing, and,

10:37AM   9   number two, to call and examine witnesses on those issues in

10:37AM   10   the event that either U.S. Probation finds to the contrary of

10:37AM   11   the prosecution's intentions or that the Court requests

10:38AM   12   evidence be presented on those issues.

10:38AM   13        Also, the parties agree and stipulate that

10:38AM   14   notwithstanding the parties' agreement herein, the Court is not

10:38AM   15   bound by any stipulation entered into by the parties but may,

10:38AM   16   with the aid of the presentence report, determine any facts

10:38AM   17   relevant to sentencing.  The parties also understand that the

10:38AM   18   Court's rejection of any stipulation between the parties does

10:38AM   19   not constitute a refusal to accept this plea agreement since

10:38AM   20   the Court is expressly not bound by any stipulations between

10:38AM   21   the parties.

10:38AM   22        The parties do represent, Your Honor, that as of the

10:38AM   23   date of this agreement there are no material facts in dispute.

10:38AM   24        Ordinarily, Mr. Akau would have the right to appeal or

10:38AM   25   collaterally review his sentence and conviction.  The defendant

10:38AM   1   understands though that he is knowingly and voluntarily waiving

10:38AM   2   his right to appeal in this case pursuant to the plea

10:38AM   3   agreement, except as indicated in subparagraph B of paragraph

10:39AM   4   13.  That includes his conviction and sentence within the

10:39AM   5   guideline range as determined by the Court at the time of

10:39AM   6   sentencing, as well as any lawful restitution or forfeiture

10:39AM   7   order imposed or the manner in which the sentence, restitution

10:39AM   8   or forfeiture order was determined on any ground whatsoever in

10:39AM   9   exchange for concessions made by the prosecution in this plea

10:39AM   10  agreement.  The defendant does understand that this waiver

10:39AM   11  includes the right to assert any and all legally waivable

10:39AM   12  claims.

10:39AM   13          The defendant also waives the right to challenge his

10:39AM   14  conviction or sentence or the manner in which it was determined

10:39AM   15  in any collateral attack including, but not limited to, a

10:39AM   16  motion brought under Title 28, U.S. Code, Section 2255, except

10:39AM   17  that the defendant may make such a challenge, one, as to the

10:39AM   18  terms indicated in subparagraph B, which I'll address in a

10:39AM   19  minute, or two, based on a claim of ineffective assistance of

10:39AM   20  counsel.

10:39AM   21          In other words, the defendant is waiving his rights to

10:39AM   22  appeal and collaterally attack in this case except for two

10:40AM   23  limited circumstances.  The first being that if the Court would

10:40AM   24  impose a sentence greater than that as specified in the

10:40AM   25  applicable guideline range that is determined by the Court to

10:40AM 1    the defendant, based on the facts in this case, Mr. Akau would

10:40AM 2    retain his right to appeal the portion of his sentence greater

10:40AM 3    than the applicable guideline range.  And as indicated also, he

10:40AM 4    would retain his right to appeal or collaterally attack any

10:40AM 5    claim that he believes he has based on ineffective assistance

10:40AM 6    of counsel.

10:40AM 7         The prosecution does retain its right to appeal the

10:40AM 8    sentence and the manner in which it was determined on any

10:40AM 9    grounds stated in Title 18, U.S. Code, Section 3742(b).

10:40AM 10        There is a financial disclosure provision as part of

10:40AM 11   this plea agreement wherein Mr. Akau is agreeing to fully

10:40AM 12   disclose all assets in which he has any interest or which he

10:40AM 13   exercises control, either directly or indirectly, including any

10:41AM 14   assets held by a spouse, nominee, or third party.

10:41AM 15        The defendant understands that the U.S. Probation

10:41AM 16   Office will conduct a presentence investigation that will

10:41AM 17   require the defendant to complete a comprehensive financial

10:41AM 18   statement.  To avoid the requirement of the defendant

10:41AM 19   completing financial statements for both the U.S. Probation

10:41AM 20   Office and the government, the defendant has agreed to

10:41AM 21   truthfully complete a financial statement provided to him by

10:41AM 22   the U.S. Attorney's Office.  In it the defendant agrees to

10:41AM 23   complete the disclosure statement and provide it to the U.S.

10:41AM 24   Probation Office within the time frame required by the officer

10:41AM 25   assigned to the defendant's case.

10:41AM  1      The defendant understands that the U.S. Probation

10:41AM  2   Office will in turn provide a copy of the completed financial

10:41AM  3   statement to the U.S. Attorney's office.  The defendant agrees

10:41AM  4   to provide written updates to both the U.S. Probation Office

10:41AM  5   and the U.S. Attorney's Office regarding any material change in

10:41AM  6   circumstances which occur prior to sentencing.  The defendant's

10:42AM  7   failure to timely and accurately complete and sign the

10:42AM  8   financial statement and any updates in addition to any other

10:42AM  9   penalty or remedy constitute a failure to accept responsibility

10:42AM  10  under Guideline Section 3E1.1.

10:42AM  11     As part of that financial disclosure agreement, the

10:42AM  12  defendant has also expressly authorized the U.S. Attorney's

10:42AM  13  Office to obtain his credit report.

10:42AM  14     Finally, prior to sentencing, the defendant agrees to

10:42AM  15  notify the financial litigation office of the U.S. Attorney's

10:42AM  16  Office, before making any transfer of an interest in any

10:42AM  17  property with a value exceeding $1,000, either owned directly

10:42AM  18  or indirectly, individually or jointly held by defendant,

10:42AM  19  including any interest held or owned under any name, including

10:42AM  20  trusts, partnerships, and corporations.

10:42AM  21     In regard to imposition of sentence, the defendant

10:42AM  22  understands that the District Court in imposing his sentence

10:42AM  23  will consider the provisions of the Sentencing Guidelines; that

10:42AM  24  there was no promise or guarantee as to the applicability or

10:43AM  25  non-applicability of those guidelines.

10:43AM   1           The defendant also understands that this plea

10:43AM   2   agreement will not be accepted or rejected by the Court until

10:43AM   3   it has had an opportunity to consider the presentence report

10:43AM   4   that will be prepared in this case.

10:43AM   5           The defendant understands that the Court will not

10:43AM   6   accept an agreement unless the Court determines that the

10:43AM   7   remaining charge adequately reflects the seriousness of the

10:43AM   8   actual offense behavior and that accepting the plea agreement

10:43AM   9   would not undermine any statutory purposes of sentencing.

10:43AM   10          By entering this plea agreement the defendant is

10:43AM   11  waiving a number of important trial rights, both constitutional

10:43AM   12  and otherwise, including the right to have a speedy trial and

10:43AM   13  to have his case heard by a jury of 12 peers.

10:43AM   14          The defendant also understands that he would have a

10:43AM   15  privilege against self-incrimination so that he could decline

10:43AM   16  to testify and that no inference of guilt could be drawn from

10:43AM   17  his refusal to testify.

10:44AM   18          The defendant understands that by pleading guilty, he

10:44AM   19  is waiving all of the rights set forth in this paragraph and

10:44AM   20  that his attorney has explained those rights to him along with

10:44AM   21  the consequences of the waiver of those rights.

10:44AM   22          In regard to use of plea statements, Your Honor, if

10:44AM   23  after signing the agreement the defendant decides not to plead

10:44AM   24  guilty as provided herein, or if the defendant pleads guilty

10:44AM   25  but subsequently makes a motion before this Court to withdraw

10:44AM   1   his guilty plea and the Court would grand that motion, the

10:44AM   2   defendant agrees that any admission of guilt that he makes by

10:44AM   3   signing this agreement or that he make while pleading as set

10:44AM   4   forth in this plea agreement may be used against him in a

10:44AM   5   subsequent trial if the defendant later proceeds to trial.  The

10:44AM   6   defendant voluntarily, knowingly, and intelligently waives any

10:44AM   7   protections afforded by Rule 11(f) of the Federal Rules of

10:44AM   8   Criminal Procedure and Rule 410 of the Federal Rules of

10:44AM   9   Evidence regarding the use of statements made in this agreement

10:44AM  10   or during the course of pleading guilty when or if the guilty

10:44AM  11   plea is later withdrawn.  The only exception to this paragraph

10:45AM  12   is where the defendant fully complies with this agreement but

10:45AM  13   the Court nonetheless rejects it.  Under those circumstances,

10:45AM  14   the United States may not use those statements against the

10:45AM  15   defendant for any purpose.

