THE LAW OFFICE OF RAMIRO S. FLORES, PLLC
55 West Franklin Street
Tucson, Arizona 85701
Tel: 520-884-5105
Fax: 520-884-5157
RAMIRO S. FLORES
Ariz. Bar No. 0019773
ramirofloreslaw@hotmail.com

*Attorney for Norman L. Akau*

In the United States District Court

For the District of Hawaiʻi

| United States of America, | Case No. 19-00099DKW-KJM-09 |
|---|---|
| Plaintiff, | |
| vs. | Defendant's Presentence Memorandum and Request for Variance |
| Norman L. Akau III, | *Honorable Chief Judge Derrick K. Watson* |
| Defendant. | |

Defendant, Norman L. Akau III, by and through undersigned counsel, respectfully submits this Sentencing Memorandum and Motion for Variance for the Court's consideration at sentencing in the above-captioned matter. Defendant's argument is set forth in the attached Memorandum of Points and Authorities.

Respectfully submitted this 29th day of April, 2025.

THE LAW OFFICE OF RAMIRO S. FLORES, PLLC

By   */s/Ramiro S. Flores*
     Ramiro S. Flores
     Attorney for Defendant

## MEMORANDUM OF POINTS AND AUTHORITIES

Norman L. Akau III is before the Court after pleading guilty by agreement with the government to a Racketeering Conspiracy in violation of 18 USC §1962(d). A Presentence Investigation Report (PSR) has been prepared. The PSR finds an adjusted Guideline sentencing range of 188 to 235 months' imprisonment[1], with Mr. Akau permitted to argue for a downward variance pursuant to 18 U.S.C. § 3553. The PSR recommends a sentence of 168 months. However, numerous relevant §3553 factors justify a variance to a sentence of 60 months:

(1) the severe collateral harm that would result to Mr. Akau' family if he is incarcerated for a lengthy period of time, due to his importance to and role as primary caretaker for his family;

(2) his role in the racketeering conspiracy and profound acceptance of responsibility and remorse;

(3) his demonstrated rehabilitation and termination of any illegal activities in the years prior to his arrest for the racketeering conspiracy.

(4)  his age and medical issues developed while incarcerated for this offense.

(5) the need to avoid sentencing disparity by imposing a sentence consistent with

similarly-situated defendants.

Based on these and other considerations as set out more fully below, Mr. Akau respectfully requests that the Court impose a sentence of 60 months followed by supervised release.[2]  This will ensure that the twin goals of deterrence and punishment are met.

---

[1] Mr. Akau has objected on various grounds to this calculation.
[2] Mr. Akau has argued in his sentencing statement that correct guideline calculation is closer to 60 months than 168 months.

2

**BACKGROUND AND CIRCUMSTANCES OF OFFENSE**

**I. The Defendant**

Mr. Akau is a lifelong resident of Oahu, Hawaii. He experienced a difficult childhood marred by childhood trauma and a dysfunctional family unit as described in the PSR. This difficult childhood eventually led to criminal behavior and when he was an adolescent he was sentenced to a lengthy period of imprisonment. After his release, Mr. Akau met his wife, Piilani in 2004 and soon started a family. The couple were soon blessed with two healthy daughters. During that same period Mr. Akau also began working in the Movies-which he enjoyed immensely. By all accounts, he was a dedicated and hard worker for his employers.

However, the pressures of life became difficult. Despite their best efforts, the couple began experiencing economic issues. To Mr. Akau, his family unit was the most important factor in his life.  However, the pressure and his peer group soon got the better of him and he began to use cocaine as an escape from the pressures he felt. This was a monumental mistake. The drug only compounded his problems and clouded his decision making. During the height of his drug abuse Mr. Akau became involved in the instant offense.

**II. The Instant Offense**

Mr. Akau's involvement with the Miske enterprise was not intentional. That is not to say that his involvement in the underlying racketeering acts were not intentional. On the contrary, his involvement in those offenses were knowing and intentional. Mr. Akau was simply not aware that the individuals who recruited him and participated in these offenses were also the core

3

members of the Miske enterprise. He was aware that they associated with Mr. Miske, he was just not aware at how prolific they were in committing crimes on behalf of the Miske enterprise.

Nonetheless, during the years 2016 and 2017, at the height of Mr. Akau's economic and drug problems, Mr. Akau unfortunately associated with other members of the Miske enterprise. Some of those associations were a result of his work in the movies and some were a result of his membership in the Nakipi Motorcycle club. Those associations presented him with illegal opportunities to make money which could help him with his economic issues. Unfortunately, he again made the monumental mistake of agreeing to participate.

