```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF HAWAII

 3
      UNITED STATES OF AMERICA,    )    CRIMINAL NO. 19-00099-DKW
 4                                 )
                 Plaintiff,        )    Honolulu, Hawaii
 5                                 )
           vs.                     )    June 9, 2021
 6                                 )
      NORMAN L. AKAU III, (09)     )    CHANGE OF PLEA
 7                                 )
                 Defendant.        )
 8    _____ )

 9
            TRANSCRIPT OF PROCEEDINGS VIA VIDEO TELECONFERENCE
10             BEFORE THE HONORABLE DERRICK K. WATSON,
                UNITED STATES DISTRICT COURT JUDGE
11

12    APPEARANCES:

13

14    For the Plaintiff:         MARK INCIONG, ESQ.
                                 Office of the United States Attorney
15                               PJKK Federal Building
                                 300 Ala Moana Boulevard, Suite 6100
16                               Honolulu, Hawaii  96850

17
      For the Defendant:         RONALD RICHARDS, ESQ.
18                               Law Offices of Ronald Richards &
                                 Associates, APC
19                               P. O. Box 11480
                                 Beverly Hills, CA 90213
20

21    Official Court Reporter:   Gloria T. Bediamol, RPR RMR CRR FCRR
                                 United States District Court
22                               300 Ala Moana Boulevard
                                 Honolulu, Hawaii 96850
23

24
      Proceedings recorded by machine shorthand, transcript produced
25    with computer-aided transcription (CAT).
```

| | | |
|---|---|---|
| | 1 | June 9, 2021                                          10:06 a.m. |
| 10:06AM | 2 | THE CLERK:  Criminal Number 19-00099-DKW, United |
| 10:07AM | 3 | States of America versus Defendant (09) Norman L. Akau III. |
| 10:07AM | 4 | This case has been called for a change of plea |
| 10:07AM | 5 | hearing. |
| 10:07AM | 6 | Counsel, please make your appearances for the record. |
| 10:07AM | 7 | MR. INCIONG:  Good morning, Your Honor.  Mark Inciong |
| 10:08AM | 8 | for the United States. |
| 10:08AM | 9 | THE COURT:  Mr. Inciong, good morning. |
| 10:08AM | 10 | MR. RICHARDS:  Good morning, Your Honor.  Ronald |
| 10:08AM | 11 | Richards taking the plea for the defendant Norman L. Akau III |
| 10:08AM | 12 | who is present and in custody. |
| 10:08AM | 13 | THE COURT:  Mr. Richards, good morning.  And, |
| 10:08AM | 14 | Mr. Akau, good morning to you, sir. |
| 10:08AM | 15 | THE DEFENDANT:  Good morning, sir. |
| 10:08AM | 16 | THE COURT:  We're here this morning because, as I |
| 10:08AM | 17 | understand it, the defendant Mr. Akau wishes to plead guilty to |
| 10:08AM | 18 | Count 1 of the June 18, 2020 superseding indictment, and that |
| 10:08AM | 19 | would be pursuant to a plea agreement with the government. |
| 10:08AM | 20 | Counsel have advised that Mr. Akau wishes to proceed |
| 10:08AM | 21 | this morning by video and consents to do so.  As a result, |
| 10:08AM | 22 | there are a few things that I need to get on the record before |
| 10:08AM | 23 | we go any further. |
| 10:08AM | 24 | First of all, Mr. Akau, pursuant to Section 15002 of |
| 10:08AM | 25 | the CARES Act, the Coronavirus Aid Relief and Economic Security |

| | | |
|---|---|---|
| 10:08AM | 1 | Act, there are certain circumstances in which a defendant may |
| 10:09AM | 2 | consent, after consulting with counsel, to proceed with his |
| 10:09AM | 3 | change of plea hearing. |
| 10:09AM | 4 | On May 6th of this year the chief judge for our |
| 10:09AM | 5 | district found that change of plea hearings such as this one, |
| 10:09AM | 6 | originating with the defendant incarcerated at FDC, Judge |
| 10:09AM | 7 | Seabright found that those hearings cannot be conducted in |
| 10:09AM | 8 | person without seriously jeopardizing public health and safety. |
| 10:09AM | 9 | Judge Seabright made that finding pursuant to Section |
| 10:09AM | 10 | 15002(b)(2) of the CARES Act. |
| 10:09AM | 11 | Mr. Akau, your counsel has advised that you consent to |
| 10:09AM | 12 | proceed with this hearing by video; I would like to get that |
| 10:09AM | 13 | consent again on the record before we proceed. |
| 10:09AM | 14 | Mr. Akau, can you confirm, sir, that you consulted |
| 10:09AM | 15 | with Mr. Richards concerning whether or not to proceed with |
| 10:09AM | 16 | this plea hearing this morning by video from FDC rather than |
| 10:09AM | 17 | through an in-person appearance in court? |
| 10:09AM | 18 | THE DEFENDANT:  I have consented, Your Honor. |
| 10:09AM | 19 | THE COURT:  Okay, and have you consulted with |
| 10:09AM | 20 | Mr. Richards regarding that? |
| 10:10AM | 21 | THE DEFENDANT:  Yes, I have. |
| 10:10AM | 22 | THE COURT:  Mr. Richards, do you concur that your |
| 10:10AM | 23 | consultation with Mr. Akau has included whether or not to |
| 10:10AM | 24 | proceed with this hearing by video? |
| 10:10AM | 25 | MR. RICHARDS:  You mean, you want me to -- my only |

10:10AM   1   concern, Your Honor, is I don't want to waive any privilege

10:10AM   2   with Mr. Akau, but I could tell you that we discussed generally

10:10AM   3   the option of doing the change of plea and that the video is an

10:10AM   4   option that he wants to utilize because he doesn't want to go

10:10AM   5   into quarantine and he's happy with doing it this way.

10:10AM   6        THE COURT:  Mr. Akau, having so consulted with

10:10AM   7   Mr. Richards, do you, sir, consent to proceed with your change

10:10AM   8   of plea hearing by video?

10:10AM   9        THE DEFENDANT:  Yes, Your Honor, I consent.

10:10AM  10        THE COURT:  Thank you.  In addition, the Court finds

10:10AM  11   that this change of plea hearing cannot be further delayed

10:10AM  12   without serious harm to the interest of justice.  In particular

10:10AM  13   this very pandemic that has been with us has been with us

10:11AM  14   unfortunately for going on a year and a half now.  As

10:11AM  15   mentioned, the chief judge of this district has already found

10:11AM  16   in a series of CARES Act orders, the most recent one being on

10:11AM  17   May 6th of this year, that change of plea hearings like this

10:11AM  18   one cannot proceed in person without seriously jeopardizing

10:11AM  19   public health and safety.

10:11AM  20        Mr. Akau is incarcerated at FDC Honolulu.  If he were

10:11AM  21   to appear in person, both Mr. Akau as well as his escorts would

10:11AM  22   face an enhanced risk presented by the current pandemic.  And

10:11AM  23   Mr. Akau would also, as Mr. Richards just referenced, be

10:11AM  24   required by FDC Honolulu procedures to quarantine upon return.

10:11AM  25   Such a quarantine would limit, among other things, his

10:11AM   1   communication with others to include counsel.

10:11AM   2           In addition, there is limited programming available to

10:11AM   3   pretrial detainees like Mr. Akau.  As a result, until he is put

10:11AM   4   into the sentencing queue and is ultimately sentenced, he will

10:12AM   5   not be eligible for additional programming that could result in

10:12AM   6   a number of changes beneficial to him, to include the possible

10:12AM   7   early release as well as a lower security classification.

10:12AM   8           In addition, the Court finds that delay would

10:12AM   9   eventually result in a backlog of criminal matters on this

10:12AM  10   Court's docket, which is precisely what did occur last year

10:12AM  11   when the pandemic -- the same pandemic closed our courthouse

10:12AM  12   for several months.

10:12AM  13           Mr. Akau, before accepting your plea, there are a few

10:12AM  14   questions that I need to ask you to ensure that your decisions

10:12AM  15   are knowing and voluntary.  If I ask you anything at all that

10:12AM  16   is confusing or ambiguous to you, it's certainly not my intent

10:12AM  17   to do that, but if I do please point that out to me, and I'll

10:12AM  18   do my very best to ask you a better question.  Do you

10:12AM  19   understand that, sir?

10:12AM  20           THE DEFENDANT:  Yes, Your Honor.

10:12AM  21           THE COURT:  Ms. Kimura, would you please swear the

10:12AM  22   defendant?

10:12AM  23           THE CLERK:  Please raise your right hand.

10:12AM  24           (The defendant was sworn to answer truthfully.)

10:12AM  25

| | | |
|---|---|---|
| 10:13AM | 1 | MR. RICHARDS:  Is it me or is someone freezing? |
| 10:14AM | 2 | THE CLERK:  The judge is frozen. |
| 10:14AM | 3 | MR. RICHARDS:  I'm frozen? |
| 10:14AM | 4 | THE CLERK:  No, the judge is.  We will let him know. |
| 10:14AM | 5 | Thank you. |
| 10:14AM | 6 | MR. RICHARDS:  Believe me, I've frozen plenty of |
| 10:14AM | 7 | times.  I made sure that I'm in the highest internet, so I was |
| 10:14AM | 8 | like it can't be me. |
| 10:14AM | 9 | THE COURT:  All right.  Did I lose connection here? |
| 10:14AM | 10 | THE CLERK:  Yes.  You're back on, Judge. |
| 10:14AM | 11 | THE COURT:  I apologize for that.  I didn't realize |
| 10:14AM | 12 | that I was the one I guess frozen.  You all looked frozen to |
| 10:14AM | 13 | me, and then I realized that -- |
| 10:14AM | 14 | MR. RICHARDS:  The screen looks ten years younger. |
| 10:14AM | 15 | THE COURT:  Yeah.  Well, then I realized that it |
| 10:14AM | 16 | couldn't be the five of you, it must be the one of me; so I |
| 10:14AM | 17 | logged out and reconnected.  I apologize.  I'm in the |
| 10:14AM | 18 | courthouse, so it's not a personal cellular connection or WiFi |
| 10:14AM | 19 | connection that is to blame.  Hopefully we won't encounter that |
| 10:15AM | 20 | again. |
| 10:15AM | 21 | So as I was saying -- Mr. Akau, before voluntary -- |
| 10:15AM | 22 | (Audio transmission gap). |
| 10:20AM | 23 | Let's roll.  Hopefully this will last. |
| 10:20AM | 24 | Mr. Akau, can you hear me, sir? |
| 10:20AM | 25 | THE DEFENDANT:  Yes, I can Your Honor. |

| | | |
|---|---|---|
| 10:20AM | 1 | THE COURT:  Mr. Richards, are you there? |
| 10:20AM | 2 | MR. RICHARDS:  I am, Your Honor. |
| 10:20AM | 3 | THE COURT:  Thank you your for your patience. |
| 10:20AM | 4 | Mr. Akau, before accepting your plea, as I was |
| 10:20AM | 5 | hopefully saying earlier, there are a few questions that I need |
| 10:20AM | 6 | to ask you this morning, and that's to ensure that your |
| 10:20AM | 7 | decisions are knowing and voluntary.  If I ask you anything at |
| 10:20AM | 8 | all that is ambiguous or that is unclear to you in any fashion, |
| 10:21AM | 9 | please point that out to me, and I'll do my best to correct |
| 10:21AM | 10 | that; okay? |
| 10:21AM | 11 | THE DEFENDANT:  Yes.  Thank you, Your Honor. |
| 10:21AM | 12 | THE COURT:  Ms. Kimura, would you then swear the |
| 10:21AM | 13 | defendant in? |
| 10:21AM | 14 | THE CLERK:  Please raise your right hand. |
| 10:21AM | 15 | (The defendant was sworn to answer truthfully.) |
| 10:21AM | 16 | THE COURT:  Mr. Akau, please understand that you have |
| 10:21AM | 17 | now taken an oath to answer my questions this morning |
| 10:21AM | 18 | truthfully.  And if you do anything other than that, you could |
| 10:21AM | 19 | be subjecting yourself to additional charges.  Do you |
| 10:21AM | 20 | understand that, sir? |
| 10:21AM | 21 | THE DEFENDANT:  Yes, Your Honor. |
| 10:21AM | 22 | THE COURT:  Please state your full name then. |
| 10:21AM | 23 | THE DEFENDANT:  Norman Lani Akau, III. |
| 10:21AM | 24 | THE COURT:  How old are you, sir? |
| 10:21AM | 25 | THE DEFENDANT:  I'm 49 years old. |