10:45AM  16        Lastly, the defendant understands that the prosecution

10:45AM  17   will apprise the Court and the U.S. Probation Officer of the

10:45AM  18   nature, scope, and extent of the defendant's conduct regarding

10:45AM  19   the charges against him, related matters, and any matters in

10:45AM  20   aggravation or mitigation which are relevant to sentencing.

10:45AM  21        There is a cooperation provision pursuant to this plea

10:45AM  22   agreement, Your Honor.  The defendant agrees that he will fully

10:45AM  23   cooperate with the United States, which includes agreeing to

10:45AM  24   testifying truthfully at any and all trials, hearings, or any

10:45AM  25   other proceedings at which the prosecution requests him to

10:45AM   1    testify, including but not limited to any grand jury

10:45AM   2    proceedings, trial proceedings involving co-defendants and

10:45AM   3    others charged later in this investigation, sentencing

10:46AM   4    hearings, and related civil proceedings.

10:46AM   5        The defendant also agrees to be available to speak

10:46AM   6    with law enforcement officials and representatives of the

10:46AM   7    U.S. Attorney's Office at any time and to give truthful and

10:46AM   8    complete answers at such meetings, but understands he may have

10:46AM   9    counsel present at those conversations.

10:46AM   10        Defendant agrees that he will not assert any privilege

10:46AM   11    to refuse to testify at any grand jury, trial, or other

10:46AM   12    proceeding, involving or related to the crimes charged in this

10:46AM   13    superseding indictment or any subsequent charges related to

10:46AM   14    this investigation, at which the prosecution requests him to

10:46AM   15    testify.

10:46AM   16        The defendant also understands that his sentencing

10:46AM   17    date may be delayed based on the government's need for his

10:46AM   18    continued cooperation, and agrees not to object to any

10:46AM   19    continuances of the defendant's sentencing date sought by the

10:46AM   20    United States.

10:46AM   21        Subparagraph E is the paragraph I addressed earlier.

10:46AM   22    Your Honor, pursuant to Section 1B1.8(a) in which the

10:46AM   23    defendant's admissions made under proffer may not be used

10:47AM   24    against him in any way in determining his sentence, relevant

10:47AM   25    conduct, and so forth.  I should also add that it is the

10:47AM   1   government's view that those statements provided against his

10:47AM   2   own interest, which are included in the factual basis, are in

10:47AM   3   the government's view part of his cooperation and will be

10:47AM   4   addressed and brought to the Court's attention in the form of a

10:47AM   5   5K motion, if and when that time is appropriate.

10:47AM   6         In the event that the defendant does not breach any of

10:47AM   7   the terms of this agreement but the Court nonetheless refuses

10:47AM   8   to accept the agreement after the defendant has made statements

10:47AM   9   to law enforcement authorities, the prosecution agrees not to

10:47AM   10  use those statements in its case-in-chief in the trial of the

10:47AM   11  defendant in this matter.

10:47AM   12        The defendant understands, however, that this does not

10:47AM   13  bar the use of information and evidence derived from said

10:47AM   14  statements or prohibit the use of the statements by the

10:47AM   15  prosecution in cross-examination or rebuttal.

10:48AM   16        Pursuant to Guideline Section 5K1.1 and Rule 35(b) of

10:48AM   17  the Federal Rules of Criminal Procedure, the prosecution may

10:48AM   18  move the Court to depart from the guidelines on the ground that

10:48AM   19  defendant provided substantial assistance to authorities in the

10:48AM   20  investigation or prosecution of another person who has

10:48AM   21  committed an offense.  The defendant understands, however, that

10:48AM   22  the decision as to whether to make such a request or motion

10:48AM   23  lies entirely within the discretion of the prosecution.

10:48AM   24        This agreement does not require the prosecution to

10:48AM   25  make such a request or motion.

10:48AM    1          The agreement confers neither any right upon the

10:48AM    2    defendant to have the prosecution make such a request for a

10:48AM    3    motion, nor any remedy to the defendant in the event the

10:48AM    4    prosecution fails to make such a request or motion.

10:48AM    5          Even in the event that the prosecution makes such a

10:48AM    6    request or motion, the Court may refuse to depart from the

10:48AM    7    guidelines or to impose a sentence below the minimum level if

10:48AM    8    applicable established by statute, as the Court has final

10:49AM    9    discretion over any such motion.

10:49AM   10          The defendant and his attorney acknowledge that, apart

10:49AM   11    from any written agreements, if applicable, no threats,

10:49AM   12    promises, agreements or conditions have been entered into by

10:49AM   13    the parties other than those set forth in this agreement, to

10:49AM   14    induce the defendant to plead guilty.  Apart from any written

10:49AM   15    proffer agreements, this agreement supersedes all prior

10:49AM   16    promises, agreements or conditions between the parties.

10:49AM   17          To become effective, this plea agreement must be

10:49AM   18    signed by all signatories; that has been done.  Because of the

10:49AM   19    defendant's incarceration and the pandemic, it is on two

10:49AM   20    separate pages, Your Honor.  The government's original

10:49AM   21    signatures are shown on the first page 22 (verbatim), which is

10:49AM   22    dated today's date, June 8, 2021.  The defendant's signature,

10:49AM   23    along with his attorney's signature, are on the second page 22

10:49AM   24    which is the final page of this plea agreement.

10:49AM   25          Finally, the parties agree that should the Court

10:50AM   1   refuse to accept this plea agreement, it is null and avoid at

10:50AM   2   that point and neither party would be bound thereto.  Those are

10:50AM   3   the terms of the plea agreement, Your Honor.

10:50AM   4        THE COURT:  Mr. Richards, do you agree that AUSA

10:50AM   5   Inciong has accurately described the essential terms of your

10:50AM   6   client's plea agreement with the government?

10:50AM   7        MR. RICHARDS:  Yes.

10:50AM   8        THE COURT:  Mr. Akau, there are some important trial

10:50AM   9   and trial related rights that you would be waiving by virtue of

10:50AM  10   proceeding with this plea.  Those rights are largely described

10:50AM  11   at paragraphs 17 and 18 of this plea agreement.  I'm going to

10:50AM  12   go over those rights with you now, the first of which, sir, is:

10:50AM  13        Do you understand that under the constitution and laws

10:50AM  14   of the United States, you do have the right not to plead guilty

10:50AM  15   and to proceed to a trial, including a trial by jury, on the

10:50AM  16   charges brought against you?

10:50AM  17        THE DEFENDANT:  Yes, I understand, Your Honor.

10:50AM  18        THE COURT:  Mr. Akau, do you further understand that

10:51AM  19   if you were to proceed to trial, you would be presumed

10:51AM  20   innocent, which means that the government would have the burden

10:51AM  21   of proving your guilt to a jury beyond a reasonable doubt and

10:51AM  22   that at no time would you have the burden of proving you are

10:51AM  23   not guilty?

10:51AM  24        THE DEFENDANT:  I understand, Your Honor.

10:51AM  25        THE COURT:  Do you understand further that in order to

| | | |
|---|---|---|
| 10:51AM | 1 | be found guilty at a trial, a jury of 12 persons from the local |
| 10:51AM | 2 | community would have to find your guilt not only beyond a |
| 10:51AM | 3 | reasonable doubt but they would have to do unanimously? |
| 10:51AM | 4 | THE DEFENDANT:  I understand, Your Honor. |
| 10:51AM | 5 | THE COURT:  Do you understand that at all stages of |
| 10:51AM | 6 | the prosecution, which includes trial, you have the right to |
| 10:51AM | 7 | the assistance of counsel, as you do here this morning, and if |
| 10:51AM | 8 | at any point in time you could not afford counsel one would be |
| 10:51AM | 9 | appointed for you by the Court at no cost to you? |
| 10:51AM | 10 | THE DEFENDANT:  I understand, Your Honor. |
| 10:51AM | 11 | THE COURT:  Mr. Akau, do you further understand that |
| 10:51AM | 12 | at any trial you would have the right to see and to hear all of |
| 10:51AM | 13 | the government's evidence and witnesses and to have those |
| 10:52AM | 14 | witnesses questioned by your own attorney? |
| 10:52AM | 15 | THE DEFENDANT:  I understand, Your Honor. |
| 10:52AM | 16 | THE COURT:  Can you also confirm you understand that |
| 10:52AM | 17 | at any trial you could object to any of the evidence offered by |
| 10:52AM | 18 | the United States, and you could present evidence of your own |
| 10:52AM | 19 | in your case in chief including through witness testimony that |
| 10:52AM | 20 | is compelled through the Court's subpoena power, if that were |
| 10:52AM | 21 | necessary? |
| 10:52AM | 22 | THE DEFENDANT:  I understand, Your Honor. |
| 10:52AM | 23 | THE COURT:  Do you understand that at any trial you |
| 10:52AM | 24 | would also have the right to testify on your own behalf, if you |
| 10:52AM | 25 | chose to do that; but if you chose not to, no inference or |

10:52AM   1   suggestion of your guilt could be drawn by the jury by the fact

10:52AM   2   that you chose not to testify?