Decisions he regrets to this very day. However, even before his arrest in July 2020, Mr. Akau had already disassociated with the criminal lifestyle. He voluntarily left Nakipi. He avoided other associates. He quit using drugs. He concentrated on his family and work. He began his own business. A business which melded the experience he gained working in the movies and his knowledge of the air conditioning business. For two years, his air conditioning business was thriving, Mr. Akau was finally making enough money so that his family would not struggle and live comfortable. Mr. Akau was aware of his past illegal transgressions and would attempt to make amends for those through community service.

However, these prior crimes came calling. In July, 2020 he was arrested for the offenses he committed in 2016 and 2017.

**SENTENCING ARGUMENT**

Mr. Akau makes no attempt to excuse or minimize her conduct. First and foremost, he recognizes the seriousness of this case and nothing in this memorandum should be construed to

4

take away from that. Mr. Akau writes only to illuminate the relevant mitigating circumstances, and to show that the requested sentence will still sufficiently address the seriousness of the offense while appropriately balancing the other goals of criminal punishment.

Mr. Akau respectfully requests a sentence of 60 months for the instant offense. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 128 S. Ct. 586, 598 (2007), quoting *Koon v. United States*, 518 U.S. 81, 113 (1996). A sentence should be sufficient, but not greater than necessary, to satisfy the goals of criminal punishment. A court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). With this in mind, Mr. Akau respectfully submits the following argument supporting a sentence of probation.

I. **Statutory Considerations**

No statutory minimum sentence applies.

II. **Plea Agreement Considerations**

Mr. Akau has accepted his guilt by plea agreement with the government. He has accepted responsibility and expressed remorse for his involvement in the offense. The plea agreement required Mr. Akau to cooperate with the government and he has done so. Mr. Akau was an essential witness for the government at the trial of Mr. Miske. Regardless of the guideline range, the plea does not require a minimum sentence. As such, a 60 month sentence would not be contrary to the plea agreement.

### III. Application of 18 U.S.C. § 3553(a) Factors Supporting the Requested Sentence.

#### A. The nature and circumstances of the offense and history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1).

**1. Nature of the offense, motivation for committing the offense and role in the offense.**

Admittingly Mr. Akau was involved in potentially violent crimes. The crimes admitted to in the plea agreement are inherently violent in nature. However, none of the crimes resulted in any injuries to the victims. Only one of the crimes was completed. Mr. Akau eventually abandoned the second conspiracy albeit without first coming very close to completing the violent nature of that offense. Ultimately, Mr. Akau never perpetrated any violence on these victims.

As discussed above, Mr. Akau's participation in this conspiracy was motivated by the marital stress brought on by economic desperation. The decision to ultimately partake in these offenses was skewed by his cocaine abuse. Mr. Akau believes that he would not have participated had he not been using drugs. In the end, he was able get clean and put the criminal behavior behind him prior to his arrest.

Furthermore, Mr. Akau's role in this conspiracy was limited. The full breadth of the enterprise's criminal behavior is well known to this Court and well documented in the PSR. Mr. Akau's involvement in the conspiracy cannot be considered substantial. The full breadth of his participation and role is argued in the previously filed sentencing statement. If the court does not grant any departure based on that argument, the Court can still consider his role as a §3553 factor.

2. **Family Support and Obligations**

To say that Mr. Akau's family is the most important factor in his life would almost be an understatement. Since he began his family with Piilani he has stressed over providing his family a

6

stable, healthy environment. The attached letters from Piilani, his daughters, his family and friends all recognize the dutiful father. (See Exhibit A) The letters demonstrate that despite his flaws he always wanted to have his family first. With his 5 year absence, Mr. Akau's desire to provide and do good for his family's sake has only magnified. This alone is all the motivation he needs to become a productive, crime-free citizen upon his release.

It devastates Mr. Akau to know his family is struggling economically and emotionally because of his mistakes. He knew that his past mistakes could come back to haunt him and that fact was the principal reason that he had already changed his life prior to his arrest. He is also aware that he is entirely capable of again living that productive, crimefree lifestyle upon his release.

Mr. Akau knows that a defendant's family needs do not, in and of themselves, justify leniency for leniency's sake. Nevertheless, excessive and avoidable harm to innocent family members caused by a defendant's imprisonment remains a valid consideration. While many defendants have family to worry about, it is hard to imagine a defendant more central to his family's well-being than Mr. Akau. A lengthy imprisonment in this case would quickly begin to punish the offender's innocent dependents more than the offender himself.