| | | |
|---|---|---|
| 10:21AM | 1 | THE COURT:  What is the highest level of education |
| 10:22AM | 2 | that you have achieved? |
| 10:22AM | 3 | THE DEFENDANT:  High school diploma, 12th grade. |
| 10:22AM | 4 | THE COURT:  Who is your most recent employer? |
| 10:22AM | 5 | THE DEFENDANT:  Magnum PI. |
| 10:22AM | 6 | THE COURT:  Magnum PI, the TV show? |
| 10:22AM | 7 | THE DEFENDANT:  Yes, Your Honor. |
| 10:22AM | 8 | THE COURT:  What did you do?  Were you a part of the |
| 10:22AM | 9 | production team? |
| 10:22AM | 10 | THE DEFENDANT:  I was part of the production team in |
| 10:22AM | 11 | management. |
| 10:22AM | 12 | THE COURT:  And you understand, speak, and I assume |
| 10:22AM | 13 | write English all just fine as a high school graduate; is that |
| 10:22AM | 14 | fair? |
| 10:22AM | 15 | THE DEFENDANT:  Yes, I do.  I read and speak English |
| 10:22AM | 16 | well, Your Honor. |
| 10:22AM | 17 | THE COURT:  And have you taken any type -- I know |
| 10:22AM | 18 | you're in custody, but have you taken any type of drugs, legal |
| 10:22AM | 19 | or illegal, within the past 48 hours? |
| 10:22AM | 20 | THE DEFENDANT:  I have not.  No, sir. |
| 10:22AM | 21 | THE COURT:  And have you consumed any alcohol, |
| 10:22AM | 22 | Mr. Akau, in the last 24 hours? |
| 10:22AM | 23 | THE DEFENDANT:  I have not, Your Honor. |
| 10:23AM | 24 | THE COURT:  Is it fair to say then that you are sober |
| 10:23AM | 25 | and thinking clearly this morning? |

| 10:23AM | 1 | THE DEFENDANT:  Yes, Your Honor, I am. |

10:23AM    1          THE DEFENDANT:  Yes, Your Honor, I am.

10:23AM    2          THE COURT:  What is your understanding then of the

10:23AM    3  purpose of this morning's hearing?

10:23AM    4          THE DEFENDANT:  I am to have a change of plea from not

10:23AM    5  guilty to guilty for the charge of Count 1, conspiracy for

10:23AM    6  racketeering.

10:23AM    7          THE COURT: And have you had enough time, sir, to

10:23AM    8  discuss that decision whether or not to plead guilty as well as

10:23AM    9  this case generally with Mr. Richards?

10:23AM   10          THE DEFENDANT:  Yes, Your Honor, I have.

10:23AM   11          THE COURT:  And are you satisfied with his

10:23AM   12  representation of you thus far in this case?

10:23AM   13          THE DEFENDANT:  Yes, sir, I'm satisfied.

10:23AM   14          THE COURT:  Mr. Richards, do you have any reason to

10:23AM   15  doubt Mr. Akau's capacity or competence to enter a knowing and

10:23AM   16  voluntary plea this morning?

10:23AM   17          MR. RICHARDS:  No, and I can tell you his penmanship

10:23AM   18  is the best that I've seen in almost 28 years.  When he writes

10:24AM   19  me a letter, it's outstanding.

10:24AM   20          THE COURT:  Looks like calligraphy, huh?

10:24AM   21          MR. RICHARDS:  Honestly I couldn't write that well if

10:24AM   22  you gave me a week.  It's perfectly printed.

10:24AM   23          THE COURT:  Good to hear.

10:24AM   24          Mr. Akau, my understanding then is you are pleading

10:24AM   25  guilty to Count 1 this morning, as you just mentioned yourself

| | | |
|---|---|---|
| 10:24AM | 1 | a minute ago.  Count 1 charges you with conspiring to violate |
| 10:24AM | 2 | the racketeering laws of the United States in violation of |
| 10:24AM | 3 | Title 18 of the United States Code, Section 1962D, as in David. |
| 10:24AM | 4 | Have you discussed this particular charge and |
| 10:24AM | 5 | allegations behind that charge with counsel? |
| 10:24AM | 6 | THE DEFENDANT: Yes, Your Honor, I have. |
| 10:24AM | 7 | THE COURT: And based on your own review and |
| 10:24AM | 8 | consultation with counsel, are you confident that you |
| 10:24AM | 9 | understand the charges brought against you? |
| 10:24AM | 10 | THE DEFENDANT: Yes, I do, Your Honor.  I understand. |
| 10:24AM | 11 | THE COURT:  And do you have any questions, Mr. Akau, |
| 10:24AM | 12 | with respect to any of the charges or allegations? |
| 10:24AM | 13 | THE DEFENDANT: I do not at this time, Your Honor. |
| 10:25AM | 14 | THE COURT:  Can you tell me, Mr. Akau, if anyone has |
| 10:25AM | 15 | threatened, forced or coerced you into pleading guilty? |
| 10:25AM | 16 | THE DEFENDANT: No one has done any of those things. |
| 10:25AM | 17 | I made this choice on my own free will, Your Honor. |
| 10:25AM | 18 | THE COURT:  And to your knowledge, Mr. Akau, has |
| 10:25AM | 19 | anyone threatened, forced or coerced someone close to you, |
| 10:25AM | 20 | meaning a close friend or relative, in order to get you to |
| 10:25AM | 21 | plead guilty? |
| 10:25AM | 22 | THE DEFENDANT: No one has, Your Honor. |
| 10:25AM | 23 | THE COURT:  Has anyone made any promises to you in |
| 10:25AM | 24 | order to get you to plead guilty, other than the promises that |
| 10:25AM | 25 | the government has made in its written plea agreement with you? |

| | | |
|---|---|---|
| 10:25AM | 1 | THE DEFENDANT: No one has made any promises, Your |
| 10:25AM | 2 | Honor. |
| 10:25AM | 3 | MR. RICHARDS:  Your Honor -- |
| 10:25AM | 4 | THE COURT:  Are you pleading guilty then, Mr. Akau, |
| 10:25AM | 5 | because you are guilty of the conduct alleged in Count 1? |
| 10:25AM | 6 | THE DEFENDANT:  Yes, Your Honor, that is true.  I'm |
| 10:26AM | 7 | pleading guilty because -- |
| 10:26AM | 8 | THE COURT:  Because what?  I missed the last part. |
| 10:26AM | 9 | THE DEFENDANT:  (Inaudible) |
| 10:26AM | 10 | THE COURT:  I'm sorry, I missed that still. |
| 10:26AM | 11 | THE DEFENDANT:  I said I'm pleading guilty to that |
| 10:26AM | 12 | charge for I'm guilty of it, Your Honor. |
| 10:26AM | 13 | THE COURT:  Mr. Inciong, would you then please |
| 10:26AM | 14 | describe the potential penalties that Mr. Akau faces for |
| 10:26AM | 15 | pleading guilty to this particular count? |
| 10:26AM | 16 | MR. INCIONG:  Yes, Your Honor.  The maximum penalties |
| 10:26AM | 17 | that apply to Count 1 of the superseding indictment to which |
| 10:26AM | 18 | Mr. Akau is pleading is a term of imprisonment of not more than |
| 10:26AM | 19 | 20 years.  There is also a potential fine of up to $250,000. |
| 10:26AM | 20 | In addition, there is a term of supervised release of up to |
| 10:26AM | 21 | three years that would be imposed.  Finally, there is a $100 |
| 10:26AM | 22 | mandatory special assessment that would be assessed. |
| 10:26AM | 23 | THE COURT:  Is there any forfeiture component to this |
| 10:27AM | 24 | particular plea? |
| 10:27AM | 25 | MR. INCIONG:  Your Honor, the plea agreement does |

| | | |
|---|---|---|
| 10:27AM | 1 | generally call for forfeiture, but at this time there are no |
| 10:27AM | 2 | applicable items for forfeiture in regard to Mr. Akau. |
| 10:27AM | 3 | THE COURT:  All right.  Mr. Richards, do you agree |
| 10:27AM | 4 | with the potential penalties that your client faces for |
| 10:27AM | 5 | pleading guilty to Count 1 as just described by the |
| 10:27AM | 6 | government's attorney? |
| 10:27AM | 7 | MR. RICHARDS:  I do, but at the appropriate time, Your |
| 10:27AM | 8 | Honor.  I just want to address the portion of the plea |
| 10:27AM | 9 | agreement and the factual basis that I believe would be -- |
| 10:27AM | 10 | that I want to make sure it's segregated in the record with |
| 10:27AM | 11 | respect to paragraph 21E with respect to sentencing.  There's |
| 10:27AM | 12 | some statements which are part of the plea agreement that were |
| 10:27AM | 13 | provided pursuant to a cooperation agreement; so whatever the |
| 10:28AM | 14 | appropriate time is, I'll point that out to the Court. |
| 10:28AM | 15 | THE COURT:  All right.  And we are certainly going to |
| 10:28AM | 16 | get into the details of the plea agreement in just a minute. |
| 10:28AM | 17 | That would be the appropriate time. |
| 10:28AM | 18 | Mr. Akau, do you, sir, understand the potential |
| 10:28AM | 19 | penalties that you face for pleading guilty to Count 1 as just |
| 10:28AM | 20 | described by AUSA Inciong? |
| 10:28AM | 21 | THE DEFENDANT:  Yes, Your Honor, I understand fully. |
| 10:28AM | 22 | THE COURT:  Then I'll turn back to Mr. Inciong.  I'm |
| 10:28AM | 23 | going to turn back to him in just a minute to summarize the |
| 10:28AM | 24 | essential terms of the plea agreement.  Before we get there, I |
| 10:28AM | 25 | want to be sure, Mr. Akau, that you confirm you've entered into |

10:28AM   1    a plea agreement with the government, have you not?

10:28AM   2            THE DEFENDANT:  Yes, Your Honor, I have.

10:28AM   3            THE COURT:  And that is a written plea agreement?

10:28AM   4            THE DEFENDANT:  Yes.

10:28AM   5            THE COURT:  And can you confirm that you've read that

10:28AM   6    document, the plea agreement, in full?

10:28AM   7            THE DEFENDANT:  Yes, I have read it in full, Your

10:28AM   8    Honor.

10:28AM   9            THE COURT:  And discussed it with counsel as well?

10:29AM   10           THE DEFENDANT:  Yes, I have.

10:29AM   11           THE COURT:  Are you confident, based on your own

10:29AM   12   review and discussions with counsel, that you understand each

10:29AM   13   of the terms of your plea agreement with the United States?

10:29AM   14           THE DEFENDANT:  Yes, I do, Your Honor.  I understand

10:29AM   15   fully.

10:29AM   16           THE COURT:  It is a 22-paged document that is the plea

10:29AM   17   agreement.  Is that your signature, sir?  I have a copy of it

10:29AM   18   here in front of me, is that your signature that appears on the

10:29AM   19   final page, page 22, which at least on my copy bears the date

10:29AM   20   of June 8, 2021?

10:29AM   21           THE DEFENDANT:  Yes, Your Honor, that is my signature.

10:29AM   22           THE COURT:  And does the plea agreement reflect the

10:29AM   23   entire agreement, Mr. Akau, that you have with the government?

10:29AM   24           THE DEFENDANT:  Yes, it does, Your Honor.

10:29AM   25           THE COURT:  In other words, did the government make

10:29AM  1    any verbal or oral promises to you that they did not put into

10:29AM  2    the body of the written plea agreement?

10:29AM  3              THE DEFENDANT:  There was no promises that is not

10:29AM  4    written on the plea agreement, Your Honor.

10:29AM  5              THE COURT:  Do you understand, Mr. Akau, that the

10:30AM  6    Court is not required to accept the plea agreement and that I

10:30AM  7    could reject it after I consider a presentence investigation

10:30AM  8    and investigation report, both of which will be completed over

10:30AM  9    the course of the next several months after the conclusion of

10:30AM  10   this morning's hearing?

10:30AM  11             THE DEFENDANT:  Yes, Your Honor.

10:30AM  12             MR. RICHARDS:  Your Honor --

10:30AM  13             THE COURT:  Do you understand --

10:30AM  14             Mr. Richards.

10:30AM  15             MR. RICHARDS:  On the question of promises, I just

10:30AM  16   want the Court to be aware that before there was a confirmation

10:30AM  17   between counsel and I that his proffer statements would not be

10:30AM  18   used against him at sentencing and then we discovered later on,

10:30AM  19   after we discussed sort of a side letter we had, that the plea

10:30AM  20   agreement did provide in paragraph 21E, sort of the same thing.