10:52AM   3          THE DEFENDANT:  I understand, Your Honor.

10:52AM   4          THE COURT:  Do you understand, Mr. Akau, that by

10:52AM   5   entering a plea of guilty here this morning, and if I were to

10:52AM   6   accept that plea, there will be no trial and you will have

10:52AM   7   given up each of these trial related rights that I just

10:52AM   8   mentioned?

10:52AM   9          THE DEFENDANT:  I understand, Your Honor.

10:52AM  10          THE COURT:  Do you as well understand, sir, that to

10:53AM  11   proceed with your plea, you will also need to give up your

10:53AM  12   right not to incriminate yourself, and the reason for that is

10:53AM  13   I'm about to ask you a few questions about what you did that

10:53AM  14   makes you guilty of Count 1, and those questions will need to

10:53AM  15   be answered?

10:53AM  16          THE DEFENDANT:  Yes, Your Honor, I understand.

10:53AM  17          THE COURT:  Do you have any -- Mr. Akau, do you have

10:53AM  18   questions at all regarding any of these rights that I just

10:53AM  19   mentioned?

10:53AM  20          THE DEFENDANT:  I do not at this time, Your Honor.

10:53AM  21          THE COURT:  And knowing these rights, do you still

10:53AM  22   wish to proceed with your plea?

10:53AM  23          THE DEFENDANT:  Yes, I do Your Honor.

10:53AM  24          THE COURT:  Are you a United States citizen, Mr. Akau?

10:53AM  25          THE DEFENDANT:  Yes, I am.  Your Honor.

10:53AM  1           THE COURT:  As a United States citizen then you need

10:53AM  2   to understand that the charge brought against you, Count 1 of

10:53AM  3   the indictment, is considered a felony offense.  If your plea

10:53AM  4   is accepted and you are adjudged guilty of that offense, that

10:53AM  5   adjudication by the Court could deprive you of some valuable

10:53AM  6   civil rights.  Those civil rights include the right to vote,

10:53AM  7   the right to hold public office, the right to sit on a jury, as

10:54AM  8   well as the right to possess or bear a firearm; do you

10:54AM  9   understand that as well?

10:54AM  10          THE DEFENDANT:  Yes, Your Honor, I understand.

10:54AM  11          THE COURT:  With regard to sentencing, United States

10:54AM  12  law establishes detailed sentencing guidelines that apply to

10:54AM  13  those who are convicted of, which include those who plead

10:54AM  14  guilty to federal crimes.  The sentencing judge, in this case

10:54AM  15  most likely myself, must consider those sentencing guidelines

10:54AM  16  and additionally must consider the statutory sentencing factors

10:54AM  17  that are set forth at 18 United States Code, Section 3553(a).

10:54AM  18          Although the sentencing judge must consider the

10:54AM  19  sentencing guidelines, those guidelines are what the name might

10:54AM  20  imply to you.  They are guidelines which means that they are

10:54AM  21  advisory on this Court only.  Do you understand that?

10:54AM  22          THE DEFENDANT:  Yes, Your Honor, I understand.

10:54AM  23          THE COURT:  Mr. Akau, have you discussed with

10:54AM  24  Mr. Richards how the sentencing guidelines might apply to your

10:54AM  25  case?

10:54AM   1            THE DEFENDANT:  Yes, I have Your Honor.

10:54AM   2            THE COURT:  And I always am careful to use the term

10:55AM   3   "might" and that's because as I sit here today I cannot with

10:55AM   4   precision tell you how the guidelines will apply to your case.

10:55AM   5   I will not be able to do that until after a presentence

10:55AM   6   investigation and investigation report have been completed and

10:55AM   7   after both Mr. Inciong and Mr. Richards have an opportunity to

10:55AM   8   provide me with any comments on or objections to the contents

10:55AM   9   of that report that they may have.  Do you understand that

10:55AM   10  process?

10:55AM   11           THE DEFENDANT:  Yes, Your Honor, I understand.

10:55AM   12           THE COURT:  Now approximately three to four months

10:55AM   13  from now there will come a time when I'm able to determine with

10:55AM   14  some precision how the guidelines apply to your case and how

10:55AM   15  the 3553(a) statutory factors likewise apply.  When I consider

10:55AM   16  both of those items, I could impose a sentence that is either

10:55AM   17  more or less severe than what the guidelines call for.  Do you

10:55AM   18  understand that?

10:55AM   19           THE DEFENDANT:  Yes, Your Honor, I understand.

10:55AM   20           THE COURT:  Now, Mr. Akau if I were to impose a

10:55AM   21  sentence that is more severe than what you expect or more

10:56AM   22  severe than what the guidelines call for, do you realize and

10:56AM   23  understand that you will still be bound by both your plea as

10:56AM   24  well as your plea agreement and at least on that basis will

10:56AM   25  have no right to withdraw from either?

| | | |
|---|---|---|
| 10:56AM | 1 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:56AM | 2 | THE COURT:  Do you understand that despite any |
| 10:56AM | 3 | discussions you may have had with Mr. Richards, with |
| 10:56AM | 4 | Mr. Inciong, or with anyone else regarding the type or the |
| 10:56AM | 5 | duration of the sentence you are likely to receive, or |
| 10:56AM | 6 | regarding any sentencing recommendation that they may wish to |
| 10:56AM | 7 | provide to me, I am not bound by those discussions nor is the |
| 10:56AM | 8 | Court bound by any sentencing recommendations provided to it, |
| 10:56AM | 9 | and I could impose a sentence that is more severe than what you |
| 10:56AM | 10 | expect up to the maximum permitted by law? |
| 10:56AM | 11 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:56AM | 12 | THE COURT:  Mr. Akau, has anyone made any promises to |
| 10:56AM | 13 | you regarding what your sentence will be? |
| 10:56AM | 14 | THE DEFENDANT:  Only to what was on the plea |
| 10:56AM | 15 | agreement, Your Honor. |
| 10:56AM | 16 | THE COURT:  Well, the plea agreement doesn't specify |
| 10:56AM | 17 | any kind of sentence at all.  Do you understand that? |
| 10:57AM | 18 | MR. RICHARDS:  Your Honor, I did promise him there is |
| 10:57AM | 19 | no mandatory minimum and a cap of 20 years, so that's the |
| 10:57AM | 20 | promise I made. |
| 10:57AM | 21 | THE COURT:  Okay.  So you're talking about what the |
| 10:57AM | 22 | statutory penalties that you face -- we went over this a few |
| 10:57AM | 23 | minutes ago -- the potential penalties that you face for |
| 10:57AM | 24 | pleading guilty to this particular count; is that what you're |
| 10:57AM | 25 | referring to, sir? |

10:57AM   1            THE DEFENDANT:  Yes, sir, Your Honor.  That's what I'm

10:57AM   2    referring to.

10:57AM   3            THE COURT:  All right, has anyone made any other

10:57AM   4    promises to you regarding what your sentence will be?

10:57AM   5            THE DEFENDANT:  No, Your Honor.

10:57AM   6            THE COURT:  Do you understand, Mr. Akau, that at the

10:57AM   7    time of sentencing there is no limitation on the information

10:57AM   8    that I can consider regarding your background, your character,

10:57AM   9    and your conduct except that the information I use must be

10:57AM  10    sufficiently reliable?

10:57AM  11            MR. RICHARDS:  Your Honor --

10:57AM  12            THE DEFENDANT:  Yes, Your Honor.

10:57AM  13            MR. RICHARDS:  -- are you excluding the -- you

10:57AM  14    wouldn't consider the material covered by 21E, correct?

10:57AM  15            THE COURT:  I mean, we've been through this four

10:58AM  16    times, haven't we?

10:58AM  17            MR. RICHARDS:  Well, I just wanted the Court to know I

10:58AM  18    had an experience recently in another matter where cooperation

10:58AM  19    statements were considered, and I just didn't want to make a

10:58AM  20    misunderstanding on that; that was why I clarified it.

10:58AM  21            THE COURT:  I understand the agreement that you've

10:58AM  22    reached with the U.S. Attorney's Office with respect to 21E.