Courts can and should consider a person's family ties and responsibilities when imposing a sentence, and a reduced sentence is appropriate where it avoids the loss of critical caretaking or financing support. See U.S.S.G. § 5H1.6, n.1(B)(i) (permitting a downward departure where the guideline sentence would cause a "substantial, direct and specific loss of essential caretaking, or essential financial support, to the defendant's family"); *United States v. Aguirre*, 214 F.3d 1122, 1127 (9th Cir. 2000) (upholding downward departure from guideline sentence by district court

where defendant was single-parent of an eight-year old); Cf. *United States v. Rivera*, 682 F.3d 1223, 1230 (9th Cir. 2012) (Noting that the presence of a defendant's young children at sentencing "reminds the participants, especially the judge, that the consequences of their actions extend to the broader community," and young children are the most likely to be affected by defendant's incarceration); *United States v. Husein*, 478 F.3d 318, 327 (6th Cir. 2007) (affirming downward departure under § 5H1.6 for defendant whose jailing would have resulted in her mother quitting her job to provide full-time care for the father, putting the family on welfare); *United States v. King*, 201 F.Supp.3d 167, 171 (D.D.C. 2016) (granting a variance because, among other things, defendant was the sole caregiver for her daughter); *United States v. Martinez*, No. CR 09-3078 JB, 2011 WL 6828055 at *5 (D.N.M. Dec. 19, 2011) (finding defendant's loss of caretaking and financial support warranted a downward departure from sentencing guidelines because both children and grandchildren had significant mental health, health and development problems such that her loss exceeded the ordinary harm); *United States v. Justice*, No. 09-3078 2012 WL 394455, at *11 (D.N.M. Jan. 23, 2012) ("Circumstances that might justify a departure would include a situation where the young child has serious health problems and requires constant care"); *United States v. Salazar*, 2012 WL 13076572 at *2, *7 (D.N.M. April 19, 2012) (granting downward departure to defendant with a developmentally disabled child).

**3. Mr. Akau's Health**

Mr. Akau is 52 years old. When he was arrested he was 48 years old and in relatively good health. Since his incarceration his health has deteriorated. With the sedentary lifestyle and diet in prison he has gained weight. The emotional and psychological effect of such a serious and

complicated case has taken its toll. Currently, Mr. Akau suffers from serious health issues that he did not suffer from prior to his imprisonment. Recent medical records[3] from FCI Hawaii show that Mr. Akau is suffering from Diabetes, Diabetic Neuropathy, Heart Disease, Obesity, Reflux, Joint/Back Pain, Hyperlipidemia, Asthma, and Hyperthyroidism.

Given his age, a lengthy sentence will only exacerbate, not help these conditions.

4. **Just Punishment and Deterrence**

The predominant theories of punishment in our criminal justice system are deontological and utilitarian. On the deontological side, the question is often phrased as what one morally deserves, or what justice demands, and the calculus must take into account not just the offense but the offender's circumstances, much as section 3553(a) demands we take the individual offender's characteristics into account. On the utilitarian side, punishment is often justified by concepts of specific deterrence (deterring the offender from future offenses), general deterrence (deterring others from committing offenses), and incapacitation (removing dangerous offenders from the community to limit the danger posed). All of these sentencing theories are incorporated into section 3553(a).

In the present case, deontological desert does not demand more than 60 months. Especially since Mr. Akau will be placed on supervised release for 3 years and is committed to being a productive citizen. As such, neither specific deterrence nor incapacitation are compelling justifications for a lengthier sentence.

---

[3] Not attached hereto but available at sentencing for the Court's review.

The remaining justification is general deterrence. But while general deterrence is commonly cited as a reason to impose longer sentences, the theory finds no support in actual empirical evidence. The common assumption is that if we impose long sentences, others will be convinced not to commit the crime and expose themselves to a similar sentence. We often talk about "sending a message" to other would-be offenders. For that to work, though, we have to live in a world of perfectly rational decision-makers who receive actual notice of the penalties and who also believe that they are guaranteed to get caught if they commit the crime.

But research over decades has repeatedly shown that this is not the world we live in. "The reality is that general deterrence, as universally applied, does not work. The overwhelming trends evident in empirical research suggest that higher penalties do not serve as disincentives to crime." (Mirko Bagaric & Theo Alexander, *(Marginal) General Deterrence Doesn't Work - and What That Means for Sentencing*, 35 Crim. L.J. 269, 269 (2011)). What studies show is that the presence of some punishment does generally reduce criminal behavior-this is known as absolute deterrence. (Franklin Zimring & Gordon Hawkins, Deterrence: The Legal Threat in Crime Control 245 (1973)). Marginal deterrence, on the other hand, asks whether there is any correlation between the severity of the offense and its prevalence. (Mirko Bagaric, A Rational Theory of Mitigation and Aggravation in Sentencing: Why Less is More when it Comes to Punishing Criminals, 62 Buffalo L. Rev. 1159, 1202). And on that front, data repeatedly show that there is no such correlation. *Id.* As such, increasing sentences based on general deterrence "is merely the infliction of additional punishment in the absence of any associated direct or indirect benefit. It is therefore socially and morally unjustifiable." (Bagaric & Alexander, supra note 1, at 269).