10:30AM  21   But I just wanted the Court to be aware that I did advise my

10:31AM  22   client, and we did have an agreement that the statements that

10:31AM  23   were made in the proffer section that may not be part of the

10:31AM  24   indictment were not going to be used against Mr. Akau.

10:31AM  25             THE COURT:  Okay.  Mr. Inciong, can you -- do you want

10:31AM   1   to address that?

10:31AM   2          MR. INCIONG:  Yes, Your Honor.  As I discussed with

10:31AM   3   Mr. Richards, I was going to address this when we got into the

10:31AM   4   description of the plea agreement.  But at paragraph 21E of the

10:31AM   5   plea agreement on page 20, which states that pursuant to

10:31AM   6   Section 1B1.8(a) of the Sentencing Guidelines, the prosecution

10:31AM   7   agrees that self-incriminating information provided pursuant to

10:31AM   8   this agreement to cooperate will not be used in determining the

10:31AM   9   applicable guideline range, except as may be provided in this

10:31AM  10   agreement and under Section 1B1.8, subparagraph B, of the

10:31AM  11   Sentencing Guidelines.

10:31AM  12          In paragraph 8E of the factual basis of the plea

10:32AM  13   agreement, there are some admissions that are included that the

10:32AM  14   defendant made under proffer.  So the government's position, as

10:32AM  15   I've explained to Mr. Richards, is that those admissions fall

10:32AM  16   squarely under the protections of paragraph 21E, and thus they

10:32AM  17   would not be used against Mr. Akau to determine his Sentencing

10:32AM  18   Guideline range or relevant conduct or anything of that nature.

10:32AM  19   So I believe it is fully covered by the plea agreement.

10:32AM  20          THE COURT:  Okay.  All right, I appreciate that

10:32AM  21   clarification.  We will get into the body of the plea agreement

10:32AM  22   in just a minute, I promise you.

10:32AM  23          Before we do that, Mr. Akau, there are just a couple

10:32AM  24   more questions that I want to ask you, the first of which is:

10:32AM  25   Do you understand, sir, that any stipulations in the plea

10:32AM   1    agreement are stipulations that you've reached with the

10:32AM   2    Department of Justice or the U.S. Attorney's Office and that

10:32AM   3    the Court is specifically not bound by those stipulations?

10:33AM   4           THE DEFENDANT:  I understand, Your Honor.

10:33AM   5           THE COURT:  And now, Mr. Inciong, now we've gotten to

10:33AM   6    that point.  If you would, please describe the essential terms

10:33AM   7    of the government's plea agreement with Mr. Akau to include any

10:33AM   8    appellate waiver provisions, please.

10:33AM   9           MR. INCIONG:  Yes, Your Honor.  The terms of the plea

10:33AM   10   agreement to which the government and Mr. Akau have entered are

10:33AM   11   as follows:

10:33AM   12           First, Mr. Akau acknowledges that he has been charged

10:33AM   13   in Counts 1, 16, 17, 18 and 19 of the superseding indictment in

10:33AM   14   this matter, which has also placed him on notice of the first,

10:33AM   15   second, fourth, and fifth forfeiture allegations.

10:33AM   16           The defendant has read the charges against him

10:33AM   17   contained in the superseding indictment and those charges have

10:33AM   18   been fully explained to him by Mr. Richards, his attorney.  The

10:33AM   19   defendant fully understands the nature and elements of the

10:33AM   20   crimes with which he has been charged.

10:33AM   21           As part of the agreement, pursuant to the agreement,

10:33AM   22   the defendant will enter a voluntary plea of guilty to Count 1

10:34AM   23   of the superseding indictment which charges him with conspiring

10:34AM   24   to violate the racketeering laws of the United States,

10:34AM   25   specifically Title 18, U.S. Code, Section 1962(d), as in David.

| | | |
|---|---|---|
| 10:34AM | 1 | In return, the government agrees to move to dismiss |
| 10:34AM | 2 | Counts 16, 17, 18, and 19 of the superseding indictment as to |
| 10:34AM | 3 | Mr. Akau after sentencing. |
| 10:34AM | 4 | The government also has agreed not to file any |
| 10:34AM | 5 | additional charges against the defendant for attempted murder |
| 10:34AM | 6 | or his participation in any murder for hire scheme to the |
| 10:34AM | 7 | extent those are now known to the government. |
| 10:34AM | 8 | The defendant agrees that this memorandum of plea |
| 10:34AM | 9 | agreement shall be filed and become part of the record in this |
| 10:34AM | 10 | case. |
| 10:34AM | 11 | The defendant entered this plea because he is in fact |
| 10:34AM | 12 | guilty of conspiring to violate the racketeering laws of the |
| 10:34AM | 13 | United States as charged in Count 1 of the superseding |
| 10:34AM | 14 | indictment and agrees that his plea is voluntary and not the |
| 10:34AM | 15 | result of any force or threats. |
| 10:35AM | 16 | The defendant understands the maximum penalties which |
| 10:35AM | 17 | were recited a few minutes ago that apply to this particular |
| 10:35AM | 18 | charge. As indicated, there is a forfeiture provision on |
| 10:35AM | 19 | paragraph 7C at page 4, but there is no applicable specific |
| 10:35AM | 20 | forfeiture at this time. |
| 10:35AM | 21 | The Court could also award restitution pursuant to |
| 10:35AM | 22 | Title 18, U.S. Code, Section 3663A if appropriate as well. |
| 10:35AM | 23 | There are a number of factual stipulations, which I |
| 10:35AM | 24 | will address later, which begin at page 5 on paragraph 8 of the |
| 10:35AM | 25 | plea agreement. Those continue on to page 6, 7, 8, 9 and |

10:35AM    1    concludes on the top of page 10.

10:35AM    2         There are a number of sentencing stipulations as well.

10:36AM    3    But before I address those, I should also note to the Court

10:36AM    4    that the parties agree that the charge to which the defendant

10:36AM    5    is pleading guilty adequately reflects the seriousness of the

10:36AM    6    actual offense behavior and that accepting this plea agreement

10:36AM    7    would not undermine any statutory purposes of sentencing.

10:36AM    8         As far as stipulations, the parties stipulate to the

10:36AM    9    facts set forth in paragraph 8 of the plea agreement.  Also, as

10:36AM    10   of the date of this plea agreement, it is expected that the

10:36AM    11   defendant will enter a plea of guilty prior to the commencement

10:36AM    12   of trial, will truthfully admit his involvement in the offense

10:36AM    13   and related conduct, and will not engage in conduct that is

10:36AM    14   inconsistent with such acceptance of responsibility.  If all of

10:36AM    15   those events occur, and the defendant's acceptance of

10:36AM    16   responsibility continues through the date of sentencing, a

10:36AM    17   downward adjustment of minus two levels for acceptance of

10:36AM    18   responsibility will be appropriate pursuant to Guideline

10:36AM    19   Section 3E1.1, subparagraph A, and Application Note 3.

10:37AM    20        The U.S. attorney also agrees that Mr. Akau's

10:37AM    21   agreement to enter into a guilty plea constitutes notice of

10:37AM    22   intent to plead guilty in a timely manner, so as to permit the

10:37AM    23   government to avoid preparing for trial as to Mr. Akau.

10:37AM    24   Accordingly, the U.S. Attorney anticipates moving in the

10:37AM    25   government's sentencing statement for an additional one-level

| | | |
|---|---|---|
| 10:37AM | 1 | reduction in sentencing pursuant to Guideline Section 3E1.1, |
| 10:37AM | 2 | subparagraph B, subparagraph two, if the defendant is otherwise |
| 10:37AM | 3 | eligible. |
| 10:37AM | 4 | The defendant understands however that notwithstanding |
| 10:37AM | 5 | those present intentions, and still within the parameters of |
| 10:37AM | 6 | this plea agreement, the prosecution reserves its right to, |
| 10:37AM | 7 | one, argue to the contrary in the event that new information |
| 10:37AM | 8 | relating to those issues is received prior to sentencing, and, |
| 10:37AM | 9 | number two, to call and examine witnesses on those issues in |
| 10:37AM | 10 | the event that either U.S. Probation finds to the contrary of |
| 10:37AM | 11 | the prosecution's intentions or that the Court requests |
| 10:38AM | 12 | evidence be presented on those issues. |
| 10:38AM | 13 | Also, the parties agree and stipulate that |
| 10:38AM | 14 | notwithstanding the parties' agreement herein, the Court is not |
| 10:38AM | 15 | bound by any stipulation entered into by the parties but may, |
| 10:38AM | 16 | with the aid of the presentence report, determine any facts |
| 10:38AM | 17 | relevant to sentencing.  The parties also understand that the |
| 10:38AM | 18 | Court's rejection of any stipulation between the parties does |
| 10:38AM | 19 | not constitute a refusal to accept this plea agreement since |
| 10:38AM | 20 | the Court is expressly not bound by any stipulations between |
| 10:38AM | 21 | the parties. |
| 10:38AM | 22 | The parties do represent, Your Honor, that as of the |
| 10:38AM | 23 | date of this agreement there are no material facts in dispute. |
| 10:38AM | 24 | Ordinarily, Mr. Akau would have the right to appeal or |
| 10:38AM | 25 | collaterally review his sentence and conviction.  The defendant |

10:38AM  1  understands though that he is knowingly and voluntarily waiving

10:38AM  2  his right to appeal in this case pursuant to the plea

10:38AM  3  agreement, except as indicated in subparagraph B of paragraph

10:39AM  4  13.  That includes his conviction and sentence within the

10:39AM  5  guideline range as determined by the Court at the time of

10:39AM  6  sentencing, as well as any lawful restitution or forfeiture

10:39AM  7  order imposed or the manner in which the sentence, restitution

10:39AM  8  or forfeiture order was determined on any ground whatsoever in

10:39AM  9  exchange for concessions made by the prosecution in this plea

10:39AM  10  agreement.  The defendant does understand that this waiver

10:39AM  11  includes the right to assert any and all legally waivable

10:39AM  12  claims.

10:39AM  13      The defendant also waives the right to challenge his

10:39AM  14  conviction or sentence or the manner in which it was determined

10:39AM  15  in any collateral attack including, but not limited to, a

10:39AM  16  motion brought under Title 28, U.S. Code, Section 2255, except

10:39AM  17  that the defendant may make such a challenge, one, as to the

10:39AM  18  terms indicated in subparagraph B, which I'll address in a

10:39AM  19  minute, or two, based on a claim of ineffective assistance of

10:39AM  20  counsel.

10:39AM  21      In other words, the defendant is waiving his rights to

10:39AM  22  appeal and collaterally attack in this case except for two

10:40AM  23  limited circumstances.  The first being that if the Court would

10:40AM  24  impose a sentence greater than that as specified in the

10:40AM  25  applicable guideline range that is determined by the Court to

10:40AM   1   the defendant, based on the facts in this case, Mr. Akau would

10:40AM   2   retain his right to appeal the portion of his sentence greater

10:40AM   3   than the applicable guideline range.  And as indicated also, he

10:40AM   4   would retain his right to appeal or collaterally attack any

10:40AM   5   claim that he believes he has based on ineffective assistance

10:40AM   6   of counsel.

10:40AM   7        The prosecution does retain its right to appeal the

10:40AM   8   sentence and the manner in which it was determined on any

10:40AM   9   grounds stated in Title 18, U.S. Code, Section 3742(b).

10:40AM   10        There is a financial disclosure provision as part of

10:40AM   11   this plea agreement wherein Mr. Akau is agreeing to fully

10:40AM   12   disclose all assets in which he has any interest or which he

10:40AM   13   exercises control, either directly or indirectly, including any

10:41AM   14   assets held by a spouse, nominee, or third party.

10:41AM   15        The defendant understands that the U.S. Probation

10:41AM   16   Office will conduct a presentence investigation that will

10:41AM   17   require the defendant to complete a comprehensive financial

10:41AM   18   statement.  To avoid the requirement of the defendant

10:41AM   19   completing financial statements for both the U.S. Probation

10:41AM   20   Office and the government, the defendant has agreed to

10:41AM   21   truthfully complete a financial statement provided to him by

10:41AM   22   the U.S. Attorney's Office.  In it the defendant agrees to

10:41AM   23   complete the disclosure statement and provide it to the U.S.

10:41AM   24   Probation Office within the time frame required by the officer

10:41AM   25   assigned to the defendant's case.