10:58AM  23            MR. RICHARDS:  Thank you.

10:58AM  24            THE COURT:  Mr. Akau, do you, sir, understand if a

10:58AM  25    term of imprisonment is imposed as part of your sentence, a

10:58AM  1    term of what we call supervised release is very likely to

10:58AM  2    follow, and if you were to violate any of the conditions of

10:58AM  3    supervised release, additional prison time could be imposed?

10:58AM  4            THE DEFENDANT:  Yes, Your Honor, I understand.

10:58AM  5            THE COURT:  Are you aware as well that in the federal

10:58AM  6    system parole has been abolished and so, from a practical

10:58AM  7    standpoint, what that means is if a term of imprisonment is

10:59AM  8    imposed as part of your sentence you will not be released early

10:59AM  9    on parole?

10:59AM  10            THE DEFENDANT:  I understand, Your Honor.

10:59AM  11            THE COURT:  And do you as well understand that as part

10:59AM  12    of any final judgment in this case, the Court could order you

10:59AM  13    to pay a fine as well as a special assessment?

10:59AM  14            THE DEFENDANT:  Yes, Your Honor, I understand.

10:59AM  15            THE COURT:  Likewise, there is at least the potential

10:59AM  16    for restitution and forfeiture of specific property although,

10:59AM  17    as I understand it from the government's representation thus

10:59AM  18    far, there is no specific item or amount that is called for at

10:59AM  19    this time.

10:59AM  20            THE DEFENDANT:  Yes, Your Honor, I understand.

10:59AM  21            THE COURT:  Mr. Akau, there are some facts now that we

10:59AM  22    need to get into a bit; those are largely set forth at

10:59AM  23    paragraph 8 of your particular plea agreement.  I need to be

10:59AM  24    sure in other words that you in fact committed the crime that

10:59AM  25    you have been charged with and that you are prepared to plead

| | | |
|---|---|---|
| 11:00AM | 1 | guilty to of Count 1 of the indictment. |
| 11:00AM | 2 | The first step in that process is to ask the |
| 11:00AM | 3 | government's attorney to set forth the elements of that |
| 11:00AM | 4 | particular count. |
| 11:00AM | 5 | MR. INCIONG:  Thank you, Your Honor.  There are three |
| 11:00AM | 6 | elements that the United States would have to prove beyond a |
| 11:00AM | 7 | reasonable doubt if this matter proceeded to trial in regards |
| 11:00AM | 8 | to Count 1 of the superseding indictment. |
| 11:00AM | 9 | First, that there was an agreement between Mr. Akau |
| 11:00AM | 10 | and at least one other person to commit a crime at least one |
| 11:00AM | 11 | crime as charged in the superseding indictment.  In this case |
| 11:00AM | 12 | it's the violation of the racketeering laws. |
| 11:00AM | 13 | Secondly, that the defendant became a member of the |
| 11:00AM | 14 | conspiracy knowing of at least one of its objects and intending |
| 11:00AM | 15 | to help accomplish it. |
| 11:00AM | 16 | Thirdly, that at least one of the members of the |
| 11:00AM | 17 | conspiracy performed at least one overt act for the purpose of |
| 11:00AM | 18 | carrying out the conspiracy. |
| 11:00AM | 19 | The government's position is that the object of the |
| 11:00AM | 20 | conspiracy in this case, Your Honor, was to participate in the |
| 11:01AM | 21 | affairs of an association in fact as defined by Title 18 United |
| 11:01AM | 22 | States Code, Section 1962C.  There are four what I'll refer to |
| 11:01AM | 23 | as sub-elements that constitutes that particular crime; so I |
| 11:01AM | 24 | would like to put those on the record as well as elements that |
| 11:01AM | 25 | the government would have to prove beyond a reasonable doubt in |

11:01AM   1   its case in chief.

11:01AM   2          First, there was an ongoing enterprise with some sort

11:01AM   3   of formal are informal framework for carrying out its

11:01AM   4   objectives consisting of a group of persons associated together

11:01AM   5   for a common purpose of engaging in a course of conduct.

11:01AM   6          Second, the defendant was employed by or associated

11:01AM   7   with the enterprise.

11:01AM   8          Third, that the defendant participated directly or

11:01AM   9   indirectly in the conduct of the affairs of the enterprise

11:01AM   10  through a pattern of racketeering activity or collection of

11:01AM   11  unlawful debt.

11:01AM   12         And, fourth, that the enterprise engaged in or its

11:02AM   13  activities in some way affected commerce between one state and

11:02AM   14  another state or between the United States and a foreign

11:02AM   15  country.

11:02AM   16         Those would be the elements required for the

11:02AM   17  government to prove beyond a reasonable doubt in this matter,

11:02AM   18  Your Honor.

11:02AM   19         THE COURT:  Mr. Richards, do you have any disagreement

11:02AM   20  with Mr. Inciong's description of the elements of Count 1?

11:02AM   21         MR. RICHARDS:  No.

11:02AM   22         THE COURT:  Then I'll turn back to Mr. Inciong to

11:02AM   23  please describe the evidence that the government would offer in

11:02AM   24  this case if it were to proceed to trial.

11:02AM   25         MR. INCIONG:  Yes, Your Honor.  If this matter

| | | |
|---|---|---|
| 11:02AM | 1 | proceeded to trial the government would provide evidence to |
| 11:02AM | 2 | show the following: |
| 11:02AM | 3 | That from at least in or about 2016 and continuing up |
| 11:02AM | 4 | to including June of 2020, Mr. Norman L. Akau, III, the |
| 11:02AM | 5 | defendant, while working at the direction of others in the |
| 11:02AM | 6 | Miske Enterprise, along with others known and unknown, were |
| 11:02AM | 7 | members and associates of the Miske Enterprise, and that those |
| 11:02AM | 8 | members and associates of the Miske Enterprise operated |
| 11:03AM | 9 | principally under the direction and protection of Michael J. |
| 11:03AM | 10 | Miske, Jr. who used his power over members -- |
| 11:03AM | 11 | (Gap in audio transmission.) |
| 11:03AM | 12 | Should I continue, Your Honor?  I just want to make |
| 11:03AM | 13 | sure we have everyone here. |
| 11:03AM | 14 | MR. RICHARDS:  The Court is on mute. |
| 11:03AM | 15 | THE COURT:  Thank you, Mr. Richards. |
| 11:03AM | 16 | Mr. Akau, can you determine from anyone around you at |
| 11:03AM | 17 | FDC on your end whether or not you will be permitted to |
| 11:03AM | 18 | continue on this video connection beyond right now? |
| 11:03AM | 19 | THE DEFENDANT:  I can call the guard, Your Honor. |
| 11:03AM | 20 | THE CLERK:  Just to let you know, Judge Otake has an |
| 11:03AM | 21 | 11:00 hearing with FDC.  Shelli is standing by and needs to |
| 11:03AM | 22 | know when our hearing is going to finish.  Would you know how |
| 11:04AM | 23 | long more so I can let her know? |
| 11:04AM | 24 | THE COURT:  I don't know how much longer, but I |
| 11:04AM | 25 | anticipate we will need about 15 minutes at least, I would |

11:04AM   1   guess.

11:04AM   2         THE CLERK:  Okay, let me check with her.

11:04AM   3         THE COURT:  Can you see if they will stand by?  Thank

11:04AM   4   you.

11:04AM   5         MR. RICHARDS:  I'm happy to offer my Zoom, Your Honor,

11:04AM   6   if we need it.

11:04AM   7         THE COURT:  It's not your Zoom, we have Zoom as well,

11:04AM   8   Mr. Richards.  It's the FDC line.  It's your client that won't

11:04AM   9   be permitted to join, whether it's our Zoom or yours.

11:04AM   10         THE CLERK:  Okay, Judge, they will stand by.

11:04AM   11         THE COURT:  Thank you very much.

11:04AM   12         Go ahead, Mr. Inciong, let's hopefully try to finish

11:04AM   13   this up before we need to accede the line to Judge Otake.

11:04AM   14         MR. INCIONG:  Thank you, Your Honor.  As I indicated,

11:04AM   15   the evidence would show that members and associates of the

11:04AM   16   Miske Enterprise operated principally under the direction and

11:04AM   17   protection of Michael J. Miske, Jr., who used his power over

11:05AM   18   members and associates of the Miske Enterprise, his reputation

11:05AM   19   for violence in the community, and the various corporate

11:05AM   20   entities under his control to enrich the members and associates

11:05AM   21   of the Miske Enterprise and to protect the criminal activities.