"[D]eterrence properly informs sentencing only to the extent that it requires a hardship to be imposed for criminal offending. It does not require a particularly burdensome penalty, merely one that people would seek to avoid. That aim could be satisfied by a fine or a short prison term. There is no foundation for increasing penalties to reduce the crime rate." *Bagaric supra.*

 For punishment to be fair, it must be imposed rationally. That means that where empirical research repeatedly refutes a proposed justification, we should no longer rely on that justification in imposing sentence. Research has repeatedly demonstrated that increased sentences do not have a general deterrent effect, despite common assumptions to the contrary. A 5 year sentence in this case already achieves deontological and utilitarian sentencing goals. Increasing the sentence based on the goal of general deterrence unreasonably disregards the weight of the research; it would therefore be unjust to impose a longer sentence in this case.

**5. The need for the sentence imposed to provide punishment, deterrence, protection of the public, and rehabilitation. 18 U.S.C. § 3553(a)(2).**

The requested 60 month sentence will provide adequate punishment and deterrence, as it is a substantial amount of time which fairly weighs the crimes, the government benefit from Mr. Akau's cooperation and the required §3553 factors. Furthermore, Mr. Akau will have to comply with all of the demands and expectations of supervised release lest he be revoked and returned to prison.

Mr. Akau is no longer a danger to the public. This is not a case where Mr. Akau was arrested near in time to the perpetrated crimes. Mr. Akau was arrested nearly 4 years after the crimes had been committed. What is important for this court to consider is that Mr. Akau had already begun and successfully implemented his own rehabilitation. Between 2018 and 2020, for more than two

years, Mr. Akau did not commit any crimes, had removed himself from any criminal associations, successfully stopped using drugs and started a successful business. This conduct between the commission of the crimes and his arrest demonstrates that he was on the proper path to rehabilitation.

Even while in Prison awaiting resolution of this case.  The attached certificates demonstrate that he has taken full advantage of prison programs in hopes of bettering himself. (Exhibit B) Again, this demonstrates the level of commitment to rehabilitation that does not require a lengthy sentence.  A longer prison sentence would do nothing to advance the goal of rehabilitation but would in all likelihood hinder it.

**6.    The kinds of sentences available. 18 U.S.C. § 3553(a)(3).**

No mandatory minimum sentence applies in this case. And, as the Guidelines are advisory post-*Booker*, the Court is free to impose any reasonable sentence.

7. **Consideration of the Guidelines and related policy statements. 18 U.S.C. § 3553(a)(4) and (5).**

Mr. Akau has objected to the PSR calculations of the guidelines.  If the court sustains those objections, the guideline calculations are near the requested sentence.  As such, a minimal variance would be necessary to reach a 60 month sentence. Given the numerous variance factors discussed above a 60 month sentence is appropriate.

8. **The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).**

Other similar situated defendants in this case have been sentenced. Mr. Dae Han Moon and Mr. Harry Kauhi were both charged and plead guilty to crimes similar to, if not more serious

12

than, Mr. Akau. Both of these individuals received sentences of 84 months. Mr. Wayne Miller, who played a supervisory role in the enterprise also committed the same or more serious offenses. He was sentenced to 120 months imprisonment. Many of the co-conspirators not involved in violent or serious crimes received sentences of 3-4 years imprisonment.

As such, a sentence in between these two groups of individuals is warranted. Mr. Akau's participation is not as involved as the first group but can be considered more serious than the second. A sentence between the two groups of 60 months would not result in disparate sentences.

## CONCLUSION

For the foregoing reasons, Norman L. Akau III submits that a sentence of 60 months will be sufficient to satisfy all of the goals of criminal punishment and respectfully requests that the Court impose such a sentence.

Respectfully submitted this 29th day of April, 2025.

THE LAW OFFICE OF RAMIRO S. FLORES, PLLC

By    /s/Ramiro S. Flores
      Ramiro S. Flores
      Attorney for Norman L. Akau

Certificate of Service

I, Ramiro Salazar Flores, hereby certify that on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known address:

Served Via E-Mail:

Michael Nammar, Esq.　　　　　　　　Michael.Nammar@usdoj.gov
Assistant United States Attorney
Attorney for Plaintiff
United States of America

Sara Neiling　　　　　　　　sara_nieling@hip.uscourts.gov
United States Probation Officer

Dated: April 29, 2025.

　　　　　　　　　　　　　　　　/s/ Ramiro Salazar Flores
　　　　　　　　　　　　　　　　Ramiro Salazar Flores
　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　Norman L. Akau III