10:41AM  1          The defendant understands that the U.S. Probation

10:41AM  2   Office will in turn provide a copy of the completed financial

10:41AM  3   statement to the U.S. Attorney's office.  The defendant agrees

10:41AM  4   to provide written updates to both the U.S. Probation Office

10:41AM  5   and the U.S. Attorney's Office regarding any material change in

10:41AM  6   circumstances which occur prior to sentencing.  The defendant's

10:42AM  7   failure to timely and accurately complete and sign the

10:42AM  8   financial statement and any updates in addition to any other

10:42AM  9   penalty or remedy constitute a failure to accept responsibility

10:42AM 10   under Guideline Section 3E1.1.

10:42AM 11          As part of that financial disclosure agreement, the

10:42AM 12   defendant has also expressly authorized the U.S. Attorney's

10:42AM 13   Office to obtain his credit report.

10:42AM 14          Finally, prior to sentencing, the defendant agrees to

10:42AM 15   notify the financial litigation office of the U.S. Attorney's

10:42AM 16   Office, before making any transfer of an interest in any

10:42AM 17   property with a value exceeding $1,000, either owned directly

10:42AM 18   or indirectly, individually or jointly held by defendant,

10:42AM 19   including any interest held or owned under any name, including

10:42AM 20   trusts, partnerships, and corporations.

10:42AM 21          In regard to imposition of sentence, the defendant

10:42AM 22   understands that the District Court in imposing his sentence

10:42AM 23   will consider the provisions of the Sentencing Guidelines; that

10:42AM 24   there was no promise or guarantee as to the applicability or

10:43AM 25   non-applicability of those guidelines.

10:43AM  1          The defendant also understands that this plea

10:43AM  2   agreement will not be accepted or rejected by the Court until

10:43AM  3   it has had an opportunity to consider the presentence report

10:43AM  4   that will be prepared in this case.

10:43AM  5          The defendant understands that the Court will not

10:43AM  6   accept an agreement unless the Court determines that the

10:43AM  7   remaining charge adequately reflects the seriousness of the

10:43AM  8   actual offense behavior and that accepting the plea agreement

10:43AM  9   would not undermine any statutory purposes of sentencing.

10:43AM  10          By entering this plea agreement the defendant is

10:43AM  11   waiving a number of important trial rights, both constitutional

10:43AM  12   and otherwise, including the right to have a speedy trial and

10:43AM  13   to have his case heard by a jury of 12 peers.

10:43AM  14          The defendant also understands that he would have a

10:43AM  15   privilege against self-incrimination so that he could decline

10:43AM  16   to testify and that no inference of guilt could be drawn from

10:43AM  17   his refusal to testify.

10:44AM  18          The defendant understands that by pleading guilty, he

10:44AM  19   is waiving all of the rights set forth in this paragraph and

10:44AM  20   that his attorney has explained those rights to him along with

10:44AM  21   the consequences of the waiver of those rights.

10:44AM  22          In regard to use of plea statements, Your Honor, if

10:44AM  23   after signing the agreement the defendant decides not to plead

10:44AM  24   guilty as provided herein, or if the defendant pleads guilty

10:44AM  25   but subsequently makes a motion before this Court to withdraw

| | | |
|---|---|---|
| 10:44AM | 1 | his guilty plea and the Court would grand that motion, the |
| 10:44AM | 2 | defendant agrees that any admission of guilt that he makes by |
| 10:44AM | 3 | signing this agreement or that he make while pleading as set |
| 10:44AM | 4 | forth in this plea agreement may be used against him in a |
| 10:44AM | 5 | subsequent trial if the defendant later proceeds to trial.  The |
| 10:44AM | 6 | defendant voluntarily, knowingly, and intelligently waives any |
| 10:44AM | 7 | protections afforded by Rule 11(f) of the Federal Rules of |
| 10:44AM | 8 | Criminal Procedure and Rule 410 of the Federal Rules of |
| 10:44AM | 9 | Evidence regarding the use of statements made in this agreement |
| 10:44AM | 10 | or during the course of pleading guilty when or if the guilty |
| 10:44AM | 11 | plea is later withdrawn.  The only exception to this paragraph |
| 10:45AM | 12 | is where the defendant fully complies with this agreement but |
| 10:45AM | 13 | the Court nonetheless rejects it.  Under those circumstances, |
| 10:45AM | 14 | the United States may not use those statements against the |
| 10:45AM | 15 | defendant for any purpose. |
| 10:45AM | 16 | Lastly, the defendant understands that the prosecution |
| 10:45AM | 17 | will apprise the Court and the U.S. Probation Officer of the |
| 10:45AM | 18 | nature, scope, and extent of the defendant's conduct regarding |
| 10:45AM | 19 | the charges against him, related matters, and any matters in |
| 10:45AM | 20 | aggravation or mitigation which are relevant to sentencing. |
| 10:45AM | 21 | There is a cooperation provision pursuant to this plea |
| 10:45AM | 22 | agreement, Your Honor.  The defendant agrees that he will fully |
| 10:45AM | 23 | cooperate with the United States, which includes agreeing to |
| 10:45AM | 24 | testifying truthfully at any and all trials, hearings, or any |
| 10:45AM | 25 | other proceedings at which the prosecution requests him to |

10:45AM  1    testify, including but not limited to any grand jury

10:45AM  2    proceedings, trial proceedings involving co-defendants and

10:45AM  3    others charged later in this investigation, sentencing

10:46AM  4    hearings, and related civil proceedings.

10:46AM  5           The defendant also agrees to be available to speak

10:46AM  6    with law enforcement officials and representatives of the

10:46AM  7    U.S. Attorney's Office at any time and to give truthful and

10:46AM  8    complete answers at such meetings, but understands he may have

10:46AM  9    counsel present at those conversations.

10:46AM  10          Defendant agrees that he will not assert any privilege

10:46AM  11   to refuse to testify at any grand jury, trial, or other

10:46AM  12   proceeding, involving or related to the crimes charged in this

10:46AM  13   superseding indictment or any subsequent charges related to

10:46AM  14   this investigation, at which the prosecution requests him to

10:46AM  15   testify.

10:46AM  16          The defendant also understands that his sentencing

10:46AM  17   date may be delayed based on the government's need for his

10:46AM  18   continued cooperation, and agrees not to object to any

10:46AM  19   continuances of the defendant's sentencing date sought by the

10:46AM  20   United States.

10:46AM  21          Subparagraph E is the paragraph I addressed earlier.

10:46AM  22   Your Honor, pursuant to Section 1B1.8(a) in which the

10:46AM  23   defendant's admissions made under proffer may not be used

10:47AM  24   against him in any way in determining his sentence, relevant

10:47AM  25   conduct, and so forth.  I should also add that it is the

10:47AM   1   government's view that those statements provided against his

10:47AM   2   own interest, which are included in the factual basis, are in

10:47AM   3   the government's view part of his cooperation and will be

10:47AM   4   addressed and brought to the Court's attention in the form of a

10:47AM   5   5K motion, if and when that time is appropriate.

10:47AM   6         In the event that the defendant does not breach any of

10:47AM   7   the terms of this agreement but the Court nonetheless refuses

10:47AM   8   to accept the agreement after the defendant has made statements

10:47AM   9   to law enforcement authorities, the prosecution agrees not to

10:47AM   10  use those statements in its case-in-chief in the trial of the

10:47AM   11  defendant in this matter.

10:47AM   12        The defendant understands, however, that this does not

10:47AM   13  bar the use of information and evidence derived from said

10:47AM   14  statements or prohibit the use of the statements by the

10:47AM   15  prosecution in cross-examination or rebuttal.

10:48AM   16        Pursuant to Guideline Section 5K1.1 and Rule 35(b) of

10:48AM   17  the Federal Rules of Criminal Procedure, the prosecution may

10:48AM   18  move the Court to depart from the guidelines on the ground that

10:48AM   19  defendant provided substantial assistance to authorities in the

10:48AM   20  investigation or prosecution of another person who has

10:48AM   21  committed an offense.  The defendant understands, however, that

10:48AM   22  the decision as to whether to make such a request or motion

10:48AM   23  lies entirely within the discretion of the prosecution.

10:48AM   24        This agreement does not require the prosecution to

10:48AM   25  make such a request or motion.

10:48AM   1         The agreement confers neither any right upon the

10:48AM   2    defendant to have the prosecution make such a request for a

10:48AM   3    motion, nor any remedy to the defendant in the event the

10:48AM   4    prosecution fails to make such a request or motion.

10:48AM   5         Even in the event that the prosecution makes such a

10:48AM   6    request or motion, the Court may refuse to depart from the

10:48AM   7    guidelines or to impose a sentence below the minimum level if

10:48AM   8    applicable established by statute, as the Court has final

10:49AM   9    discretion over any such motion.

10:49AM   10        The defendant and his attorney acknowledge that, apart

10:49AM   11   from any written agreements, if applicable, no threats,

10:49AM   12   promises, agreements or conditions have been entered into by

10:49AM   13   the parties other than those set forth in this agreement, to

10:49AM   14   induce the defendant to plead guilty.  Apart from any written

10:49AM   15   proffer agreements, this agreement supersedes all prior

10:49AM   16   promises, agreements or conditions between the parties.

10:49AM   17        To become effective, this plea agreement must be

10:49AM   18   signed by all signatories; that has been done.  Because of the

10:49AM   19   defendant's incarceration and the pandemic, it is on two

10:49AM   20   separate pages, Your Honor.  The government's original

10:49AM   21   signatures are shown on the first page 22 (verbatim), which is

10:49AM   22   dated today's date, June 8, 2021.  The defendant's signature,

10:49AM   23   along with his attorney's signature, are on the second page 22

10:49AM   24   which is the final page of this plea agreement.

10:49AM   25        Finally, the parties agree that should the Court

10:50AM   1    refuse to accept this plea agreement, it is null and avoid at

10:50AM   2    that point and neither party would be bound thereto.  Those are

10:50AM   3    the terms of the plea agreement, Your Honor.

10:50AM   4         THE COURT:  Mr. Richards, do you agree that AUSA

10:50AM   5    Inciong has accurately described the essential terms of your

10:50AM   6    client's plea agreement with the government?

10:50AM   7         MR. RICHARDS:  Yes.

10:50AM   8         THE COURT:  Mr. Akau, there are some important trial

10:50AM   9    and trial related rights that you would be waiving by virtue of

10:50AM   10   proceeding with this plea.  Those rights are largely described

10:50AM   11   at paragraphs 17 and 18 of this plea agreement.  I'm going to

10:50AM   12   go over those rights with you now, the first of which, sir, is:

10:50AM   13        Do you understand that under the constitution and laws

10:50AM   14   of the United States, you do have the right not to plead guilty

10:50AM   15   and to proceed to a trial, including a trial by jury, on the

10:50AM   16   charges brought against you?

10:50AM   17        THE DEFENDANT:  Yes, I understand, Your Honor.

10:50AM   18        THE COURT:  Mr. Akau, do you further understand that

10:51AM   19   if you were to proceed to trial, you would be presumed

10:51AM   20   innocent, which means that the government would have the burden

10:51AM   21   of proving your guilt to a jury beyond a reasonable doubt and

10:51AM   22   that at no time would you have the burden of proving you are

10:51AM   23   not guilty?

10:51AM   24        THE DEFENDANT:  I understand, Your Honor.

10:51AM   25        THE COURT:  Do you understand further that in order to

| | | |
|---|---|---|
| 10:51AM | 1 | be found guilty at a trial, a jury of 12 persons from the local |
| 10:51AM | 2 | community would have to find your guilt not only beyond a |
| 10:51AM | 3 | reasonable doubt but they would have to do unanimously? |
| 10:51AM | 4 | THE DEFENDANT: I understand, Your Honor. |
| 10:51AM | 5 | THE COURT: Do you understand that at all stages of |
| 10:51AM | 6 | the prosecution, which includes trial, you have the right to |
| 10:51AM | 7 | the assistance of counsel, as you do here this morning, and if |
| 10:51AM | 8 | at any point in time you could not afford counsel one would be |
| 10:51AM | 9 | appointed for you by the Court at no cost to you? |
| 10:51AM | 10 | THE DEFENDANT: I understand, Your Honor. |
| 10:51AM | 11 | THE COURT: Mr. Akau, do you further understand that |
| 10:51AM | 12 | at any trial you would have the right to see and to hear all of |
| 10:51AM | 13 | the government's evidence and witnesses and to have those |
| 10:52AM | 14 | witnesses questioned by your own attorney? |
| 10:52AM | 15 | THE DEFENDANT: I understand, Your Honor. |
| 10:52AM | 16 | THE COURT: Can you also confirm you understand that |
| 10:52AM | 17 | at any trial you could object to any of the evidence offered by |
| 10:52AM | 18 | the United States, and you could present evidence of your own |
| 10:52AM | 19 | in your case in chief including through witness testimony that |
| 10:52AM | 20 | is compelled through the Court's subpoena power, if that were |
| 10:52AM | 21 | necessary? |
| 10:52AM | 22 | THE DEFENDANT: I understand, Your Honor. |
| 10:52AM | 23 | THE COURT: Do you understand that at any trial you |
| 10:52AM | 24 | would also have the right to testify on your own behalf, if you |
| 10:52AM | 25 | chose to do that; but if you chose not to, no inference or |

| 10:52AM | 1 | suggestion of your guilt could be drawn by the jury by the fact |
|---|---|---|
| 10:52AM | 2 | that you chose not to testify? |

10:52AM 3       THE DEFENDANT:  I understand, Your Honor.