11:05AM   22   The evidence would show that Mr. Akau was not aware at all

11:05AM   23   times as to who was working for Miske as he took directions

11:05AM   24   from others who worked for Miske.

11:05AM   25         The evidence would show that the Miske Enterprise,

| | | |
|---|---|---|
| 11:05AM | 1 | including its leadership, membership and associates, |
| 11:05AM | 2 | constituted an enterprise as that term is defined in Title 18, |
| 11:05AM | 3 | United States Code, Section 1961, subparagraph 4, that is, a |
| 11:05AM | 4 | group of individuals and its entities associated in fact.  The |
| 11:05AM | 5 | evidence would show that the Miske Enterprise was engaged in, |
| 11:05AM | 6 | and its activities affected, interstate commerce. |
| 11:05AM | 7 | Those areas most germane to this particular case, Your |
| 11:05AM | 8 | Honor, would be through the distribution of illegal drugs and |
| 11:05AM | 9 | the use of firearms which are manufactured outside of the State |
| 11:06AM | 10 | of Hawaii. |
| 11:06AM | 11 | The Miske Enterprise, the evidence would show, |
| 11:06AM | 12 | operated within the District of Hawaii and elsewhere and |
| 11:06AM | 13 | constituted an ongoing organization whose members and |
| 11:06AM | 14 | associates functioned as a continuing unit for a common purpose |
| 11:06AM | 15 | of achieving the objectives of the Miske Enterprise. |
| 11:06AM | 16 | The evidence would further show that beginning at |
| 11:06AM | 17 | least in or about 2016, Mr. Akau and others, known and unknown, |
| 11:06AM | 18 | being persons employed by and associated with the Miske |
| 11:06AM | 19 | Enterprise, willfully and knowingly combined, conspired, |
| 11:06AM | 20 | confederated, and agreed together and with each other to |
| 11:06AM | 21 | violate the racketeering laws of the United States, that is, to |
| 11:06AM | 22 | conduct and participate, directly and indirectly, in the |
| 11:06AM | 23 | conduct of the affairs of the Miske Enterprise through a |
| 11:06AM | 24 | pattern of racketeering activity, as that term is defined in |
| 11:06AM | 25 | Title 18, U.S. Code, Section 1961, subparagraph 1 and |

11:06AM   1   subparagraph 5, all within the parameters of Section 1962,

11:07AM   2   subparagraph D.

11:07AM   3        The evidence would show that the racketeering activity

11:07AM   4   to which Mr. Akau and others agreed included acts involving

11:07AM   5   attempted murder and murder for hire; the felonious trafficking

11:07AM   6   of controlled substances as alleged in Count 16 of the

11:07AM   7   superseding indictment; and acts involving robbery and firearms

11:07AM   8   relating to interference with interstate commerce as alleged in

11:07AM   9   Counts 17, 18 and 19 of the superseding indictment.

11:07AM   10        In regard to acts involving attempted murder and

11:07AM   11   murder for hire, the evidence would show that at various times

11:07AM   12   between in or around 2016 and 2017, Mr. Akau, along with other

11:07AM   13   members of the Miske Enterprise, were offered contracts to

11:07AM   14   commit and/or facilitate murder by Michael J. Miske, Jr. and

11:07AM   15   engaged in attempts to commit those murders as requested by

11:07AM   16   Miske.  Mr. Akau was not specifically directed by Miske but was

11:07AM   17   instead directed by Wayne Miller who did report directly to

11:08AM   18   Miske.

11:08AM   19        Specifically in or around 2016 and 2017, the evidence

11:08AM   20   would show that Mr. Akau, while being directed by Wayne Miller,

11:08AM   21   accepted an offer from Miske to murder Victim-12 in exchange

11:08AM   22   for $50,000.  To carry out the murder, the evidence would show

11:08AM   23   Miller and Akau followed Victim-12, with the assistance of a

11:08AM   24   GPS tracking device that Miller placed on Victim-12's vehicle,

11:08AM   25   to a plate lunch restaurant on Sand Island in Honolulu.  When

| | | |
|---|---|---|
| 11:08AM | 1 | Victim-12 -- |
| 11:08AM | 2 | A VOICE:  Hello, excuse me.  Just for your information |
| 11:08AM | 3 | there is an 11:00 appointment with Judge Otake next. |
| 11:08AM | 4 | THE COURT:  Yes, Judge Otake has agreed to stand down |
| 11:08AM | 5 | until we are complete. |
| 11:08AM | 6 | A VOICE:  Thank you. |
| 11:08AM | 7 | THE COURT:  Mr. Inciong, go ahead. |
| 11:08AM | 8 | MR. INCIONG:  Thank you, Your Honor.  The evidence |
| 11:08AM | 9 | would show that when Victim-12 came out of the restaurant, |
| 11:08AM | 10 | Mr. Akau, who was armed with a pistol, was about to pull the |
| 11:08AM | 11 | trigger in an attempt to shoot and kill Victim-12 when Miller |
| 11:09AM | 12 | ordered him to stand down and not shoot because Miller had been |
| 11:09AM | 13 | unable to remove the GPS tracker he placed on Victim-12's |
| 11:09AM | 14 | vehicle. |
| 11:09AM | 15 | The evidence would also show that in or around 2016, |
| 11:09AM | 16 | Mr. Akau was also offered $50,000 by Miske, again through Wayne |
| 11:09AM | 17 | Miller, this time to abduct Jonathan Fraser and transport him |
| 11:09AM | 18 | to the north shore of Oahu where another individual would |
| 11:09AM | 19 | commit Fraser's murder.  After thinking over the offer and |
| 11:09AM | 20 | discussing it with others, Mr. Akau declined to accept the |
| 11:09AM | 21 | offer because Fraser was, quote, a kid. |
| 11:09AM | 22 | In regards to offenses involving robbery and firearms |
| 11:09AM | 23 | relating to interference with interstate commerce, the evidence |
| 11:09AM | 24 | would show that at various times between in or around 2016 and |
| 11:09AM | 25 | in or around 2018, Mr. Akau, along with other members of the |

11:09AM   1   Miske Enterprise, engaged in and/or facilitated robberies.

11:09AM   2   Often the targets of these robberies were drug dealers.

11:10AM   3       For example, in or about 2016, Mr. Akau, along with

11:10AM   4   Jacob "Jake" Smith, Ashlin Akau, Harry Kauhi, Lance Bermudez

11:10AM   5   and at least one other individual participated in the robbery

11:10AM   6   of Victim-4, a suspected drug dealer, who was believed to be in

11:10AM   7   possession of a large quantity of methamphetamine.  The group

11:10AM   8   traveled in two separate vehicles and forced the car in which

11:10AM   9   Victim-4 was a passenger to stop on North School Street in

11:10AM  10   Honolulu.  Mr. Akau was in one of the vehicles and was dressed

11:10AM  11   to impersonate a plain clothes police officer.  He exited his

11:10AM  12   vehicle while flashing a badge he obtained while working on the

11:10AM  13   film set of Hawaii Five-0.  At the time Mr. Akau was armed with

11:10AM  14   a .38 caliber revolver and a .22 caliber pistol equipped with a

11:10AM  15   silencer in a backpack he was carrying.  Smith, Bermudez and at

11:10AM  16   least one other individual, all armed with guns and wearing

11:10AM  17   masks were in the second vehicle, a black BMW 3 series sedan,

11:11AM  18   driven by Bermudez.  While displaying his badge with a walkie

11:11AM  19   talkie in hand, Mr. Akau held Victim-4 and ordered him to a

11:11AM  20   nearby telephone pole.  Mr. Akau then went to the trunk of the

11:11AM  21   vehicle and grabbed a blue Walmart bag filled with several

11:11AM  22   pounds of methamphetamine.