10:52AM 4       THE COURT:  Do you understand, Mr. Akau, that by

10:52AM 5 entering a plea of guilty here this morning, and if I were to

10:52AM 6 accept that plea, there will be no trial and you will have

10:52AM 7 given up each of these trial related rights that I just

10:52AM 8 mentioned?

10:52AM 9       THE DEFENDANT:  I understand, Your Honor.

10:52AM 10       THE COURT:  Do you as well understand, sir, that to

10:53AM 11 proceed with your plea, you will also need to give up your

10:53AM 12 right not to incriminate yourself, and the reason for that is

10:53AM 13 I'm about to ask you a few questions about what you did that

10:53AM 14 makes you guilty of Count 1, and those questions will need to

10:53AM 15 be answered?

10:53AM 16       THE DEFENDANT:  Yes, Your Honor, I understand.

10:53AM 17       THE COURT:  Do you have any -- Mr. Akau, do you have

10:53AM 18 questions at all regarding any of these rights that I just

10:53AM 19 mentioned?

10:53AM 20       THE DEFENDANT:  I do not at this time, Your Honor.

10:53AM 21       THE COURT:  And knowing these rights, do you still

10:53AM 22 wish to proceed with your plea?

10:53AM 23       THE DEFENDANT:  Yes, I do Your Honor.

10:53AM 24       THE COURT:  Are you a United States citizen, Mr. Akau?

10:53AM 25       THE DEFENDANT:  Yes, I am.  Your Honor.

| | | |
|---|---|---|
| 10:53AM | 1 | THE COURT:  As a United States citizen then you need |
| 10:53AM | 2 | to understand that the charge brought against you, Count 1 of |
| 10:53AM | 3 | the indictment, is considered a felony offense.  If your plea |
| 10:53AM | 4 | is accepted and you are adjudged guilty of that offense, that |
| 10:53AM | 5 | adjudication by the Court could deprive you of some valuable |
| 10:53AM | 6 | civil rights.  Those civil rights include the right to vote, |
| 10:53AM | 7 | the right to hold public office, the right to sit on a jury, as |
| 10:54AM | 8 | well as the right to possess or bear a firearm; do you |
| 10:54AM | 9 | understand that as well? |
| 10:54AM | 10 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:54AM | 11 | THE COURT:  With regard to sentencing, United States |
| 10:54AM | 12 | law establishes detailed sentencing guidelines that apply to |
| 10:54AM | 13 | those who are convicted of, which include those who plead |
| 10:54AM | 14 | guilty to federal crimes.  The sentencing judge, in this case |
| 10:54AM | 15 | most likely myself, must consider those sentencing guidelines |
| 10:54AM | 16 | and additionally must consider the statutory sentencing factors |
| 10:54AM | 17 | that are set forth at 18 United States Code, Section 3553(a). |
| 10:54AM | 18 | Although the sentencing judge must consider the |
| 10:54AM | 19 | sentencing guidelines, those guidelines are what the name might |
| 10:54AM | 20 | imply to you.  They are guidelines which means that they are |
| 10:54AM | 21 | advisory on this Court only.  Do you understand that? |
| 10:54AM | 22 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:54AM | 23 | THE COURT:  Mr. Akau, have you discussed with |
| 10:54AM | 24 | Mr. Richards how the sentencing guidelines might apply to your |
| 10:54AM | 25 | case? |

| | | |
|---|---|---|
| 10:54AM | 1 | THE DEFENDANT:  Yes, I have Your Honor. |
| 10:54AM | 2 | THE COURT:  And I always am careful to use the term |
| 10:55AM | 3 | "might" and that's because as I sit here today I cannot with |
| 10:55AM | 4 | precision tell you how the guidelines will apply to your case. |
| 10:55AM | 5 | I will not be able to do that until after a presentence |
| 10:55AM | 6 | investigation and investigation report have been completed and |
| 10:55AM | 7 | after both Mr. Inciong and Mr. Richards have an opportunity to |
| 10:55AM | 8 | provide me with any comments on or objections to the contents |
| 10:55AM | 9 | of that report that they may have.  Do you understand that |
| 10:55AM | 10 | process? |
| 10:55AM | 11 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:55AM | 12 | THE COURT:  Now approximately three to four months |
| 10:55AM | 13 | from now there will come a time when I'm able to determine with |
| 10:55AM | 14 | some precision how the guidelines apply to your case and how |
| 10:55AM | 15 | the 3553(a) statutory factors likewise apply.  When I consider |
| 10:55AM | 16 | both of those items, I could impose a sentence that is either |
| 10:55AM | 17 | more or less severe than what the guidelines call for.  Do you |
| 10:55AM | 18 | understand that? |
| 10:55AM | 19 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:55AM | 20 | THE COURT:  Now, Mr. Akau if I were to impose a |
| 10:55AM | 21 | sentence that is more severe than what you expect or more |
| 10:56AM | 22 | severe than what the guidelines call for, do you realize and |
| 10:56AM | 23 | understand that you will still be bound by both your plea as |
| 10:56AM | 24 | well as your plea agreement and at least on that basis will |
| 10:56AM | 25 | have no right to withdraw from either? |

| | | |
|---|---|---|
| 10:56AM | 1 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:56AM | 2 | THE COURT:  Do you understand that despite any |
| 10:56AM | 3 | discussions you may have had with Mr. Richards, with |
| 10:56AM | 4 | Mr. Inciong, or with anyone else regarding the type or the |
| 10:56AM | 5 | duration of the sentence you are likely to receive, or |
| 10:56AM | 6 | regarding any sentencing recommendation that they may wish to |
| 10:56AM | 7 | provide to me, I am not bound by those discussions nor is the |
| 10:56AM | 8 | Court bound by any sentencing recommendations provided to it, |
| 10:56AM | 9 | and I could impose a sentence that is more severe than what you |
| 10:56AM | 10 | expect up to the maximum permitted by law? |
| 10:56AM | 11 | THE DEFENDANT:  Yes, Your Honor, I understand. |
| 10:56AM | 12 | THE COURT:  Mr. Akau, has anyone made any promises to |
| 10:56AM | 13 | you regarding what your sentence will be? |
| 10:56AM | 14 | THE DEFENDANT:  Only to what was on the plea |
| 10:56AM | 15 | agreement, Your Honor. |
| 10:56AM | 16 | THE COURT:  Well, the plea agreement doesn't specify |
| 10:56AM | 17 | any kind of sentence at all.  Do you understand that? |
| 10:57AM | 18 | MR. RICHARDS:  Your Honor, I did promise him there is |
| 10:57AM | 19 | no mandatory minimum and a cap of 20 years, so that's the |
| 10:57AM | 20 | promise I made. |
| 10:57AM | 21 | THE COURT:  Okay.  So you're talking about what the |
| 10:57AM | 22 | statutory penalties that you face -- we went over this a few |
| 10:57AM | 23 | minutes ago -- the potential penalties that you face for |
| 10:57AM | 24 | pleading guilty to this particular count; is that what you're |
| 10:57AM | 25 | referring to, sir? |

10:57AM   1              THE DEFENDANT:  Yes, sir, Your Honor.  That's what I'm
10:57AM   2    referring to.
10:57AM   3              THE COURT:  All right, has anyone made any other
10:57AM   4    promises to you regarding what your sentence will be?
10:57AM   5              THE DEFENDANT:  No, Your Honor.
10:57AM   6              THE COURT:  Do you understand, Mr. Akau, that at the
10:57AM   7    time of sentencing there is no limitation on the information
10:57AM   8    that I can consider regarding your background, your character,
10:57AM   9    and your conduct except that the information I use must be
10:57AM  10    sufficiently reliable?
10:57AM  11              MR. RICHARDS:  Your Honor --
10:57AM  12              THE DEFENDANT:  Yes, Your Honor.
10:57AM  13              MR. RICHARDS:  -- are you excluding the -- you
10:57AM  14    wouldn't consider the material covered by 21E, correct?
10:57AM  15              THE COURT:  I mean, we've been through this four
10:58AM  16    times, haven't we?
10:58AM  17              MR. RICHARDS:  Well, I just wanted the Court to know I
10:58AM  18    had an experience recently in another matter where cooperation
10:58AM  19    statements were considered, and I just didn't want to make a
10:58AM  20    misunderstanding on that; that was why I clarified it.
10:58AM  21              THE COURT:  I understand the agreement that you've
10:58AM  22    reached with the U.S. Attorney's Office with respect to 21E.
10:58AM  23              MR. RICHARDS:  Thank you.
10:58AM  24              THE COURT:  Mr. Akau, do you, sir, understand if a
10:58AM  25    term of imprisonment is imposed as part of your sentence, a

10:58AM   1     term of what we call supervised release is very likely to
10:58AM   2     follow, and if you were to violate any of the conditions of
10:58AM   3     supervised release, additional prison time could be imposed?
10:58AM   4              THE DEFENDANT:  Yes, Your Honor, I understand.
10:58AM   5              THE COURT:  Are you aware as well that in the federal
10:58AM   6     system parole has been abolished and so, from a practical
10:58AM   7     standpoint, what that means is if a term of imprisonment is
10:59AM   8     imposed as part of your sentence you will not be released early
10:59AM   9     on parole?
10:59AM   10             THE DEFENDANT:  I understand, Your Honor.
10:59AM   11             THE COURT:  And do you as well understand that as part
10:59AM   12    of any final judgment in this case, the Court could order you
10:59AM   13    to pay a fine as well as a special assessment?
10:59AM   14             THE DEFENDANT:  Yes, Your Honor, I understand.
10:59AM   15             THE COURT:  Likewise, there is at least the potential
10:59AM   16    for restitution and forfeiture of specific property although,
10:59AM   17    as I understand it from the government's representation thus
10:59AM   18    far, there is no specific item or amount that is called for at
10:59AM   19    this time.
10:59AM   20             THE DEFENDANT:  Yes, Your Honor, I understand.
10:59AM   21             THE COURT:  Mr. Akau, there are some facts now that we
10:59AM   22    need to get into a bit; those are largely set forth at
10:59AM   23    paragraph 8 of your particular plea agreement.  I need to be
10:59AM   24    sure in other words that you in fact committed the crime that
10:59AM   25    you have been charged with and that you are prepared to plead

11:00AM    1    guilty to of Count 1 of the indictment.

11:00AM    2            The first step in that process is to ask the

11:00AM    3    government's attorney to set forth the elements of that

11:00AM    4    particular count.

11:00AM    5            MR. INCIONG:  Thank you, Your Honor.  There are three

11:00AM    6    elements that the United States would have to prove beyond a

11:00AM    7    reasonable doubt if this matter proceeded to trial in regards

11:00AM    8    to Count 1 of the superseding indictment.

11:00AM    9            First, that there was an agreement between Mr. Akau

11:00AM    10   and at least one other person to commit a crime at least one

11:00AM    11   crime as charged in the superseding indictment.  In this case

11:00AM    12   it's the violation of the racketeering laws.

11:00AM    13           Secondly, that the defendant became a member of the

11:00AM    14   conspiracy knowing of at least one of its objects and intending

11:00AM    15   to help accomplish it.

11:00AM    16           Thirdly, that at least one of the members of the

11:00AM    17   conspiracy performed at least one overt act for the purpose of

11:00AM    18   carrying out the conspiracy.

11:00AM    19           The government's position is that the object of the

11:00AM    20   conspiracy in this case, Your Honor, was to participate in the

11:01AM    21   affairs of an association in fact as defined by Title 18 United

11:01AM    22   States Code, Section 1962C.  There are four what I'll refer to

11:01AM    23   as sub-elements that constitutes that particular crime; so I

11:01AM    24   would like to put those on the record as well as elements that

11:01AM    25   the government would have to prove beyond a reasonable doubt in

11:01AM  1    its case in chief.