11:11AM  23       After the robbery, Mr. Akau, Mr. Smith, Ashlin Akau,

11:11AM  24   John B. Stancil, Harry Kauhi, and Lance Bermudez, along with at

11:11AM  25   least one other individual, all met at another location and

| | | |
|---|---|---|
| 11:11AM | 1 | divided up the drugs amongst the groups. |
| 11:11AM | 2 | In regard to offenses involving the felonious |
| 11:11AM | 3 | trafficking of controlled substances, the evidence would show |
| 11:11AM | 4 | that between in or around 2016 and continuing to at least in or |
| 11:11AM | 5 | about August of 2018, Mr. Akau conspired with others to |
| 11:12AM | 6 | distribute and possess, with intent to distribute, controlled |
| 11:12AM | 7 | substances including methamphetamine. |
| 11:12AM | 8 | For example, after the 2016 robbery of Victim-4, I've |
| 11:12AM | 9 | just described which is reflected in subparagraph H, Mr. Akau |
| 11:12AM | 10 | possessed his share of the stolen methamphetamine which was |
| 11:12AM | 11 | approximately several ounces with the intend to further |
| 11:12AM | 12 | distribute those drugs to another person.  That would be the |
| 11:12AM | 13 | summary of the evidence the United States would produce at |
| 11:12AM | 14 | trial, Your Honor. |
| 11:12AM | 15 | THE COURT:  The details of that robbery of Victim-4 is |
| 11:12AM | 16 | actually set forth in paragraph 8F, not 8H; is that correct? |
| 11:12AM | 17 | MR. INCIONG:  Thank you.  Yes, Your Honor, my mistake. |
| 11:12AM | 18 | Paragraph 8, subparagraph F, yes. |
| 11:12AM | 19 | THE COURT:  Mr. Akau, do you understand the evidence |
| 11:12AM | 20 | that the government would offer in this case if it were to |
| 11:13AM | 21 | proceed to trial? |
| 11:13AM | 22 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 11:13AM | 23 | THE COURT:  And do you agree, sir, that what the |
| 11:13AM | 24 | government said you did is true? |
| 11:13AM | 25 | THE DEFENDANT:  Yes, Your Honor. |

| | | |
|---|---|---|
| 11:13AM | 1 | THE COURT:  In your own words, Mr. Akau, please |
| 11:13AM | 2 | describe what you did that makes you guilty of Count 1. |
| 11:13AM | 3 | THE DEFENDANT:  I'm guilty because I was involved in |
| 11:13AM | 4 | those incidents, and I did participate in those counts, Your |
| 11:13AM | 5 | Honor. |
| 11:13AM | 6 | THE COURT:  And that all occurred between 2016 and |
| 11:13AM | 7 | 2020, is that roughly your understanding as well? |
| 11:13AM | 8 | THE DEFENDANT:  Your Honor, it was actually 2016 to |
| 11:13AM | 9 | about 2018, Your Honor. |
| 11:13AM | 10 | THE COURT:  Okay.  And during that time frame you were |
| 11:13AM | 11 | a member of a group of individuals that the government has |
| 11:13AM | 12 | described as the Miske Enterprise? |
| 11:14AM | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 11:14AM | 14 | THE COURT:  And that enterprise consisted of a number |
| 11:14AM | 15 | of individuals to include Mr. Wayne Miller, Mr. Lance Bermudez, |
| 11:14AM | 16 | and the other individuals described in paragraph 8? |
| 11:14AM | 17 | THE DEFENDANT:  Your Honor, yes.  I was only |
| 11:14AM | 18 | introduced through Wayne Miller who was my cousin.  I was not |
| 11:14AM | 19 | aware until this indictment who actually was involved in the |
| 11:14AM | 20 | enterprise, Your Honor. |
| 11:14AM | 21 | THE COURT:  Okay.  The events though that you were |
| 11:14AM | 22 | engaged in specifically included these individuals though that |
| 11:14AM | 23 | Mr. Inciong mentioned, correct? |
| 11:14AM | 24 | THE DEFENDANT:  Yes, Your Honor. |
| 11:14AM | 25 | THE COURT:  And the Miske Enterprise operated during |

| | | |
|---|---|---|
| 11:14AM | 1 | the time frame that you indicated at least 2016 -- |
| 11:14AM | 2 | (Audio interruption.) |
| 11:14AM | 3 | Can you still hear me? |
| 11:15AM | 4 | THE DEFENDANT:  I hear you, yes, Your Honor.  Correct. |
| 11:15AM | 5 | THE COURT:  And that enterprise operated under the |
| 11:15AM | 6 | principal control, direction, and protection of Mr. Miske, Jr.? |
| 11:15AM | 7 | THE DEFENDANT:  Yes, Your Honor. |
| 11:15AM | 8 | THE COURT:  His first name being Michael, correct? |
| 11:15AM | 9 | THE DEFENDANT:  Correct. |
| 11:15AM | 10 | THE COURT:  And as part of this enterprise, is it fair |
| 11:15AM | 11 | to say, Mr. Akau, that you had an agreement with others to |
| 11:15AM | 12 | violate the racketeering laws of the United States including |
| 11:15AM | 13 | through the manners and ways in which the government described, |
| 11:15AM | 14 | those being attempted murder, murder for hire, drug trafficking |
| 11:15AM | 15 | and robbery? |
| 11:15AM | 16 | THE DEFENDANT:  Yes, Your Honor. |
| 11:15AM | 17 | THE COURT:  And some of those events also included the |
| 11:15AM | 18 | employment and use of firearms? |
| 11:15AM | 19 | THE DEFENDANT:  Yes, Your Honor. |
| 11:15AM | 20 | THE COURT:  The point of that, Mr. Akau, was to -- I |
| 11:15AM | 21 | assume it was in part to achieve financial gain? |
| 11:15AM | 22 | THE DEFENDANT:  It was for financial gain, Your Honor. |
| 11:15AM | 23 | THE COURT:  Were there other goals beside financial |
| 11:16AM | 24 | gain that you are aware of? |
| 11:16AM | 25 | THE DEFENDANT:  For my part, Your Honor, no.  That's |

11:16AM    1    what it was -- financial gain.

11:16AM    2         THE COURT:  And through these acts that you engaged

11:16AM    3    in, you and others, those affected interstate and foreign

11:16AM    4    commerce the way Mr. Inciong indicated; is that true?  For

11:16AM    5    example, the drugs that you stole in this incident that

11:16AM    6    Mr. Inciong describes from the 2018 time frame, those drugs

11:16AM    7    were drugs that were sourced from states and locations other

11:16AM    8    than Hawaii; is that fair?

11:16AM    9         THE DEFENDANT:  That's fair, Your Honor, to assume

11:16AM   10    that, yes.

11:16AM   11         THE COURT:  I think that was -- maybe I misstated it,

11:16AM   12    I said 2018 and it looks like it was maybe 2016, that time

11:16AM   13    frame.

11:16AM   14         THE DEFENDANT:  Yes, Your Honor.

11:17AM   15         THE COURT:  And similarly the firearms that were

11:17AM   16    employed in the ways that Mr. Inciong described were

11:17AM   17    manufactured outside of the State of Hawaii?

11:17AM   18         THE DEFENDANT:  Yes, Your Honor, it was.

11:17AM   19         THE COURT:  Thank you.  One of the examples of the

11:17AM   20    activities that you engaged in with others, as part of this

11:17AM   21    Miske Enterprise, occurred in 2016, 2017 when you worked with

11:17AM   22    Mr. Miller?

11:17AM   23         THE DEFENDANT:  Yes, Your Honor.

11:17AM   24         THE COURT:  Can you tell me a little bit about that

11:17AM   25    incident -- a little bit more about that incident?

| | | |
|---|---|---|
| 11:17AM | 1 | THE DEFENDANT:  The one with Miller was -- I think it |
| 11:17AM | 2 | was for the union rep; is that what we are speaking of? |
| 11:17AM | 3 | THE COURT:  This is the person that the government |
| 11:17AM | 4 | described as Victim-12. |
| 11:17AM | 5 | THE DEFENDANT:  Yes, Your Honor.  That was with -- he |
| 11:18AM | 6 | asked me if I could help him.  He had a situation in which he |
| 11:18AM | 7 | fell out of favor with Mr. Miske, and he asked if I could help |
| 11:18AM | 8 | him by taking care of that situation for him in which they talk |
| 11:18AM | 9 | about Victim-12, Your Honor. |
| 11:18AM | 10 | THE COURT:  And this was a way for Mr. Miller to get |
| 11:18AM | 11 | back in good graces with Mr. Miske? |
| 11:18AM | 12 | THE DEFENDANT:  Yes, Your Honor. |
| 11:18AM | 13 | THE COURT:  You were promised $50,000 for your |
| 11:18AM | 14 | assistance? |
| 11:18AM | 15 | THE DEFENDANT:  I was, Your Honor. |
| 11:18AM | 16 | THE COURT:  What was your understanding as far as |
| 11:18AM | 17 | where that 50,000 was going to come from? |
| 11:18AM | 18 | THE DEFENDANT:  I assumed that my cousin was going to |
| 11:18AM | 19 | get it from Mike, but I wasn't sure if that was actually the |
| 11:18AM | 20 | truth. |
| 11:18AM | 21 | THE COURT:  That's what Mr. Miller told you? |
| 11:18AM | 22 | THE DEFENDANT:  Yes, Your Honor, that's what |
| 11:18AM | 23 | Mr. Miller told me. |
| 11:18AM | 24 | THE COURT:  That Mr. Miske would be paying the $50,000 |
| 11:19AM | 25 | to you for your help? |

11:19AM    1              THE DEFENDANT:  Yes, Your Honor.