11:01AM  2              First, there was an ongoing enterprise with some sort

11:01AM  3    of formal are informal framework for carrying out its

11:01AM  4    objectives consisting of a group of persons associated together

11:01AM  5    for a common purpose of engaging in a course of conduct.

11:01AM  6              Second, the defendant was employed by or associated

11:01AM  7    with the enterprise.

11:01AM  8              Third, that the defendant participated directly or

11:01AM  9    indirectly in the conduct of the affairs of the enterprise

11:01AM  10   through a pattern of racketeering activity or collection of

11:01AM  11   unlawful debt.

11:01AM  12             And, fourth, that the enterprise engaged in or its

11:02AM  13   activities in some way affected commerce between one state and

11:02AM  14   another state or between the United States and a foreign

11:02AM  15   country.

11:02AM  16             Those would be the elements required for the

11:02AM  17   government to prove beyond a reasonable doubt in this matter,

11:02AM  18   Your Honor.

11:02AM  19             THE COURT:  Mr. Richards, do you have any disagreement

11:02AM  20   with Mr. Inciong's description of the elements of Count 1?

11:02AM  21             MR. RICHARDS:  No.

11:02AM  22             THE COURT:  Then I'll turn back to Mr. Inciong to

11:02AM  23   please describe the evidence that the government would offer in

11:02AM  24   this case if it were to proceed to trial.

11:02AM  25             MR. INCIONG:  Yes, Your Honor.  If this matter

| | | |
|---|---|---|
| 11:02AM | 1 | proceeded to trial the government would provide evidence to |
| 11:02AM | 2 | show the following: |
| 11:02AM | 3 | That from at least in or about 2016 and continuing up |
| 11:02AM | 4 | to including June of 2020, Mr. Norman L. Akau, III, the |
| 11:02AM | 5 | defendant, while working at the direction of others in the |
| 11:02AM | 6 | Miske Enterprise, along with others known and unknown, were |
| 11:02AM | 7 | members and associates of the Miske Enterprise, and that those |
| 11:02AM | 8 | members and associates of the Miske Enterprise operated |
| 11:03AM | 9 | principally under the direction and protection of Michael J. |
| 11:03AM | 10 | Miske, Jr. who used his power over members -- |
| 11:03AM | 11 | (Gap in audio transmission.) |
| 11:03AM | 12 | Should I continue, Your Honor?  I just want to make |
| 11:03AM | 13 | sure we have everyone here. |
| 11:03AM | 14 | MR. RICHARDS:  The Court is on mute. |
| 11:03AM | 15 | THE COURT:  Thank you, Mr. Richards. |
| 11:03AM | 16 | Mr. Akau, can you determine from anyone around you at |
| 11:03AM | 17 | FDC on your end whether or not you will be permitted to |
| 11:03AM | 18 | continue on this video connection beyond right now? |
| 11:03AM | 19 | THE DEFENDANT:  I can call the guard, Your Honor. |
| 11:03AM | 20 | THE CLERK:  Just to let you know, Judge Otake has an |
| 11:03AM | 21 | 11:00 hearing with FDC.  Shelli is standing by and needs to |
| 11:03AM | 22 | know when our hearing is going to finish.  Would you know how |
| 11:04AM | 23 | long more so I can let her know? |
| 11:04AM | 24 | THE COURT:  I don't know how much longer, but I |
| 11:04AM | 25 | anticipate we will need about 15 minutes at least, I would |

11:04AM    1    guess.

11:04AM    2         THE CLERK:  Okay, let me check with her.

11:04AM    3         THE COURT:  Can you see if they will stand by?  Thank

11:04AM    4    you.

11:04AM    5         MR. RICHARDS:  I'm happy to offer my Zoom, Your Honor,

11:04AM    6    if we need it.

11:04AM    7         THE COURT:  It's not your Zoom, we have Zoom as well,

11:04AM    8    Mr. Richards.  It's the FDC line.  It's your client that won't

11:04AM    9    be permitted to join, whether it's our Zoom or yours.

11:04AM    10        THE CLERK:  Okay, Judge, they will stand by.

11:04AM    11        THE COURT:  Thank you very much.

11:04AM    12        Go ahead, Mr. Inciong, let's hopefully try to finish

11:04AM    13   this up before we need to accede the line to Judge Otake.

11:04AM    14        MR. INCIONG:  Thank you, Your Honor.  As I indicated,

11:04AM    15   the evidence would show that members and associates of the

11:04AM    16   Miske Enterprise operated principally under the direction and

11:04AM    17   protection of Michael J. Miske, Jr., who used his power over

11:05AM    18   members and associates of the Miske Enterprise, his reputation

11:05AM    19   for violence in the community, and the various corporate

11:05AM    20   entities under his control to enrich the members and associates

11:05AM    21   of the Miske Enterprise and to protect the criminal activities.

11:05AM    22   The evidence would show that Mr. Akau was not aware at all

11:05AM    23   times as to who was working for Miske as he took directions

11:05AM    24   from others who worked for Miske.

11:05AM    25        The evidence would show that the Miske Enterprise,

| 11:05AM | 1 | including its leadership, membership and associates, |
| 11:05AM | 2 | constituted an enterprise as that term is defined in Title 18, |
| 11:05AM | 3 | United States Code, Section 1961, subparagraph 4, that is, a |
| 11:05AM | 4 | group of individuals and its entities associated in fact.  The |
| 11:05AM | 5 | evidence would show that the Miske Enterprise was engaged in, |
| 11:05AM | 6 | and its activities affected, interstate commerce. |
| 11:05AM | 7 | Those areas most germane to this particular case, Your |
| 11:05AM | 8 | Honor, would be through the distribution of illegal drugs and |
| 11:05AM | 9 | the use of firearms which are manufactured outside of the State |
| 11:06AM | 10 | of Hawaii. |
| 11:06AM | 11 | The Miske Enterprise, the evidence would show, |
| 11:06AM | 12 | operated within the District of Hawaii and elsewhere and |
| 11:06AM | 13 | constituted an ongoing organization whose members and |
| 11:06AM | 14 | associates functioned as a continuing unit for a common purpose |
| 11:06AM | 15 | of achieving the objectives of the Miske Enterprise. |
| 11:06AM | 16 | The evidence would further show that beginning at |
| 11:06AM | 17 | least in or about 2016, Mr. Akau and others, known and unknown, |
| 11:06AM | 18 | being persons employed by and associated with the Miske |
| 11:06AM | 19 | Enterprise, willfully and knowingly combined, conspired, |
| 11:06AM | 20 | confederated, and agreed together and with each other to |
| 11:06AM | 21 | violate the racketeering laws of the United States, that is, to |
| 11:06AM | 22 | conduct and participate, directly and indirectly, in the |
| 11:06AM | 23 | conduct of the affairs of the Miske Enterprise through a |
| 11:06AM | 24 | pattern of racketeering activity, as that term is defined in |
| 11:06AM | 25 | Title 18, U.S. Code, Section 1961, subparagraph 1 and |

11:06AM  1    subparagraph 5, all within the parameters of Section 1962,

11:07AM  2    subparagraph D.

11:07AM  3            The evidence would show that the racketeering activity

11:07AM  4    to which Mr. Akau and others agreed included acts involving

11:07AM  5    attempted murder and murder for hire; the felonious trafficking

11:07AM  6    of controlled substances as alleged in Count 16 of the

11:07AM  7    superseding indictment; and acts involving robbery and firearms

11:07AM  8    relating to interference with interstate commerce as alleged in

11:07AM  9    Counts 17, 18 and 19 of the superseding indictment.

11:07AM  10           In regard to acts involving attempted murder and

11:07AM  11   murder for hire, the evidence would show that at various times

11:07AM  12   between in or around 2016 and 2017, Mr. Akau, along with other

11:07AM  13   members of the Miske Enterprise, were offered contracts to

11:07AM  14   commit and/or facilitate murder by Michael J. Miske, Jr. and

11:07AM  15   engaged in attempts to commit those murders as requested by

11:07AM  16   Miske.  Mr. Akau was not specifically directed by Miske but was

11:07AM  17   instead directed by Wayne Miller who did report directly to

11:08AM  18   Miske.

11:08AM  19           Specifically in or around 2016 and 2017, the evidence

11:08AM  20   would show that Mr. Akau, while being directed by Wayne Miller,

11:08AM  21   accepted an offer from Miske to murder Victim-12 in exchange

11:08AM  22   for $50,000.  To carry out the murder, the evidence would show

11:08AM  23   Miller and Akau followed Victim-12, with the assistance of a

11:08AM  24   GPS tracking device that Miller placed on Victim-12's vehicle,

11:08AM  25   to a plate lunch restaurant on Sand Island in Honolulu.  When

11:08AM    1    Victim-12 --

11:08AM    2             A VOICE:  Hello, excuse me.  Just for your information

11:08AM    3    there is an 11:00 appointment with Judge Otake next.

11:08AM    4             THE COURT:  Yes, Judge Otake has agreed to stand down

11:08AM    5    until we are complete.

11:08AM    6             A VOICE:  Thank you.

11:08AM    7             THE COURT:  Mr. Inciong, go ahead.

11:08AM    8             MR. INCIONG:  Thank you, Your Honor.  The evidence

11:08AM    9    would show that when Victim-12 came out of the restaurant,

11:08AM   10    Mr. Akau, who was armed with a pistol, was about to pull the

11:08AM   11    trigger in an attempt to shoot and kill Victim-12 when Miller

11:09AM   12    ordered him to stand down and not shoot because Miller had been

11:09AM   13    unable to remove the GPS tracker he placed on Victim-12's

11:09AM   14    vehicle.

11:09AM   15             The evidence would also show that in or around 2016,

11:09AM   16    Mr. Akau was also offered $50,000 by Miske, again through Wayne

11:09AM   17    Miller, this time to abduct Jonathan Fraser and transport him

11:09AM   18    to the north shore of Oahu where another individual would

11:09AM   19    commit Fraser's murder.  After thinking over the offer and

11:09AM   20    discussing it with others, Mr. Akau declined to accept the

11:09AM   21    offer because Fraser was, quote, a kid.

11:09AM   22             In regards to offenses involving robbery and firearms

11:09AM   23    relating to interference with interstate commerce, the evidence

11:09AM   24    would show that at various times between in or around 2016 and

11:09AM   25    in or around 2018, Mr. Akau, along with other members of the

| | | |
|---|---|---|
| 11:09AM | 1 | Miske Enterprise, engaged in and/or facilitated robberies. |
| 11:09AM | 2 | Often the targets of these robberies were drug dealers. |
| 11:10AM | 3 | For example, in or about 2016, Mr. Akau, along with |
| 11:10AM | 4 | Jacob "Jake" Smith, Ashlin Akau, Harry Kauhi, Lance Bermudez |
| 11:10AM | 5 | and at least one other individual participated in the robbery |
| 11:10AM | 6 | of Victim-4, a suspected drug dealer, who was believed to be in |
| 11:10AM | 7 | possession of a large quantity of methamphetamine.  The group |
| 11:10AM | 8 | traveled in two separate vehicles and forced the car in which |
| 11:10AM | 9 | Victim-4 was a passenger to stop on North School Street in |
| 11:10AM | 10 | Honolulu.  Mr. Akau was in one of the vehicles and was dressed |
| 11:10AM | 11 | to impersonate a plain clothes police officer.  He exited his |
| 11:10AM | 12 | vehicle while flashing a badge he obtained while working on the |
| 11:10AM | 13 | film set of Hawaii Five-0.  At the time Mr. Akau was armed with |
| 11:10AM | 14 | a .38 caliber revolver and a .22 caliber pistol equipped with a |
| 11:10AM | 15 | silencer in a backpack he was carrying.  Smith, Bermudez and at |
| 11:10AM | 16 | least one other individual, all armed with guns and wearing |
| 11:10AM | 17 | masks were in the second vehicle, a black BMW 3 series sedan, |
| 11:11AM | 18 | driven by Bermudez.  While displaying his badge with a walkie |
| 11:11AM | 19 | talkie in hand, Mr. Akau held Victim-4 and ordered him to a |
| 11:11AM | 20 | nearby telephone pole.  Mr. Akau then went to the trunk of the |
| 11:11AM | 21 | vehicle and grabbed a blue Walmart bag filled with several |
| 11:11AM | 22 | pounds of methamphetamine. |
| 11:11AM | 23 | After the robbery, Mr. Akau, Mr. Smith, Ashlin Akau, |
| 11:11AM | 24 | John B. Stancil, Harry Kauhi, and Lance Bermudez, along with at |
| 11:11AM | 25 | least one other individual, all met at another location and |

11:11AM   1   divided up the drugs amongst the groups.