11:19AM    2              THE COURT:  And what did you do then to assist

11:19AM    3    Mr. Miller?

11:19AM    4              THE DEFENDANT:  We followed Victim-12 to a plate lunch

11:19AM    5    place that's located in the Sand Island district, and once we

11:19AM    6    were there he wanted me to shoot that Victim-12 once he came

11:19AM    7    out of the restaurant.  And when Victim-12 came out of the

11:19AM    8    restaurant -- excuse me, sorry.

11:19AM    9              THE COURT:  No, go ahead.

11:19AM   10              THE DEFENDANT:  When Victim-12 came out of the

11:19AM   11    restaurant, he told me to stand down because he couldn't pull

11:19AM   12    the tracking device that he placed on the vehicle off of the

11:19AM   13    vehicle; so that never happened, Your Honor.

11:19AM   14              THE COURT:  You were prepared to fire, you had a

11:19AM   15    weapon to do that?

11:19AM   16              THE DEFENDANT:  Yes, Your Honor, I did.

11:19AM   17              THE COURT:  Had you brandished that weapon?  Had you

11:20AM   18    drawn it out of wherever you had it?

11:20AM   19              THE DEFENDANT:  No, I did not.  It was in the

11:20AM   20    backpack.

11:20AM   21              THE COURT:  All right.  And did you have an

11:20AM   22    understanding as to why that victim was to be killed?

11:20AM   23              THE DEFENDANT:  Yes, Your Honor.  I was told that he

11:20AM   24    would be removed from the position of hiring for the jobs on

11:20AM   25    the docks.

| | | |
|---|---|---|
| 11:20AM | 1 | THE COURT:  Because he had a role in hiring? |
| 11:20AM | 2 | THE DEFENDANT:  They wanted to put the previous union |
| 11:20AM | 3 | official that was currently in that position that was removed |
| 11:20AM | 4 | from the position, they were going to put him back into that |
| 11:20AM | 5 | seat. |
| 11:20AM | 6 | THE COURT:  Because what?  Because that would help |
| 11:20AM | 7 | Mr. Miske's business? |
| 11:20AM | 8 | THE DEFENDANT:  That would help the flow of jobs onto |
| 11:20AM | 9 | the docks. |
| 11:21AM | 10 | THE COURT:  And another example I gather is this |
| 11:21AM | 11 | $50,000 -- another $50,000 that you were offered to assist with |
| 11:21AM | 12 | the kidnapping of Jonathan Fraser? |
| 11:21AM | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 11:21AM | 14 | THE COURT:  Did that offer come to you from Mr. Miller |
| 11:21AM | 15 | as well? |
| 11:21AM | 16 | THE DEFENDANT:  Yes, it did, Your Honor.  Actually |
| 11:21AM | 17 | that offer came before Victim-12's offer, Your Honor. |
| 11:21AM | 18 | THE COURT:  And in that situation your understanding |
| 11:21AM | 19 | from Mr. Miller was that the $50,000 would come from Mr. Miske? |
| 11:21AM | 20 | THE DEFENDANT:  Yes, Your Honor. |
| 11:21AM | 21 | THE COURT:  And your role would have been to -- I'm |
| 11:21AM | 22 | sorry what? |
| 11:21AM | 23 | THE DEFENDANT:  My role was to pick up -- the guy was |
| 11:21AM | 24 | going to get dropped off by Wayne Miller, and I would drive him |
| 11:21AM | 25 | to the north shore in which someone else would take care of the |

11:21AM   1   kid, and I refused.  And because I refused he said, For the

11:22AM   2   same money, could you help me out with Victim-12?  That's how

11:22AM   3   Victim-12 came into play for me, Your Honor.

11:22AM   4         THE COURT:  Okay, I get it now.  And the person that

11:22AM   5   you were supposed to drive to the north shore at Mr. Miller's

11:22AM   6   request, that was Jonathan Fraser?

11:22AM   7         THE DEFENDANT:  Yes, Your Honor.

11:22AM   8         THE COURT:  And he is the person that you referred to

11:22AM   9   as a kid?

11:22AM   10        THE DEFENDANT:  Yes, Your Honor.

11:22AM   11        THE COURT:  And lastly in 2016 you ended up assisting

11:22AM   12   others with the robbery of a person who you knew was a drug

11:22AM   13   dealer here in Honolulu; is that fair?

11:22AM   14        THE DEFENDANT:  Yes, Your Honor, that is correct.

11:22AM   15        THE COURT:  To do so you, impersonated a police

11:23AM   16   officer with respect to Victim-4?

11:23AM   17        THE DEFENDANT:  Yeah, I wore a prop badge, got out of

11:23AM   18   the vehicle, and proceeded to rob Victim-4.

11:23AM   19        THE COURT:  And you were armed at the time with

11:23AM   20   firearms?

11:23AM   21        THE DEFENDANT:  I had a gun in the backpack that

11:23AM   22   remained in the car.  I had no firearm when I got out of the

11:23AM   23   car.

11:23AM   24        THE COURT:  And you ended up robbing Victim-4 of

11:23AM   25   several pounds of methamphetamine?

11:23AM  1          THE DEFENDANT:  That is correct, Your Honor.

11:23AM  2          THE COURT:  And you shared that methamphetamine with

11:23AM  3  the others who were with you during that encounter, and those

11:23AM  4  people included Mr. Bermudez; Ms. Akau, Ashlin Akau; and

11:23AM  5  Mr. Smith?

11:23AM  6          THE DEFENDANT:  And there is a person that's not

11:23AM  7  mentioned in any of the paperwork that I gave the Walmart bag

11:24AM  8  to who lured me to this scheme of robbery, Your Honor.

11:24AM  9          THE COURT:  So there were others that shared in the

11:24AM 10  methamphetamine that you stole from that drug dealer?

11:24AM 11          THE DEFENDANT:  Yes, Your Honor.

11:24AM 12          THE COURT:  The plea agreement mentions Mr. Bermudez,

11:24AM 13  Mr. Smith, Ms. Akau, Mr. Kauhi and Mr. Stancil, those were

11:24AM 14  among those that you included in this sharing?

11:24AM 15          THE DEFENDANT:  Yeah, I would assume that's correct,

11:24AM 16  Your Honor.

11:24AM 17          THE COURT:  And there were others?

11:24AM 18          THE DEFENDANT:  Yes, Your Honor, that's what I'm

11:24AM 19  saying.

11:24AM 20          THE COURT:  All right.  Are both counsel then

11:24AM 21  satisfied that a factual basis for Mr. Akau's plea of guilty to

11:24AM 22  Count 1 has been established?

11:24AM 23          MR. INCIONG:  Yes, the government is satisfied, Your

11:24AM 24  Honor.  Thank you.

11:24AM 25          MR. RICHARDS:  Yes, Your Honor, I believe the factual

11:25AM  1  basis has been established for the allegations in the

11:25AM  2  indictment and also the additional self-disclosed facts

11:25AM  3  pursuant to his obligation to answer government questions

11:25AM  4  truthfully in a proffer session.

11:25AM  5          THE COURT:  With that then, Mr. Akau, I'll turn to

11:25AM  6  you, sir.  As to Count 1 of the superseding indictment, how do

11:25AM  7  you plead:  guilty or not guilty?

11:25AM  8          THE DEFENDANT:  I plead guilty, Your Honor.

11:25AM  9          THE COURT:  The Court finds that Mr. Akau understands

11:25AM  10  the nature of this morning's proceedings and is competent to

11:25AM  11  enter a knowing and informed plea.  The Court further finds

11:25AM  12  that he has in fact entered a knowing, informed, and voluntary

11:25AM  13  plea of guilty to Count 1 of the superseding indictment, and he

11:25AM  14  has done so without coercion, force or threat.

11:25AM  15          The Court finds that Mr. Akau's plea of guilty is

11:25AM  16  supported by an independent basis in fact containing each of

11:25AM  17  the essential elements of Count 1 and that Mr. Akau understands

11:25AM  18  both the trial and civil rights that he would have in the

11:25AM  19  absence of pleading guilty, but he nonetheless knowingly and

11:25AM  20  voluntarily elects to waive those rights.