11:11AM   2            In regard to offenses involving the felonious

11:11AM   3   trafficking of controlled substances, the evidence would show

11:11AM   4   that between in or around 2016 and continuing to at least in or

11:11AM   5   about August of 2018, Mr. Akau conspired with others to

11:12AM   6   distribute and possess, with intent to distribute, controlled

11:12AM   7   substances including methamphetamine.

11:12AM   8            For example, after the 2016 robbery of Victim-4, I've

11:12AM   9   just described which is reflected in subparagraph H, Mr. Akau

11:12AM   10  possessed his share of the stolen methamphetamine which was

11:12AM   11  approximately several ounces with the intend to further

11:12AM   12  distribute those drugs to another person.  That would be the

11:12AM   13  summary of the evidence the United States would produce at

11:12AM   14  trial, Your Honor.

11:12AM   15           THE COURT:  The details of that robbery of Victim-4 is

11:12AM   16  actually set forth in paragraph 8F, not 8H; is that correct?

11:12AM   17           MR. INCIONG:  Thank you.  Yes, Your Honor, my mistake.

11:12AM   18  Paragraph 8, subparagraph F, yes.

11:12AM   19           THE COURT:  Mr. Akau, do you understand the evidence

11:12AM   20  that the government would offer in this case if it were to

11:13AM   21  proceed to trial?

11:13AM   22           THE DEFENDANT:  Yes, Your Honor, I understand.

11:13AM   23           THE COURT:  And do you agree, sir, that what the

11:13AM   24  government said you did is true?

11:13AM   25           THE DEFENDANT:  Yes, Your Honor.

11:13AM    1          THE COURT:  In your own words, Mr. Akau, please

11:13AM    2    describe what you did that makes you guilty of Count 1.

11:13AM    3          THE DEFENDANT:  I'm guilty because I was involved in

11:13AM    4    those incidents, and I did participate in those counts, Your

11:13AM    5    Honor.

11:13AM    6          THE COURT:  And that all occurred between 2016 and

11:13AM    7    2020, is that roughly your understanding as well?

11:13AM    8          THE DEFENDANT:  Your Honor, it was actually 2016 to

11:13AM    9    about 2018, Your Honor.

11:13AM    10         THE COURT:  Okay.  And during that time frame you were

11:13AM    11   a member of a group of individuals that the government has

11:13AM    12   described as the Miske Enterprise?

11:14AM    13         THE DEFENDANT:  Yes, Your Honor.

11:14AM    14         THE COURT:  And that enterprise consisted of a number

11:14AM    15   of individuals to include Mr. Wayne Miller, Mr. Lance Bermudez,

11:14AM    16   and the other individuals described in paragraph 8?

11:14AM    17         THE DEFENDANT:  Your Honor, yes.  I was only

11:14AM    18   introduced through Wayne Miller who was my cousin.  I was not

11:14AM    19   aware until this indictment who actually was involved in the

11:14AM    20   enterprise, Your Honor.

11:14AM    21         THE COURT:  Okay.  The events though that you were

11:14AM    22   engaged in specifically included these individuals though that

11:14AM    23   Mr. Inciong mentioned, correct?

11:14AM    24         THE DEFENDANT:  Yes, Your Honor.

11:14AM    25         THE COURT:  And the Miske Enterprise operated during

11:14AM   1   the time frame that you indicated at least 2016 --

11:14AM   2              (Audio interruption.)

11:14AM   3              Can you still hear me?

11:15AM   4              THE DEFENDANT:  I hear you, yes, Your Honor.  Correct.

11:15AM   5              THE COURT:  And that enterprise operated under the

11:15AM   6   principal control, direction, and protection of Mr. Miske, Jr.?

11:15AM   7              THE DEFENDANT:  Yes, Your Honor.

11:15AM   8              THE COURT:  His first name being Michael, correct?

11:15AM   9              THE DEFENDANT:  Correct.

11:15AM  10              THE COURT:  And as part of this enterprise, is it fair

11:15AM  11   to say, Mr. Akau, that you had an agreement with others to

11:15AM  12   violate the racketeering laws of the United States including

11:15AM  13   through the manners and ways in which the government described,

11:15AM  14   those being attempted murder, murder for hire, drug trafficking

11:15AM  15   and robbery?

11:15AM  16              THE DEFENDANT:  Yes, Your Honor.

11:15AM  17              THE COURT:  And some of those events also included the

11:15AM  18   employment and use of firearms?

11:15AM  19              THE DEFENDANT:  Yes, Your Honor.

11:15AM  20              THE COURT:  The point of that, Mr. Akau, was to -- I

11:15AM  21   assume it was in part to achieve financial gain?

11:15AM  22              THE DEFENDANT:  It was for financial gain, Your Honor.

11:15AM  23              THE COURT:  Were there other goals beside financial

11:16AM  24   gain that you are aware of?

11:16AM  25              THE DEFENDANT:  For my part, Your Honor, no.  That's

11:16AM  1    what it was -- financial gain.

11:16AM  2         THE COURT:  And through these acts that you engaged

11:16AM  3    in, you and others, those affected interstate and foreign

11:16AM  4    commerce the way Mr. Inciong indicated; is that true?  For

11:16AM  5    example, the drugs that you stole in this incident that

11:16AM  6    Mr. Inciong describes from the 2018 time frame, those drugs

11:16AM  7    were drugs that were sourced from states and locations other

11:16AM  8    than Hawaii; is that fair?

11:16AM  9         THE DEFENDANT:  That's fair, Your Honor, to assume

11:16AM  10   that, yes.

11:16AM  11        THE COURT:  I think that was -- maybe I misstated it,

11:16AM  12   I said 2018 and it looks like it was maybe 2016, that time

11:16AM  13   frame.

11:16AM  14        THE DEFENDANT:  Yes, Your Honor.

11:17AM  15        THE COURT:  And similarly the firearms that were

11:17AM  16   employed in the ways that Mr. Inciong described were

11:17AM  17   manufactured outside of the State of Hawaii?

11:17AM  18        THE DEFENDANT:  Yes, Your Honor, it was.

11:17AM  19        THE COURT:  Thank you.  One of the examples of the

11:17AM  20   activities that you engaged in with others, as part of this

11:17AM  21   Miske Enterprise, occurred in 2016, 2017 when you worked with

11:17AM  22   Mr. Miller?

11:17AM  23        THE DEFENDANT:  Yes, Your Honor.

11:17AM  24        THE COURT:  Can you tell me a little bit about that

11:17AM  25   incident -- a little bit more about that incident?

11:17AM   1              THE DEFENDANT:  The one with Miller was -- I think it

11:17AM   2    was for the union rep; is that what we are speaking of?

11:17AM   3              THE COURT:  This is the person that the government

11:17AM   4    described as Victim-12.

11:17AM   5              THE DEFENDANT:  Yes, Your Honor.  That was with -- he

11:18AM   6    asked me if I could help him.  He had a situation in which he

11:18AM   7    fell out of favor with Mr. Miske, and he asked if I could help

11:18AM   8    him by taking care of that situation for him in which they talk

11:18AM   9    about Victim-12, Your Honor.

11:18AM   10             THE COURT:  And this was a way for Mr. Miller to get

11:18AM   11   back in good graces with Mr. Miske?

11:18AM   12             THE DEFENDANT:  Yes, Your Honor.

11:18AM   13             THE COURT:  You were promised $50,000 for your

11:18AM   14   assistance?

11:18AM   15             THE DEFENDANT:  I was, Your Honor.

11:18AM   16             THE COURT:  What was your understanding as far as

11:18AM   17   where that 50,000 was going to come from?

11:18AM   18             THE DEFENDANT:  I assumed that my cousin was going to

11:18AM   19   get it from Mike, but I wasn't sure if that was actually the

11:18AM   20   truth.

11:18AM   21             THE COURT:  That's what Mr. Miller told you?

11:18AM   22             THE DEFENDANT:  Yes, Your Honor, that's what

11:18AM   23   Mr. Miller told me.

11:18AM   24             THE COURT:  That Mr. Miske would be paying the $50,000

11:19AM   25   to you for your help?

11:19AM    1            THE DEFENDANT:  Yes, Your Honor.

11:19AM    2            THE COURT:  And what did you do then to assist

11:19AM    3    Mr. Miller?

11:19AM    4            THE DEFENDANT:  We followed Victim-12 to a plate lunch

11:19AM    5    place that's located in the Sand Island district, and once we

11:19AM    6    were there he wanted me to shoot that Victim-12 once he came

11:19AM    7    out of the restaurant.  And when Victim-12 came out of the

11:19AM    8    restaurant -- excuse me, sorry.

11:19AM    9            THE COURT:  No, go ahead.

11:19AM   10            THE DEFENDANT:  When Victim-12 came out of the

11:19AM   11    restaurant, he told me to stand down because he couldn't pull

11:19AM   12    the tracking device that he placed on the vehicle off of the

11:19AM   13    vehicle; so that never happened, Your Honor.

11:19AM   14            THE COURT:  You were prepared to fire, you had a

11:19AM   15    weapon to do that?

11:19AM   16            THE DEFENDANT:  Yes, Your Honor, I did.

11:19AM   17            THE COURT:  Had you brandished that weapon?  Had you

11:20AM   18    drawn it out of wherever you had it?

11:20AM   19            THE DEFENDANT:  No, I did not.  It was in the

11:20AM   20    backpack.

11:20AM   21            THE COURT:  All right.  And did you have an

11:20AM   22    understanding as to why that victim was to be killed?

11:20AM   23            THE DEFENDANT:  Yes, Your Honor.  I was told that he

11:20AM   24    would be removed from the position of hiring for the jobs on

11:20AM   25    the docks.

| | | |
|---|---|---|
| 11:20AM | 1 | THE COURT:  Because he had a role in hiring? |
| 11:20AM | 2 | THE DEFENDANT:  They wanted to put the previous union |
| 11:20AM | 3 | official that was currently in that position that was removed |
| 11:20AM | 4 | from the position, they were going to put him back into that |
| 11:20AM | 5 | seat. |
| 11:20AM | 6 | THE COURT:  Because what?  Because that would help |
| 11:20AM | 7 | Mr. Miske's business? |
| 11:20AM | 8 | THE DEFENDANT:  That would help the flow of jobs onto |
| 11:20AM | 9 | the docks. |
| 11:21AM | 10 | THE COURT:  And another example I gather is this |
| 11:21AM | 11 | $50,000 -- another $50,000 that you were offered to assist with |
| 11:21AM | 12 | the kidnapping of Jonathan Fraser? |
| 11:21AM | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 11:21AM | 14 | THE COURT:  Did that offer come to you from Mr. Miller |
| 11:21AM | 15 | as well? |
| 11:21AM | 16 | THE DEFENDANT:  Yes, it did, Your Honor.  Actually |
| 11:21AM | 17 | that offer came before Victim-12's offer, Your Honor. |
| 11:21AM | 18 | THE COURT:  And in that situation your understanding |
| 11:21AM | 19 | from Mr. Miller was that the $50,000 would come from Mr. Miske? |
| 11:21AM | 20 | THE DEFENDANT:  Yes, Your Honor. |
| 11:21AM | 21 | THE COURT:  And your role would have been to -- I'm |
| 11:21AM | 22 | sorry what? |
| 11:21AM | 23 | THE DEFENDANT:  My role was to pick up -- the guy was |
| 11:21AM | 24 | going to get dropped off by Wayne Miller, and I would drive him |
| 11:21AM | 25 | to the north shore in which someone else would take care of the |

| | | |
|---|---|---|
| 11:21AM | 1 | kid, and I refused.  And because I refused he said, For the |
| 11:22AM | 2 | same money, could you help me out with Victim-12?  That's how |
| 11:22AM | 3 | Victim-12 came into play for me, Your Honor. |
| 11:22AM | 4 | THE COURT:  Okay, I get it now.  And the person that |
| 11:22AM | 5 | you were supposed to drive to the north shore at Mr. Miller's |
| 11:22AM | 6 | request, that was Jonathan Fraser? |
| 11:22AM | 7 | THE DEFENDANT:  Yes, Your Honor. |
| 11:22AM | 8 | THE COURT:  And he is the person that you referred to |
| 11:22AM | 9 | as a kid? |
| 11:22AM | 10 | THE DEFENDANT:  Yes, Your Honor. |
| 11:22AM | 11 | THE COURT:  And lastly in 2016 you ended up assisting |
| 11:22AM | 12 | others with the robbery of a person who you knew was a drug |
| 11:22AM | 13 | dealer here in Honolulu; is that fair? |
| 11:22AM | 14 | THE DEFENDANT:  Yes, Your Honor, that is correct. |
| 11:22AM | 15 | THE COURT:  To do so you, impersonated a police |
| 11:23AM | 16 | officer with respect to Victim-4? |
| 11:23AM | 17 | THE DEFENDANT:  Yeah, I wore a prop badge, got out of |
| 11:23AM | 18 | the vehicle, and proceeded to rob Victim-4. |
| 11:23AM | 19 | THE COURT:  And you were armed at the time with |
| 11:23AM | 20 | firearms? |
| 11:23AM | 21 | THE DEFENDANT:  I had a gun in the backpack that |
| 11:23AM | 22 | remained in the car.  I had no firearm when I got out of the |
| 11:23AM | 23 | car. |
| 11:23AM | 24 | THE COURT:  And you ended up robbing Victim-4 of |
| 11:23AM | 25 | several pounds of methamphetamine? |

11:23AM   1            THE DEFENDANT:  That is correct, Your Honor.