11:26AM  21          The Court finally finds that in pleading guilty,

11:26AM  22  Mr. Akau understands the factors that the Court will consider

11:26AM  23  at the time of sentencing, including the potential penalties

11:26AM  24  that are applicable to a violation of Count 1.

11:26AM  25          Mr. Akau, as you've acknowledged that you are in fact

| | | |
|---|---|---|
| 11:26AM | 1 | guilty, I accept your guilty plea and adjudge you guilty as |
| 11:26AM | 2 | charged to Count 1 of the superseding indictment.  The Court |
| 11:26AM | 3 | orders the plea agreement in this matter to be filed, but |
| 11:26AM | 4 | reserves a determination of whether to accept it until after a |
| 11:26AM | 5 | presentence investigation and investigation report have both |
| 11:26AM | 6 | been completed. |
| 11:26AM | 7 | May we get a sentencing date please? |
| 11:26AM | 8 | THE CLERK:  January 19, 2022 at 9:00. |
| 11:26AM | 9 | THE COURT:  Is that date and time acceptable with |
| 11:26AM | 10 | counsel? |
| 11:26AM | 11 | MR. INCIONG:  Yes, that's fine with the government. |
| 11:26AM | 12 | Thank you. |
| 11:26AM | 13 | MR. RICHARDS:  Your Honor, quick question.  When the |
| 11:26AM | 14 | Court -- is it standard practice for the Court -- (Inaudible |
| 11:26AM | 15 | due to background noise) |
| 11:26AM | 16 | THE COURT:  I can't hear you, Mr. Richards.  Standard |
| 11:27AM | 17 | practice for what? |
| 11:27AM | 18 | MR. RICHARDS:  For the Court to withhold the |
| 11:27AM | 19 | acceptance of the plea pending review of the PSR? |
| 11:27AM | 20 | THE COURT:  It is standard practice to determine |
| 11:27AM | 21 | whether or not to accept the plea agreement until sentencing. |
| 11:27AM | 22 | MR. RICHARDS:  Okay.  Not every practice is the same |
| 11:27AM | 23 | in every district; that's why I was asking. |
| 11:27AM | 24 | THE COURT:  Yes, that's not unusual at all. |
| 11:27AM | 25 | MR. RICHARDS:  Okay, good.  I just want to make sure |

11:27AM   1   there was nothing about the plea that was unusual.

11:27AM   2            One last procedural question on the statements that

11:27AM   3   are not going to be considered.  Does the Court flag those

11:27AM   4   through the PSR or is that something that it expects counsel to

11:27AM   5   do?

11:27AM   6            THE COURT:  That is something that counsel can

11:27AM   7   collaborate with the probation department, and I'm sure

11:27AM   8   Mr. Inciong would naturally do that, given the agreement that

11:27AM   9   you all have reached.  Or, independently Mr. Richards you'll

11:28AM  10   have an opportunity I'm sure to do that as probation will

11:28AM  11   undoubtedly want to talk with your client.  And during those

11:28AM  12   discussions you can certainly mention it to them if they are

11:28AM  13   not aware of it by that time.

11:28AM  14            MR. RICHARDS:  Okay, and the last question, Your

11:28AM  15   Honor, is:  Is the Court aware that my client is in custody,

11:28AM  16   and if the plea agreement is going to be -- if you're going to

11:28AM  17   hold the consideration of the plea agreement, does the Court

11:28AM  18   find it necessary to file it on the public docket, these plea

11:28AM  19   agreements could be used offensively against people, and the

11:28AM  20   Court spent a lot of time going into allegations in the plea

11:28AM  21   agreement, and I know that typically they are not filed under

11:28AM  22   seal in your district.  But would the Court consider

11:28AM  23   withholding the filing of the plea agreement until the Court is

11:28AM  24   going to accept it, so my client's safety and security cannot

11:28AM  25   be interfered with or harassed?

11:28AM   1        THE COURT:  Mr. Inciong, does the government have any
11:28AM   2   position on filing the plea agreement under seal or not filing
11:29AM   3   it at all until we gather again for sentencing?
11:29AM   4        MR. INCIONG:  We don't have an objection to either of
11:29AM   5   those things, Your Honor.
11:29AM   6        THE COURT:  All right.  So at your request, and
11:29AM   7   without objection -- at the defense's request and without
11:29AM   8   objection from the government, the Court will file the plea
11:29AM   9   agreement but do so under seal.  Would that be acceptable?
11:29AM  10        Mr. Richards, would that accomplish your goal?
11:29AM  11        MR. RICHARDS:  It would, Your Honor.  And then if it's
11:29AM  12   ever shared with any counsel for any other defendant that they
11:29AM  13   be given instructions that it's under attorney eyes only, not
11:29AM  14   to send it to the jail like the other discovery that we have
11:29AM  15   had in this case.
11:29AM  16        THE COURT:  All right.  Well, that certainly would not
11:29AM  17   come from me; but in terms of sharing, if the government wishes
11:29AM  18   to do that, then I'm sure they would not do so with the seal in
11:29AM  19   place but would ask for it to be unsealed for a limited
11:29AM  20   purpose, if they were inclined to or if they were to seek that.
11:30AM  21   So we will go ahead and file that under seal for now.  It's
11:30AM  22   always subject to unsealing obviously in part or in whole.  So
11:30AM  23   we will have to revisit that down the road when we either get
11:30AM  24   to sentencing or at sentencing.
11:30AM  25        But, Mr. Richards, you did not respond to my question

| | | |
|---|---|---|
| 11:30AM | 1 | about whether that date and time for sentencing is acceptable |
| 11:30AM | 2 | to you. |
| 11:30AM | 3 | MR. RICHARDS:  Yes, Your Honor.  If for some reason |
| 11:30AM | 4 | I'm engaged in something, is the Court rigid on moving dates or |
| 11:30AM | 5 | is that a drop-dead date? |
| 11:30AM | 6 | THE COURT:  No, not at all.  We move sentencing dates |
| 11:30AM | 7 | all the time.  And there may be reason obviously in this case |
| 11:30AM | 8 | to move it off January 19th or really any date that we pick. |
| 11:30AM | 9 | There is no magic to that date.  It's further out enough beyond |
| 11:30AM | 10 | the current trial date that we thought it would be appropriate. |
| 11:30AM | 11 | But we recognize entirely that this may not be the only -- |
| 11:30AM | 12 | there may not be just one continuance of that sentencing.  We |
| 11:31AM | 13 | may be looking at multiple continuances in light of the other |
| 11:31AM | 14 | defendants that remain. |
| 11:31AM | 15 | MR. RICHARDS:  That date is fine for now, Your Honor. |
| 11:31AM | 16 | Thank you. |
| 11:31AM | 17 | THE COURT:  That's all we can hope for for at least |
| 11:31AM | 18 | for right now. |
| 11:31AM | 19 | Anything else that I can assist the parties with?  I'm |
| 11:31AM | 20 | sure Judge Otake is chomping at the bit to get on to her video |
| 11:31AM | 21 | line that we have now taken 30 minutes of. |
| 11:31AM | 22 | MR. INCIONG:  Nothing from the government.  Thank you, |
| 11:31AM | 23 | Your Honor. |
| 11:31AM | 24 | MR. RICHARDS:  No.  Thank you, Your Honor. |
| 11:31AM | 25 | THE COURT:  Thank you both.  Mr. Akau, thank you as |

11:31AM   1   well.  We'll hopefully get together in person for sentencing,

11:31AM   2   whether that's January or some future time.  Thank you all.  We

11:31AM   3   are in recess.

11:31AM   4                 (Proceedings were concluded at 11:31 a.m.)

          5

          6

          7

          8

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

```
 1                 COURT REPORTER'S CERTIFICATE
 2          I, Gloria T. Bediamol, Official Court Reporter, United
 3   States District Court, District of Hawaii, do hereby certify
 4   that pursuant to 28 U.S.C. §753 the foregoing is a complete,
 5   true, and correct transcript from the stenographically reported
 6   proceedings held in the above-entitled matter and that the
 7   transcript page format is in conformance with the regulations
 8   of the Judicial Conference of the United States.
 9
10          DATED at Honolulu, Hawaii, July 22, 2022.
11
12
13                              /s/ Gloria T. Bediamol
14                              GLORIA T. BEDIAMOL.
15                              RMR, CRR, FCRR
16
17
18
19
20
21
22
23
24
25
```