11:23AM   2            THE COURT:  And you shared that methamphetamine with

11:23AM   3    the others who were with you during that encounter, and those

11:23AM   4    people included Mr. Bermudez; Ms. Akau, Ashlin Akau; and

11:23AM   5    Mr. Smith?

11:23AM   6            THE DEFENDANT:  And there is a person that's not

11:23AM   7    mentioned in any of the paperwork that I gave the Walmart bag

11:24AM   8    to who lured me to this scheme of robbery, Your Honor.

11:24AM   9            THE COURT:  So there were others that shared in the

11:24AM   10   methamphetamine that you stole from that drug dealer?

11:24AM   11           THE DEFENDANT:  Yes, Your Honor.

11:24AM   12           THE COURT:  The plea agreement mentions Mr. Bermudez,

11:24AM   13   Mr. Smith, Ms. Akau, Mr. Kauhi and Mr. Stancil, those were

11:24AM   14   among those that you included in this sharing?

11:24AM   15           THE DEFENDANT:  Yeah, I would assume that's correct,

11:24AM   16   Your Honor.

11:24AM   17           THE COURT:  And there were others?

11:24AM   18           THE DEFENDANT:  Yes, Your Honor, that's what I'm

11:24AM   19   saying.

11:24AM   20           THE COURT:  All right.  Are both counsel then

11:24AM   21   satisfied that a factual basis for Mr. Akau's plea of guilty to

11:24AM   22   Count 1 has been established?

11:24AM   23           MR. INCIONG:  Yes, the government is satisfied, Your

11:24AM   24   Honor.  Thank you.

11:24AM   25           MR. RICHARDS:  Yes, Your Honor, I believe the factual

11:25AM    1    basis has been established for the allegations in the

11:25AM    2    indictment and also the additional self-disclosed facts

11:25AM    3    pursuant to his obligation to answer government questions

11:25AM    4    truthfully in a proffer session.

11:25AM    5        THE COURT:  With that then, Mr. Akau, I'll turn to

11:25AM    6    you, sir.  As to Count 1 of the superseding indictment, how do

11:25AM    7    you plead:  guilty or not guilty?

11:25AM    8        THE DEFENDANT:  I plead guilty, Your Honor.

11:25AM    9        THE COURT:  The Court finds that Mr. Akau understands

11:25AM    10    the nature of this morning's proceedings and is competent to

11:25AM    11    enter a knowing and informed plea.  The Court further finds

11:25AM    12    that he has in fact entered a knowing, informed, and voluntary

11:25AM    13    plea of guilty to Count 1 of the superseding indictment, and he

11:25AM    14    has done so without coercion, force or threat.

11:25AM    15        The Court finds that Mr. Akau's plea of guilty is

11:25AM    16    supported by an independent basis in fact containing each of

11:25AM    17    the essential elements of Count 1 and that Mr. Akau understands

11:25AM    18    both the trial and civil rights that he would have in the

11:25AM    19    absence of pleading guilty, but he nonetheless knowingly and

11:25AM    20    voluntarily elects to waive those rights.

11:26AM    21        The Court finally finds that in pleading guilty,

11:26AM    22    Mr. Akau understands the factors that the Court will consider

11:26AM    23    at the time of sentencing, including the potential penalties

11:26AM    24    that are applicable to a violation of Count 1.

11:26AM    25        Mr. Akau, as you've acknowledged that you are in fact

11:26AM  1    guilty, I accept your guilty plea and adjudge you guilty as

11:26AM  2    charged to Count 1 of the superseding indictment.  The Court

11:26AM  3    orders the plea agreement in this matter to be filed, but

11:26AM  4    reserves a determination of whether to accept it until after a

11:26AM  5    presentence investigation and investigation report have both

11:26AM  6    been completed.

11:26AM  7         May we get a sentencing date please?

11:26AM  8         THE CLERK:  January 19, 2022 at 9:00.

11:26AM  9         THE COURT:  Is that date and time acceptable with

11:26AM  10   counsel?

11:26AM  11        MR. INCIONG:  Yes, that's fine with the government.

11:26AM  12   Thank you.

11:26AM  13        MR. RICHARDS:  Your Honor, quick question.  When the

11:26AM  14   Court -- is it standard practice for the Court -- (Inaudible

11:26AM  15   due to background noise)

11:26AM  16        THE COURT:  I can't hear you, Mr. Richards.  Standard

11:27AM  17   practice for what?

11:27AM  18        MR. RICHARDS:  For the Court to withhold the

11:27AM  19   acceptance of the plea pending review of the PSR?

11:27AM  20        THE COURT:  It is standard practice to determine

11:27AM  21   whether or not to accept the plea agreement until sentencing.

11:27AM  22        MR. RICHARDS:  Okay.  Not every practice is the same

11:27AM  23   in every district; that's why I was asking.

11:27AM  24        THE COURT:  Yes, that's not unusual at all.

11:27AM  25        MR. RICHARDS:  Okay, good.  I just want to make sure

| | | |
|---|---|---|
| 11:27AM | 1 | there was nothing about the plea that was unusual. |
| 11:27AM | 2 | One last procedural question on the statements that |
| 11:27AM | 3 | are not going to be considered.  Does the Court flag those |
| 11:27AM | 4 | through the PSR or is that something that it expects counsel to |
| 11:27AM | 5 | do? |
| 11:27AM | 6 | THE COURT:  That is something that counsel can |
| 11:27AM | 7 | collaborate with the probation department, and I'm sure |
| 11:27AM | 8 | Mr. Inciong would naturally do that, given the agreement that |
| 11:27AM | 9 | you all have reached.  Or, independently Mr. Richards you'll |
| 11:28AM | 10 | have an opportunity I'm sure to do that as probation will |
| 11:28AM | 11 | undoubtedly want to talk with your client.  And during those |
| 11:28AM | 12 | discussions you can certainly mention it to them if they are |
| 11:28AM | 13 | not aware of it by that time. |
| 11:28AM | 14 | MR. RICHARDS:  Okay, and the last question, Your |
| 11:28AM | 15 | Honor, is:  Is the Court aware that my client is in custody, |
| 11:28AM | 16 | and if the plea agreement is going to be -- if you're going to |
| 11:28AM | 17 | hold the consideration of the plea agreement, does the Court |
| 11:28AM | 18 | find it necessary to file it on the public docket, these plea |
| 11:28AM | 19 | agreements could be used offensively against people, and the |
| 11:28AM | 20 | Court spent a lot of time going into allegations in the plea |
| 11:28AM | 21 | agreement, and I know that typically they are not filed under |
| 11:28AM | 22 | seal in your district.  But would the Court consider |
| 11:28AM | 23 | withholding the filing of the plea agreement until the Court is |
| 11:28AM | 24 | going to accept it, so my client's safety and security cannot |
| 11:28AM | 25 | be interfered with or harassed? |

| 11:28AM | 1 | THE COURT: Mr. Inciong, does the government have any |
|---|---|---|
| 11:28AM | 2 | position on filing the plea agreement under seal or not filing |
| 11:29AM | 3 | it at all until we gather again for sentencing? |
| 11:29AM | 4 | MR. INCIONG: We don't have an objection to either of |
| 11:29AM | 5 | those things, Your Honor. |
| 11:29AM | 6 | THE COURT: All right. So at your request, and |
| 11:29AM | 7 | without objection -- at the defense's request and without |
| 11:29AM | 8 | objection from the government, the Court will file the plea |
| 11:29AM | 9 | agreement but do so under seal. Would that be acceptable? |
| 11:29AM | 10 | Mr. Richards, would that accomplish your goal? |
| 11:29AM | 11 | MR. RICHARDS: It would, Your Honor. And then if it's |
| 11:29AM | 12 | ever shared with any counsel for any other defendant that they |
| 11:29AM | 13 | be given instructions that it's under attorney eyes only, not |
| 11:29AM | 14 | to send it to the jail like the other discovery that we have |
| 11:29AM | 15 | had in this case. |
| 11:29AM | 16 | THE COURT: All right. Well, that certainly would not |
| 11:29AM | 17 | come from me; but in terms of sharing, if the government wishes |
| 11:29AM | 18 | to do that, then I'm sure they would not do so with the seal in |
| 11:29AM | 19 | place but would ask for it to be unsealed for a limited |
| 11:29AM | 20 | purpose, if they were inclined to or if they were to seek that. |
| 11:30AM | 21 | So we will go ahead and file that under seal for now. It's |
| 11:30AM | 22 | always subject to unsealing obviously in part or in whole. So |
| 11:30AM | 23 | we will have to revisit that down the road when we either get |
| 11:30AM | 24 | to sentencing or at sentencing. |
| 11:30AM | 25 | But, Mr. Richards, you did not respond to my question |

| | | |
|---|---|---|
| 11:30AM | 1 | about whether that date and time for sentencing is acceptable |
| 11:30AM | 2 | to you. |
| 11:30AM | 3 | MR. RICHARDS:  Yes, Your Honor.  If for some reason |
| 11:30AM | 4 | I'm engaged in something, is the Court rigid on moving dates or |
| 11:30AM | 5 | is that a drop-dead date? |
| 11:30AM | 6 | THE COURT:  No, not at all.  We move sentencing dates |
| 11:30AM | 7 | all the time.  And there may be reason obviously in this case |
| 11:30AM | 8 | to move it off January 19th or really any date that we pick. |
| 11:30AM | 9 | There is no magic to that date.  It's further out enough beyond |
| 11:30AM | 10 | the current trial date that we thought it would be appropriate. |
| 11:30AM | 11 | But we recognize entirely that this may not be the only -- |
| 11:30AM | 12 | there may not be just one continuance of that sentencing.  We |
| 11:31AM | 13 | may be looking at multiple continuances in light of the other |
| 11:31AM | 14 | defendants that remain. |
| 11:31AM | 15 | MR. RICHARDS:  That date is fine for now, Your Honor. |
| 11:31AM | 16 | Thank you. |
| 11:31AM | 17 | THE COURT:  That's all we can hope for for at least |
| 11:31AM | 18 | for right now. |
| 11:31AM | 19 | Anything else that I can assist the parties with?  I'm |
| 11:31AM | 20 | sure Judge Otake is chomping at the bit to get on to her video |
| 11:31AM | 21 | line that we have now taken 30 minutes of. |
| 11:31AM | 22 | MR. INCIONG:  Nothing from the government.  Thank you, |
| 11:31AM | 23 | Your Honor. |
| 11:31AM | 24 | MR. RICHARDS:  No.  Thank you, Your Honor. |
| 11:31AM | 25 | THE COURT:  Thank you both.  Mr. Akau, thank you as |

11:31AM   1   well.  We'll hopefully get together in person for sentencing,

11:31AM   2   whether that's January or some future time.  Thank you all.  We

11:31AM   3   are in recess.

11:31AM   4                (Proceedings were concluded at 11:31 a.m.)

          5

          6

          7

          8

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1                    COURT REPORTER'S CERTIFICATE

2              I, Gloria T. Bediamol, Official Court Reporter, United

3    States District Court, District of Hawaii, do hereby certify

4    that pursuant to 28 U.S.C. §753 the foregoing is a complete,

5    true, and correct transcript from the stenographically reported

6    proceedings held in the above-entitled matter and that the

7    transcript page format is in conformance with the regulations

8    of the Judicial Conference of the United States.

9

10             DATED at Honolulu, Hawaii, July 22, 2022.

11

12

13                                    /s/ Gloria T. Bediamol

14                                    GLORIA T. BEDIAMOL.

15                                    RMR, CRR, FCRR

16

17

18

19

20

21

22

23

24

25